# 22-1670-cr

IN THE

**United States Court of Appeals**

FOR THE SECOND CIRCUIT

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

OCTAVIUS FRYAR, AKA Tate,

*Defendant - Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

**BRIEF FOR DEFENDANT-APPELLANT
OCTAVIUS FRYAR**

> **TIMOTHY P. MURPHY**
> Federal Public Defender's Office
> Western District of New York
> 300 Pearl Street, Suite 200
> Buffalo, New York 14202
> Telephone: (716) 551-3341
> *Attorney for Defendant-Appellant*
> *Octavius Fryar*

# **Table of Contents**

Table of Authorities....................................................................... iii

Jurisdictional Statement.................................................................1

Issues ............................................................................................1

Procedural History and Background ..............................................2

    A.   The appeal waiver....................................................3

    B.   Cocaine disparity and sentencing .............................5

Summary of Argument...................................................................8

Argument.......................................................................................9

    I.   The waiver of appeal was invalid............................9

        A. Appeal waivers in general....................................10

        B. The appeal waiver should not be enforced ...........12

           i.   *The District Court's intrinsically erroneous sentence was beyond the terms of the appeal waiver* ...........................12

           ii.  *The waiver did not clearly establish a knowing and voluntary decision*...........................13

           iii. *Enforcement of the appeal waiver also contravenes important public policy interests* .....................................14

    II.   The sentence was procedurally and substantively unreasonable..............................................................18

        A. Standards of Review .............................................18

        B. The court violated the § 3553(c) mandate to adequately state the reasons for its sentence, thus making it procedurally unreasonable....................................20

        C. The known racial disparity also makes the sentence substantively unreasonable ...................................28

Conclusion ..................................................................................38

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ........................................ 39

# Table of Authorities

## Cases

*Batson v. Kentucky*, 476 U.S. 79 (1986) .................................................. 17

*Chavez-Meza v. United States*, __ U.S. __ ,
138 S. Ct. 1959 (2018) ............................................................. 21, 22

*Concepcion v. United States*, 597 U.S. __ ,
142 S. Ct. 2389 (2022) ........................................................ 34

*Gall v. United States*, 552 U.S. 38 (2007) .............................................. 19

*Garza v. Idaho*, 586 U.S. __ , 139 S.Ct. 738 (2019).................................. 10

*Kimbrough v. United States*, 552 U.S. 85 (2007)........................ 18, 29, 34

*Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017)............................ 16, 17

*Rita v. United States*, 551 U.S. 338 (2007) ................................. 19, 21, 28

*Rosales-Mireles v. United States*, 585 U.S. __ ,
138 S. Ct. 1897 (2018) ........................................................ 19

*United States v Riggi*, 649 F.3d 143 (2d Cir. 2011) ................................ 11

*United States v. Burden*, 860 F.3d 45 (2d Cir. 2017)............................... 13

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ....................... 19, 20

*United States v. Coston*, 737 F.3d 235 (2d Cir. 2013)...................... 11, 14

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)............................. 21

*United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010)............................. 19

*United States v. Eaglin*, 913 F.3d 88 (2d Cir. 1019) ...............................20

*United States v. Espinoza*, 514 F.3d 209 (2d Cir. 2008) ........................26

*United States v. Fox*, 2023 U.S. App. Lexis 1853,
 2023 WL 379539 (2d Cir., Jan. 25, 2023) .............................................26

*United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000) ..................11

*United States v. Gonzalez*, 851 Fed. Appx. 281 (2d Cir. 2021) .........26, 28

*United States v. Gully*, 619 F. Supp. 2d 633 (N.D. Iowa 2009) .............29

*United States v. Ingram*, 721 F.3d 35 (2d Cir. 2013) ..............................24

*United States v. Jones*, 531 F.3d 163 (2d Cir. 2008) ..............................19

*United States v. Lewis*, 623 F. Supp. 2d 42 (D.D.C. 2009) ....................30

*United States v. Lutchman*, 910 F.3d 33 (2d Cir. 2018) ........................11

*United States v. Mergen*, 764 F.3d 199 (2d Cir. 2014) ...........................13

*United States v. Mi Sun Cho*, 713 F.3d 716 (2d Cir. 2013) ...................20

*United States v. Molina*, 356 F.3d 269 (2d Cir. 2004) ...........................20

*United States v. Mumuni*, 946 F.3d 97 (2d Cir. 2019) ...........................20

*United States v. Murphy*, 942 F.3d 73 (2d Cir. 2019) ......................25, 27

*United States v. Olano*, 507 U.S. 725 (1993) .........................................25

*United States v. Parker*, 2015 U.S. Dist. Lexis 177126
 (D. Vt. April 8, 2015) ...........................................................................29

*United States v. Ready*, 82 F3d. 551 (2d Cir. 1996)...................10, 11, 15

iv

*United States v. Rosa*, 123 F.3d 94 (2d Cir. 1997) ............................ 11, 15

*United States v. Rosa*, 957 F.3d 113 (2d Cir. 2020) ................................ 23

*United States v. Simmonds*, No. 5:13-cr-42 (D. Vt.)
   (Feb. 25, 2015, Dkt. 145) ...................................................................... 29

*United States v. Simmons*, 670 Fed. Appx. 19 (2d Cir. 2016) ............... 27

*United States v. Whigham*, 754 F. Supp. 2d 239 (D. Mass. 2010).......... 29

*United States v. Woltmann*, 610 F.3d 37 (2d Cir. 2010) ........................ 11

*United States v. Young*, 811 F.3d 592 (2d Cir. 2016).............................. 21

## Statutes

18 U.S.C. § 3231 ........................................................................................ 1

18 U.S.C. § 3553 ...................................................................................... 25

18 U.S.C. § 3553(a).......................................................................... *passim*

18 U.S.C. § 3553(a)(2)............................................................................. 19

18 U.S.C. § 3553(a)(2)(A)................................................................... 29, 37

18 U.S.C. § 3553(a)(6)............................................................................. 15

18 U.S.C. § 3553(c) .......................................................................... *passim*

18 U.S.C. § 3742(a) ................................................................................... 1

21 U.S.C. § 841(a)(1)............................................................................. 3, 5

21 U.S.C. § 841(b)(1)............................................................................... 31

v

21 U.S.C. § 841(b)(1)(B) ................................................................. 3, 7, 37

21 U.S.C. § 841(b)(1)(B)(iii) ........................................................ 5, 15, 18

21 U.S.C. § 846 ................................................................................. 3

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 2241 ............................................................................... 3

28 U.S.C. § 2255 ............................................................................... 3

## Other Authorities

EQUAL Act, H.R. 1693, 117th Congress (2021-2022), accessible
   at: congress.gov/bill/117th-congress/house-bill/1693 .................... *passim*

DOJ Memorandum for All Federal Prosecutors regarding "Additional
Department Policies Regarding Charging Pleas, and Sentencing Drug
Cases," (December 16, 2022), accessible at:
https://www.fd.org/news/ag-issues-two-new-charging-memos ............... 31

Congressional testimony of Regina M. LaBelle and Hon. Asa
Hutchinson, June 22, 2021, accessible at:
https://www.judiciary.senate.gov/meetings/examining-federal-
   sentencing-for-crack-and-powder-cocaine ...................................... 31, 32

Statement of the U.S. Department of Justice Before the United States
   Senate Committee on the Judiciary for a Hearing Entitled "Examining
   Federal Sentencing for Crack and Powder Cocaine, June 22, 2021
   accessible at:
chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://
sentencing.typepad.com/files/doj-equal-act-testimony--final.pdf .......... 31

U.S. Sentencing Commission, *2015 Report to the Congress: Impact of the Fair Sentencing Act of 2010,* accessible at: https://www.ussc.gov/research/congressional-reports/2015-report-congress-impact-fair-sentencing-act-2010#:~:text=The%20Fair%20Sentencing%20Act%20of%202010%20(FSA)%2C%20enacted%20August,cocaine%20and%20increased%20statutory%20fines ................................................................................ 33, 34

United States Sentencing Commission, Quick Facts: Crack Cocaine Trafficking Offenses (2021), accessible at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Crack_Cocaine_FY21.pdf ............................ 34

Zunkel, Erica and Siegler, Alison, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction,* 18 Ohio State Journal of Criminal Law 238, (April 3, 2020) accessible at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3589862 ..... 15, 16

## Rules

Fed. R. Crim. P. 52(b) .............................................................................. 25

## Sentencing Guidelines

U.S.S.G. §2D1.1 .......................................................................................... 3

U.S.S.G. §2D1.1(b)(1) ................................................................................ 6

U.S.S.G. §2D1.1(c)(7) ................................................................................ 6

U.S.S.G. §2D1.1(c)(12) .............................................................................. 7

U.S.S.G. §3E1.1(a) ..................................................................................... 6

U.S.S.G. §3E1.1(b) ..................................................................................... 6

U.S.S.G. §4B1.1(a) ..................................................................................... 6

## **Jurisdictional Statement**

Appellant Octavius Fryar was charged in a one-count complaint, triggering the subject matter jurisdiction of the United States District Court for the Southern District of New York pursuant to 18 U.S.C. § 3231. A 2.[1] Mr. Fryar pleaded guilty to a drug possession charge on March 4, 2022 and was sentenced on July 20, 2022. A 52-54, 91-95, 97. Judgment was entered on July 22, 2022. A 96. A timely notice of appeal was filed on July 30, 2022. A 104. This Court enjoys jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## **Issues**

1.      Whether the appeal waiver encompasses the District Court directly contravening its own finding and stated-intention to impose a particular sentencing range, as opposed to a mere 18 U.S.C. § 3553(a) factor consideration, regarding the 1 to 1 ("1:1") crack to powder cocaine ratio delineated in the proposed EQUAL[2] Act legislation.

---

[1] Materials in the Joint Appendix will be cited as "A __ ."

[2] This acronym stands for "Eliminating a Quantifiably Unjust Application of the Law."

2.     Whether the appeal waiver is enforceable despite Mr. Fryar not sufficiently articulating his understanding of the terms of the waiver, thus not evidencing a knowing and voluntary decision, and as enforcing the waiver would contravene public policy by precluding review of an unjust racial sentencing disparity condemned by the Department of Justice ("DOJ").

3.     Whether the District Court imposed a procedurally unreasonable and intrinsically erroneous sentence regarding its finding on the crack to powder cocaine ratio, which further violated the 18 U.S.C. § 3553(c) mandate to adequately "state in open court the reasons for its imposition" of the sentence.

4.     Whether the District Court imposed a substantively unreasonable sentence in ordering a prison term inconsistent with the 1:1 crack to powder cocaine ratio (pursuant to the proposed EQUAL Act legislation), despite the court's promise to do otherwise.

## Procedural History and Background

Mr. Fryar was charged in the Southern District of New York in a one-count information with conspiring to possess with intent to distribute crack cocaine, stemming from conduct occurring between

July 2020 and November 2020 in Newburgh, New York. *See*, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B); A 50; PSR[3] ¶ 2. The appellant pleaded guilty on March 4, 2022, pursuant to a written plea agreement, to the sole count charged. A 16, 51-52, 85-86.

A. <u>The appeal waiver</u>

The appeal waiver provision of the plea agreement indicated in pertinent part:

> It is agreed (i) that the defendant <u>will not file a direct appeal</u>; nor bring a collateral challenge, including but not limited to an application under … Section 2255 and/or Section 2241, <u>of any sentence within or below the range running from the low end of the Stipulated Guidelines Range to the high end of the Career Offender Guidelines Range, i.e. of any sentence within or below the range of 110 to 235 months' imprisonment,</u>[4] even if the Court rules against the defendant as to the applicability of the career offender provisions... This provision is binding on the parties <u>even if the Court employs a Guidelines analysis different from that stipulated to herein</u>. Furthermore, it is agreed that any appeal as to the defendant's sentence

---

[3] The revised June 27, 2022 presentence investigation report, filed contemporaneously herein under seal, will be cited as "PSR __ ."

[4] The court ultimately concluded Mr. Fryar was not a career offender and calculated the Guidelines under 2D1.1. A 92-93.

that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation….

A 21-22 (emphasis added).

The District Court had the prosecutor summarize the appeal waiver provision on the record during the plea proceedings:

> **[Assistant U.S. Attorney]**: … the Defendant will not directly appeal or collaterally challenge any sentence within or below the range running from the low end of the stipulated guidelines range to the high end of the higher career-offender range. In other words, the Defendant won't appeal or collaterally challenge any sentence within or below the range of 110 to 235 months imprisonment, and that applies regardless of the outcome of this dispute over the career-offender provisions, and it's mutual in the sense that the Government is prohibited from appealing any sentence within or above that range of 110 to 235 months imprisonment…
>
> **THE COURT**: Do you understand this to mean, in effect, that neither party can appeal Judge Roman's determination as to the career-offender application so long as Judge Roman imposes a guideline sentence?
>
> **[Assistant U.S. Attorney]**: So long as Judge Roman imposes a sentence within either guidelines range, meaning that -- say the Government loses on this issue and then the Defendant is sentenced to 110 months, the Government would not be permitted to appeal

that, and, likewise, if Mr. Fryar loses the career-offender issue and Judge Roman imposes a sentence of 235 months, the top of the upper range, Mr. Fryar would have waived his right to appeal or collaterally challenge that sentence.

**THE COURT**: Mr. Fryar, do you understand that one effect of this plea agreement that you've entered into with the Government is that you are giving up the right -- the rights that you might otherwise have had to appeal or otherwise challenge any sentence that does not exceed 235 months imprisonment?

**THE DEFENDANT**: Yes, sir, your Honor.

**THE COURT**: And that means that if Judge Roman rules against you on the career-offender issue, you won't be able to appeal unless the Judge gives you more than 235 months. Do you understand?

**THE DEFENDANT**: Yes, sir, your Honor.

A 45-47.

## B. Cocaine disparity and sentencing

Mr. Fryar was charged with conspiring to distribute 28 or more grams of cocaine base, facing a mandatory minimum prison sentence of 5 years. *See again*, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); A 12-13, 37, 44. In total, the government alleged that Mr. Fryar was responsible for

5

distributing 150 grams. A 61, 79; PSR ¶ 16. Under U.S.S.G.

§2D1.1(c)(7), possessing between 112 and 196 grams of "cocaine base"

lands a defendant in level 26.

    With a Criminal History Category ("CHC") of VI, A 90-91, this

brought Mr. Fryar's sentencing range to between 120 and 150 months.

With the addition of two levels for possessing a firearm, U.S.S.G.

§2D1.1(b)(1), and a reduction of three levels for acceptance of

responsibility, U.S.S.G. §§ 3E1.1(a) and (b), the total offense level

accepted by the District Court was 25, making the Guidelines range

between 110 and 137 months. *See*, A 43-44, 46-47, 79;[5] *see also*, PSR ¶

4, 22, 28-29.

    The defense argued the 18:1 crack to powder cocaine ratio should

be rejected in favor of a 1:1 ratio, consistent with the proposed EQUAL

Act legislation. This would thus eliminate the crack / powder cocaine

sentencing disparity that has so damaged the African American

community. A 33-34, 58. In its sentencing submission, the government

---

[5] Page 5 of the plea agreement also indicates that in the event the Career Offender status under U.S.S.G. §4B1.1(a) did not apply *(which the court ultimately ruled it did not)*, the Guidelines range would be between 110 and 137 months. A 20.

recommended a below-Guidelines sentence, consistent with a consideration of this issue pursuant to 18 U.S.C. § 3553(a).[6] The government at sentencing further noted its agreement with the defense on the disparity issue. A 88-89. Because of the five-year mandatory minimum under § 841(b)(1)(B), the defense requested a sentence of 60 months. A 57, 67, 80, 82.

At sentencing, the court determined it would apply the EQUAL Act adjustments, in other words, the powder cocaine Guidelines. A 93. U.S.S.G. §2D1.1(c)(12) indicates that possessing between 100 and 200 grams of "cocaine" lands a defendant in level 16. With the addition of two levels for possessing a firearm, and a three-level reduction for acceptance of responsibility, Mr. Fryar's total offense level would be 15. Consistent with appellant's argument before and during sentencing, this would mean a Guidelines range of between 41 and 51 months.[7]

---

[6] Submitted as a sealed document herein is the government's July 17, 2022 sentencing correspondence, which addressed its position in this regard. *See*, SDNY file no. 21-cr-703, Doc. 55, pg. 8.

[7] *But see*, A 80 (defense counsel mistakenly opining the range would be between *40* and 51 months); *but see also*, A 57, 61-62 (defense sentencing submission noting the correct range).

After unequivocally agreeing with the appellant's position regarding the cocaine disparity issue, however, the court sentenced him to 69 months. A 93. In other words, despite its findings and legal conclusion that the 1:1 ratio was applicable and that the EQUAL Act "adjustments" were to be imposed, *id.*, the District Court failed to sentence Mr. Fryar consistent with a sentencing range that would most remedy the disparity under the statutory scheme.

## Summary of Argument

The terms of the appeal waiver did not encompass the District Court contradicting its own finding and sentencing conclusion, in that it intended, but failed, to impose a sentence as consistent with a 1:1 crack to powder cocaine ratio as statutorily permissible. Furthermore, Mr. Fryar did not sufficiently articulate in court his understanding of the terms of the waiver, thus not evidencing a knowing and voluntary decision. Finally, the waiver provision is unenforceable as it would violate public policy and preclude review of an unjust racial disparity long recognized by the DOJ and presently the subject of impending legislation.

The inherent unfairness in sending African American drug defendants to prison for longer terms than White drug defendants must stop. The defense and the DOJ agree. Congress seems close on this issue as well. Yet despite its stated intention to impose "the EQUAL Act adjustments," the District Court failed to sentence the appellant consistent with the 1:1 cocaine ratio. Instead, the District Court imposed an unreasonable sentence without providing an adequate explanation, that is, 9 months above the term which would have most remedied the well-documented sentencing disparity in crack and powder cocaine prosecutions.

## Argument

### I.    The waiver of appeal was invalid

Mr. Fryar did not knowingly and voluntarily waive his right to appeal the sentencing disparity issue regarding crack and powder cocaine. Moreover, enforcing this waiver flies in the face of the essential public policy of prohibiting racially based disparities in drug crime sentencing.

9

A.     Appeal waivers in general

Because the right to appeal is so important to the public at large,

appellate waivers are scrutinized carefully and applied narrowly.

*United States v. Ready*, 82 F3d. 551, 556 (2d Cir. 1996). And while

waivers of appeal regarding the legality of a sentence are presumed

valid, *id.* at 559, "the term "appeal waivers" … can misleadingly

suggest a monolithic end to all appellate rights.  In fact… no appeal

waiver serves as an absolute bar to all appellate claims." *Garza v.*

*Idaho*, 586 U.S. __ , 139 S.Ct. 738, 744 (2019) (internal citation

omitted). Moreover,

> [i]t is not the case "that these contractual
> waivers are enforceable on a basis that is
> unlimited and unexamined." "We construe plea
> agreements according to contract law principles .
> . . ."  So, "a guilty plea can be challenged for
> contractual invalidity, including invalidity based
> on a lack of consideration." Yet, "because plea
> agreements are unique contracts, we temper the
> application of ordinary contract principles with
> special due process concerns for fairness and the
> adequacy of procedural safeguards." Accordingly,
> "courts construe plea agreements strictly against
> the Government," which "is usually the party
> that drafts the agreement" and "ordinarily has
> certain awesome advantages in bargaining
> power."

10

*United States v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018) (citing *Ready*, 82 F.3d at 555, 559 and *United States v. Woltmann*, 610 F.3d 37, 39-40 (2d Cir. 2010) (other internal citations omitted)).

Thus, an appellate waiver will not be enforced unless the record "clearly demonstrates" it was knowingly and voluntarily entered, *Ready* 82 F.3d at 556-558; *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *United States v Riggi*, 649 F.3d 143, 147 (2d Cir. 2011); *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013). This Court will "examine carefully the facts of a particular case and look[ ] at the manner in which the agreement and sentence were entered into and applied" when assessing the validity of a waiver provision. *United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997); *Gomez-Perez*, 215 F.3d at 320 (reflecting that "our above recitation of cases representing prior circumstances in which we have held waivers unenforceable should in no way be considered exhaustive") (emphasis added).

Under these parameters, the appeal waiver here fails on several grounds.

11

B. <u>The appeal waiver should not be enforced</u>

      i.    *The District Court's intrinsically erroneous sentence was beyond the terms of the appeal waiver*

The appellant was prohibited under the waiver from appealing "any sentence within or below the range running from the low end of the Stipulated Guidelines Range to the high end of the Career Offender Guidelines Range, i.e. of any sentence within or below the range of 110 to 235 months' imprisonment, even if the Court rules against the defendant as to the applicability of the career offender provisions... This provision is binding on the parties even if the Court employs a Guidelines *analysis* different from that stipulated to herein." *See again*, A 21-22 (emphasis added); *see also*, A 45-47.

The waiver being binding on the appellant "even if the Court employs <u>a Guidelines analysis different</u> from that stipulated to herein," *id.* (emphasis added), was not a license for the District Court to impose an intrinsically wrong sentence contravening its own premise: i.e., that "the EQUAL Act adjustments," A 93, were to be applied. This was a failure of execution, not "analysis."

The terms of the waiver are focused on the length of the sentence and the Career Offender issue, A 45-47, implicitly premised on there

being an objectively coherent imposition of prison based on the court's stated rationale. The provision makes no reference, even implicitly, to an inherently erroneous prison term, violative, as explained below, of § 3553(c). Construing the waiver terms against the government, which authored the document, *United States v. Mergen*, 764 F.3d 199, 208 (2d Cir. 2014), the appeal waiver provision should not be applied to Mr. Fryar's procedural unreasonableness argument.

> ii. *The waiver did not clearly establish a knowing and voluntary decision*

The waiver of appeal should be invalidated, as Mr. Fryar's allocution does not clearly demonstrate a knowing and voluntary decision to waive his right to appeal either the contradictory nature or the racial disparity consequences of his drug sentence. Neither his understanding of the waiver, nor the specific issue of sentencing disparity, were substantively addressed during the waiver allocution. A 45-47; *see also generally*, *United States v. Burden*, 860 F.3d 45, 55 (2d Cir. 2017) (per curium) (observing that appeal waivers must be "sufficiently specific so as to properly safeguard defendants' rights. Demanding such specificity helps to ensure that a defendant

13

understands precisely what it is that he is waiving and the consequences of his waiver.").

While the District Court did confirm the appellant reviewed the plea agreement with counsel, A 35-37, the court ultimately only had *the prosecutor* recite the appeal waiver excerpt from the agreement, followed by *his* understanding of the waiver's consequences. A 21-22. No substantive feedback was secured from Mr. Fryar on his understanding of the waiver. All he contributed was a couple of "yes, sir" affirmations at the end of the exchange. *Id.*; *cf.*, *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013) (where the district court "comprehensibly probed whether the defendant fully understood everything he was giving up in waiving his right to appeal and sentence at or below the statutory maximum…"). At no time was Mr. Fryar asked to affirmatively explain his understanding of the rights he was waiving. Under the circumstances, the waiver should not be enforced.

iii.    *Enforcement of the appeal waiver also contravenes important public policy interests*

A waiver of appeal will not be enforced where doing so will produce a miscarriage of justice and "result in a serious detriment to

14

important public or private interests." *Rosa*, 123 F.3d at 97; *Ready*, 82

F.3d at 559 (recognizing that "courts may apply general fairness

principles to invalidate particular terms of a plea agreement" and that

"[p]lea agreements are subject to public policy constraints…" (internal

citations omitted)).

Mandatory minimum sentences date back to the 19th century. But

unintended consequences of these terms have led to frequent

sentencing disparities, i.e., under § 841(b)(1)(B)(iii), the elimination of

which continues as a goal of the 1984 Sentencing Reform Act ("SRA").

*See*, *e.g.*, 18 U.S.C. § 3553(a)(6) (addressing "the need to avoid

unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct"). By most

accounts, the SRA has failed in this regard.[8]

---

[8] *See e.g.*, Zunkel, Erica and Siegler, Alison, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction* (April 3, 2020). 18 Ohio State Journal of Criminal Law 238, 245, 257-260, Vol. No. 1 (recognizing that "[i]n the years since the BRA and the 1986 Act were passed, people of color have borne the brunt of these harsh federal drug laws. At the bail stage, people of color are detained before trial at a higher rate than whites, even after controlling for other factors that are predictive of detention or release."); *see also*, *id.* at 245-246 (further recognizing that "the Sentencing Commission recently found that when Black men and White men commit the very same crime, Black men on average receive a sentence that is nearly

Racism is different from other challenges faced by the criminal justice system. *See, Pena-Rodriguez v. Colorado*, 580 U.S. 206, 223 (2017) ("The unmistakable principle underlying these precedents is that discrimination on the basis of race, "odious in all aspects, is especially pernicious in the administration of justice"") (internal citation omitted). Moreover, the high court's jurisprudence "demonstrate[s] that racial bias implicates unique historical, constitutional, and institutional concerns. An effort to address the most grave and serious statements of racial bias is not an effort to perfect the jury but to ensure that our legal system remains capable of coming ever closer to the promise of equal treatment under the law that is so central to a functioning democracy." *Id*. at 224.

"Discrimination within the judicial system is most pernicious because it is "a stimulant to that race prejudice which is an

---

twenty percent longer. Some of this is certainly a result of mandatory minimum charging, which "introduces sizeable racial disparities" into the system."), accessible at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3589862 (visited, July 18, 2022).

impediment to securing to [black citizens] that equal justice which the law aims to secure to all others." *Batson v. Kentucky*, 476 U.S. 79, 87-88 (1986) (internal citation omitted). As racism must be judicially condemned in the choosing of a criminal jury, *Batson*, *supra*, and during deliberations, *Pena-Rodriguez*, *supra*, surely it must be deemed abhorrent in the sentencing of a criminal defendant.

To allow this known and fixable racial disparity to continue runs directly counter to the significant public interest of protecting the Equal Protection rights of African American defendants. The problem here has been long known. Indeed, the Sentencing Commission recommended a 1:1 crack to powder cocaine ratio to Congress in 1995, 2002 and 2007.[9] This Court should thus not be precluded from addressing the racial disparity in Mr. Fryar's sentencing caused by the crack / powder dynamic. Based on the above, the appeal waiver should not be enforced.

---

[9] *See again, The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, supra at 303, fn. 147-149.

17

## II.   The sentence was procedurally and substantively unreasonable

Because he is African American and convicted of a crime involving cocaine (under § 841(b)(1)(B)(iii)), Octavius Fryar will ultimately face more prison time because crack cocaine is more prevalent among the African American community, just as powder cocaine is more prevalent among the White community. The Supreme Court has expressly held that a sentencing court "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." *Kimbrough v. United States*, 552 U.S. 85, 92 (2007). While the District Court in our matter confirmed it would impose a sentence consistent with "the EQUAL Act adjustments," A 93, its failure to fully address this systemic dysfunction in its sentence constituted an abuse of discretion.

A. Standards of Review

Appellate review of the reasonableness of a sentence involves two steps:  first, this Court must determine whether the sentencing judge committed any procedural errors; and second, the Court must assess whether the length of the sentence is substantively reasonable under

the totality of the circumstances. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) *(en banc)*; *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008), citing *Gall v. United States*, 552 U.S. 38, 50-51 (2007) (other citations omitted). In the process, 18 U.S.C. § 3553(a) factors must be given due consideration, and the court must provide its sentencing reasons on the record in order to facilitate a proper review. *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Dorvee*, 616 F.3d 174, 179, 182-183 (2d Cir. 2010).

A District Court is required under the § 3553(a) parsimony clause to impose a sentence that is sufficient but no greater than necessary to comply with the purposes of sentencing as delineated under § 3553(a)(2). *See generally*, *Rosales-Mireles v. United States*, 585 U.S. __, 138 S. Ct. 1897, 1903 (2018). These include reflecting the seriousness of the offense, promoting respect for the law, providing a just punishment, affording adequate deterrence and protecting the public from further crimes of the defendant.

Appellate review of sentencing decisions is conducted under a "deferential abuse of discretion standard." *Cavera*, 550 F.3d at 189. But while District Courts have broad discretion, it is not unlimited.

19

*United States v. Mumuni*, 946 F.3d 97, 106 (2d Cir. 2019). In our

Circuit, there is no presumption of reasonableness in a sentence, even

if it falls within a Guidelines range. *Cavera*, 550 F.3d at 189.

This Court will reverse for substantive unreasonableness where

the administration of justice would be damaged by a sentence that is

shockingly high or low, or is "otherwise unsupportable as a matter of

law." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019), citing

*United States v. Mi Sun Cho*, 713 F.3d 716, 723 (2d Cir. 2013) (per

curiam) (other citations omitted).

B. <u>The court violated the § 3553(c) mandate to adequately state the reasons for its sentence, thus making it procedurally unreasonable</u>

Title 18 of the U.S. Code, § 3553(c), "unambiguous[ly]" mandates

that District Courts state their reasons in open court for a particular

sentence. *United States v. Molina*, 356 F.3d 269, 276 (2d Cir. 2004). A

court commits procedural error "if it fails *adequately* to explain its

chosen sentence." *Cavera*, 550 F.3d at 190 (emphasis added). This

requirement provides notice for the defendant, transparency for the

public and a sufficient record to facilitate appellate review. *Molina*, 356

F.3d at 276-277 (recognizing that "Congress had goals in mind when it

enacted § 3553(c), including: (1) to inform the defendant of the reasons for his sentence, (2) to permit meaningful appellate review, (3) to enable the public to learn why defendant received a particular sentence, and (4) to guide probation officers and prison officials in developing a program to meet defendant's needs" (internal citations omitted)).[10]

While a sentencing judge is presumed to have properly considered § 3553(a) factors in the absence of contrary evidence, *United States v. Young*, 811 F.3d 592, 599 (2d Cir. 2016), where a court contravenes its own premise, we must presume it acted erroneously. Of course, the clarity with which a court must explain itself is dependent upon the circumstances before it:

> Just how much of an explanation this requires …
> depends, as we have said, upon the circumstances
> of the particular case. In some cases, it may be

[10] *See also, Chavez-Meza v. United States*, __ U.S. __ , 138 S. Ct. 1959, 1965 (2018) (addressing appellate review issue), citing *Rita*, 551 U.S. at 356 (recognizing "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority"); *United States v. Crosby*, 397 F.3d 103, 116 (2d Cir. 2005) (explaining the continued post-*Booker* importance of § 3553(c)).

> sufficient for purposes of appellate review that the
> judge simply relied upon the record, while making
> clear that he or she has considered the parties'
> arguments and taken account of the §
> 3553(a) factors, among others. But in other cases,
> more explanation may be necessary (depending,
> perhaps, upon the legal arguments raised at
> sentencing...).

*Chavez-Meza*, 138 S. Ct. at 1965. So when the parties agree that a

racial disparity is present in the sentencing scheme before the court - -

and the court agrees (within the statutory bounds) to remedy it - - it

must either do so or state the reasons why it failed to follow its own

rationale.

Mr. Fryar appreciates this Court's general, but limited, deference

to sentencing courts in how they articulate a sentence:

> There is no mechanical test for compliance with
> § 3553(c). The adequacy of an explanation is
> highly case specific, as "the length and level of
> detail required varies depending upon the
> circum-stances." This Court has therefore
> refused to "encroach upon the province of district
> courts by dictating a precise mode or manner in
> which they must explain the sentences they
> impose." We have declined to "insist that the
> district court address every argument the
> defendant has made or discuss every § 3553(a)
> factor individually"; "prescribe any formulation a
> sentencing judge will be obliged to follow in order
> to demonstrate discharge of the duty to consider

> the Guidelines"; or otherwise require "robotic incantations by district judges." …
>  Indeed, the "statement" requirement of § 3553(c) sets a low threshold. As the Supreme Court has explained: "<u>The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances</u>." … Moreover, as this Court has recognized, "a brief statement of reasons will generally suffice where the parties have addressed only straightforward, conceptually simple arguments to the sentencing judge."

*United States v. Rosa*, 957 F.3d 113, 119-120 (2d Cir. 2020) (internal citations omitted and emphasis added). But while "[t]he "context and the record" may render a district court's explanation adequate even where "the judge might have said more,"" *id*., the converse is equally true where the "context and the record" require further explanation.

After unequivocally agreeing with the parties' position regarding the EQUAL Act and the cocaine disparity issue, the District Court sentenced Mr. Fryar to 69 months. A 91-93. Said the court:

> The Court also agrees with the parties that <u>the EQUAL Act adjustments are appropriate in this case</u>. Accordingly, the Court concludes that a sentencing range of 110 to 137 months is appropriate <u>after the EQUAL Act adjustments</u>. <u>That being said, the Court determines that a sentence of 69 months of incarceration</u>, to be followed by four years of supervised release, is appropriate under these circumstances.

23

A 93 (emphasis added). But 110 to 137 is not the appropriate range after the EQUAL Act adjustments. Having effectively intended to use the powder cocaine range, the court's miscalculation of the guidelines range was procedurally unreasonable. Note that the court did not state it would merely impose a § 3553(a) variance of some non-quantitative amount of time reduction loosely related to the EQUAL Act. Put another way, the District Court was not merely "considering" the 1:1 ratio under the morass of § 3553(a).

In fact, the court's analysis of Mr. Fryar's § 3553(a) factors started and ended, A 91-93, *prior* to its crack / powder ratio ruling. Rather, the court made an unambiguous and specific finding that "the EQUAL Act adjustments" were to be in fact applied, which would have resulted in a Guidelines range of 60 months, the mandatory minimum. As a 69-month sentence is inconsistent with that finding, "the EQUAL Act adjustments" were not substantively implemented. Having given no reason for this above (powder cocaine) Guidelines determination, the court's only likely basis was the gravitational pull of the racially disparate (crack cocaine) Guidelines calculation. *See generally*, *United States v. Ingram*, 721 F.3d 35, 40, n.2 (2d Cir. 2013) (Calabresi, J.,

24

concurring) (recognizing "the unintended anchoring effect that the guidelines can exert" and that judges may "irrationally assign too much weight to the guidelines range, just because it offers some initial numbers"). Indeed, the true Guidelines calculation was 41 to 51 months and it is only the racially disparate mandatory minimum that compulsorily pulled it upward to 60 months. Thus, the court's 69-month sentence represents a racially driven upward departure of potentially ***28 months***.

Moreover, Mr. Fryar's unreasonable sentence argument satisfies the plain error standard under Federal Rule of Criminal Procedure 52(b), which requires: (1) that there be an actual error that was forfeited, (2) that the error be plain or obvious, (3) that the error affect substantial rights, and (4) that the error seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *See*, *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Murphy*, 942 F.3d 73, 84 (2d Cir. 2019).

To begin with, under the present circumstances, the District Court merely adopting the PSR, A 90, does not successfully fend off our plain error argument. While this Court has observed that "failure to

25

satisfy the open court requirement of § 3553 . . . does not constitute

'plain error' if the district court relies on the PSR, and the factual

findings in the PSR are adequate to support the sentence," *United

States v. Espinoza*, 514 F.3d 209, 212 (2d Cir. 2008) (other internal

citations omitted), unlike in *Espinoza* and most other sentencings, the

District Court below adopting the PSR's factual findings does not even

approach the issue of its intrinsically erroneous sentence. Here, the

court's stated reasons for its sentence simply do not match the prison

sentence imposed. In other words, the court's reasons at bar were not

otherwise "apparent from the record." *United States v. Fox*, 2023 U.S.

App. Lexis 1853, at *4, 2023 WL 379539 (2d Cir., Jan. 25, 2023); *see

also*, *United States v. Gonzalez*, 851 Fed. Appx. 281, 282-283 (2d Cir.

2021) (recognizing that simply adopting the PSR, while omitting

commentary as to what facts drove the sentence, is insufficient under §

3553(c)).

    If the District Court intended on ceasing its analysis after

rejecting the government's Career Offender argument, A 92-93, which

landed Mr. Fryar between 110 and 137 months, it should have said so.

Moreover, after stating its EQUAL Act related intentions, if the court

believed, for instance, that 69 *(as opposed to 60)* months was more consistent with the § 3553(a) parsimony clause, it should have indicated why a sentence above the powder cocaine Guidelines was warranted. Again, if the 1:1 ratio issue is dropped into the § 3553(a) factor basket by default, this contravenes the Court's stated reasons for its sentence.

In contrast to simply adopting the PSR findings in lieu of an affirmative § 3553(c) statement, *i.e.*, *United States v. Simmons*, 670 Fed. Appx. 19, at *20 (2d Cir. 2016), the District Court below committed a plain and obvious affirmative error. Again, despite its findings and legal conclusion that the 1:1 ratio was applicable and that the EQUAL Act "adjustments" were to be imposed, A 93, the District Court failed to sentence Mr. Fryar consistent with the sentencing range that would most remedy the racially-charged cocaine disparity. In so doing, Mr. Fryar's substantive rights were affected, and the fairness, integrity and public reputation of the proceedings were substantially affected as well. *See again*, *Murphy*, 942 F.3d at 84.

Indeed, all three audiences, the appellant, the public and this Court, were deprived of a coherent reason on the record for the District

Court's particular sentence of 69 months. *See, Rita*, 551 U.S. at 356
(recognizing that "[j]udicial decisions are reasoned decisions.
Confidence in a judge's use of reason underlies the public's trust in the
judicial institution. A public statement of those reasons helps provide
the public with the assurance that creates that trust."); *Gonzalez*, 851
Fed. Appx. at 283 (observing that "[m]aintaining th[e] [public's] trust is
of critical importance").

Here, the District Court provided no *reasoned basis* for Mr.
Fryar's *particular* sentence. In a vacuum, or under other
circumstances, 69 months could potentially be viewed as reasonable.
But through the lens of the court's analysis on the record, this prison
sentence does not match up with the reasoning actually conducted. The
sentence was thus procedurally unreasonable.

C. The known racial disparity also makes
the sentence substantively unreasonable

The District Court abused its discretion in not applying the 1:1
ratio, which would have addressed, to the extent the statute permitted,
the unwarranted sentencing disparity between crack and powder
cocaine. Both parties urged the District Court to adopt the DOJ's long

28

touted public position to treat all cocaine cases the same. *See again*, A 79-80, 88-89. In light of the successful defense objection to the court adjudicating appellant as a Career Offender, A 92-93, Mr. Fryar's advisory Guidelines range, without the crack / powder disparity, was 41 to 51 months, thus making the mandatory minimum 60 months the only fair and just sentence under the circumstances. *See*, 18 U.S.C. § 3553(a)(2)(A). Instead, Mr. Fryar is serving nine (9) months beyond the sentence most compliant with the 1:1 ratio.

Post-*Kimbrough*, District Courts possess the authority to consider and apply the 1:1 ratio in imposing drug sentences. *See, e.g.*, *United States v. Simmonds*, No. 5:13-cr-42 (D. Vt.) (Reiss, C.J.) (judicial comments at February 25, 2015 drug conspiracy sentencing, Dkt. 145, as reported in *United States v. Parker*, 2015 U.S. Dist. Lexis 177126, at *46, fn. 13 (D. Vt. April 8, 2015): "in the absence of something that would tell me that 18-to-1 reflects some facts that should be encapsulated in sentencing, I don't see a reason to continue to adhere to it. I think it produces unfairness."); *United States v. Whigham*, 754 F. Supp. 2d 239, 246 (D. Mass. 2010) (Gertner, J.) ("I will apply a 1:1 ratio for all crack cocaine sentencings"); *United States v. Gully*, 619 F.

Supp. 2d 633, 636-646 (N.D. Iowa 2009) (Bennett, J.) (observing that "[e]ven if crack is more addictive than powder, and even if crack offenses are more likely to involve weapons or bodily injury or to be associated with higher levels of crime... the 100:1 ratio is a remarkably blunt instrument to address those effects, because it simply assumes that the quantity ratio can be a proxy for these other harms, instead of basing the punishment on the additional criminal effects and use of weapons *when they are present in a particular case*") (emphasis in original); *United States v. Lewis*, 623 F. Supp. 2d 42, 45-48 (D.D.C. 2009) (Friedman, J.) (noting that "in the future, this Court will apply the 1-to-1 ratio in all crack cocaine cases and then will separately consider all aggravating factors applicable in any individual case, such as violence, injury, recidivism or possession or use of weapons").

In addition to the courts, the Sentencing Commission recognizes the present statutory regime as inherently unfair.[11] As averred above, Congress continues to grapple with this issue as well. The EQUAL Act

---

[11] *See*, U.S. Sentencing Commission, 2021 Sourcebook of Federal Sentencing Statistics, Table D-2 (reporting that for crack cocaine offenses, over 77 % of defendants were Black, while 6 % were White; for powder cocaine offenses, 25% were Black, and almost 7 % were White).

legislation, proposed in 2021, would finally incorporate a 1:1 ratio between the two forms of cocaine into § 841(b)(1).[12] The DOJ has enthusiastically supported this legislation. In its testimony before the Senate Judiciary Committee, the DOJ indicated it "strongly supports the [EQUAL Act] legislation, for [it] believe[d] it is long past time to end the disparity in sentencing policy between federal offenses involving crack cocaine and those involving powder cocaine."[13] Some other compelling points made by the DOJ before Congress:

---

[12] On September 28, 2021, the United States House of Representatives approved the Equal Act in an overwhelmingly bipartisan vote of 361-66. *See*, H.R. 1693, 117th Congress (2021-2022), accessible at: congress.gov/bill/117th-congress/house-bill/1693 (visited, July 18, 2022).

[13] *See*, *Statement of the U.S. Department of Justice Before the United States Senate Committee on the Judiciary for a Hearing Entitled "Examining Federal Sentencing for Crack and Powder Cocaine,"* at 1 (June 22, 2021), accessible at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://sentencing.typepad.com/files/doj-equal-act-testimony--final.pdf (visited, Feb. 21, 2023); *see also*, DOJ Memorandum for All Federal Prosecutors regarding "Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases," dated December 16, 2022 (recognizing the DOJ "supports elimination of the crack-to-powder sentencing disparity and has testified before Congress in support of the EQUAL Act, S. 79, which would remove that disparity"), accessible at: https://www.fd.org/news/ag-issues-two-new-charging-memos (visited Feb. 27, 2023); *see also*, June 22, 2021 congressional testimony of Regina M. LaBelle, Acting Director of the Office of National Drug Control Policy, at pp. 1-3 (testifying that "this sentencing disparity is

- "The disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal criminal justice system for almost 35 years, and it is time to eliminate it." *Id*. at 2.

- "The crack/powder disparity sentencing has unquestionably led to unjustified differences in sentences for trafficking in two forms of the same substance, as well as unwarranted racial disparities in its application." *Id*. at 1.

- "The sentencing disparity was based on misinformation about the pharmacology of cocaine and its effects, and it is unnecessary to address the genuine and critical societal

---

not based on sound science" and that under the disparity "is part of a larger system with separate and unequal tracks for people of color and white people in the United States who use drugs or have [a] substance use disorder") and statement of the Honorable Asa Hutchinson, Governor of Arkansas, at pp. 1-2 (recognizing "[t]here is nothing in the legislative history of the Anti-Drug Abuse Act to indicate that the 100-to-1 disparity was based on science" and that "the sentencing disparity was entirely arbitrary"); testimony of both witnesses accessible at: https://www.judiciary.senate.gov/meetings/examining-federal-sentencing-for-crack-and-powder-cocaine (visited, Aug. 3, 2022).

problems associated with trafficking cocaine, including violent crime." *Id*. at 1.

- The DOJ supports this watershed change because it "will ensure that no crack cocaine offender will serve a sentence greater than necessary." In sum, "[t]he [DOJ] believes that the current federal cocaine sentencing structure is wrong and must be changed." *Id*. at 8.

Indeed, utilizing a 1:1 cocaine ratio is long past due. The Anti-Drug Abuse Act of 1986 first codified the cocaine disparity, creating a framework that punished an offense involving one gram of cocaine base just as harshly as an offense involving 100 grams of powder cocaine.[14] This ratio contravened overwhelming scientific evidence that "has demonstrated that powder cocaine and crack cocaine produce similar physiological and psychological effects once they reach the brain." *See*

---

[14] *See*, U.S. Sentencing Commission, *2015 Report to the Congress: Impact of the Fair Sentencing Act of 2010 (August 2015)*, accessible at: https://www.ussc.gov/research/congressional-reports/2015-report-congress-impact-fair-sentencing-act-2010#:~:text=The%20Fair%20Sentencing%20Act%20of%202010%20(FSA)%2C%20enacted%20August,cocaine%20and%20increased%20statutory%20fines (visited, Aug. 3, 2022).

*again*, June 22, 2021 DOJ cong. testim., supra at p. 4; *see also*,

*Kimbrough*, 552 U.S. at 94 (observing that "the active ingredient in

powder and crack cocaine is the same" and that "the two forms of the

drug also have the same physiological and psychotropic effects").

The 100:1 ratio had a devastating and racially disparate impact

on African American defendants charged with drug-trafficking

offenses. In 2010, however, Congress began remedying this disparity in

passing the Fair Sentencing Act ("FSA"), which reduced the disparity

from 100:1 to 18:1.[15] *See generally*, *Concepcion v. United States*, 597

U.S. __ , 142 S. Ct. 2389, 2396-2397 (2022) (explaining legislation).

While the FSA *reduced* the impact of the crack/powder disparity, it

came nowhere near to eliminating it.[16] As described in the DOJ's

congressional testimony, "[t]he research is clear that crack and powder

---

[15]  *See again*, U.S. Sentencing Commission, *2015 Report to the Congress: Impact of the Fair Sentencing Act of 2010 (August 2015)*, supra at footnotes 10 through 13.

[16]  *See*, United States Sentencing Commission, Quick Facts: Crack Cocaine Trafficking Offenses (2021) (reporting same statistics as in footnote 10 above), accessible at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Crack_Cocaine_FY21.pdf (site visited, July 6, 2022).

cocaine are two forms of the same substance, and powder cocaine can readily be converted into an equivalent amount of a substance containing crack cocaine." *See again*, June 22, 2021 DOJ cong. testim., supra at p. 4.

Mr. Fryar's story is not unique in the African American community. A native of North Carolina, he was 54 years old at the time of sentencing. A 30-31, 63, 72, 80; PSR pg. 2 and ¶¶ 64, 70. Mr. Fryar has spoken to his father exactly three times in his life, the last contact being a decade ago. A 63, 81; PSR ¶ 64. He has three children of his own. A 64; PSR ¶¶ 72, 74-75. Mr. Fryar has a high school degree, as well as 42 college credits achieved (with a 3.8 GPA) while in custody. A 31, 64, 72, 80; PSR ¶¶ 105-106.

Almost all of the appellant's criminal history is drug-related. A 64-66, 88; PSR ¶¶ 32-50. Parroting our nation's failed war on drugs, Mr. Fryar has struggled with drug and substance abuse addiction, including crack cocaine, for most of his life. *See*, A 64-66, 80-81, 88; PSR ¶¶ 86-102. He has also suffered from PTSD following a shooting and robbery he was a victim of in 2006. PSR ¶¶ 82, 84. He also has a

history of undiagnosed mental health issues, for which he was taught to suppress growing up. A 65-66.

Mr. Fryar apologized at sentencing to the community and the court for not being "part of the solution God put [him] on this planet to be." A 90.[17] Upon his release, the appellant would reside with his mother in North Carolina, with whom he remains in regular contact.

---

[17] The appellant further submitted a handwritten letter to the court prior to sentencing, setting out in eloquent terms his self-reflective and thoughtful comments on his long-time addictions, short comings and sentencing:

> I accept culpability because it is I who has fallen on my own sword, the same sword used for protection of freedom has now taken it away… the path[ ]  of least resistance will most always be the road to self-destruction… I am asking for a chance to start establishing some traits characterized by trust and to be allowed to be a constructive member of society in the very near future… I think of regular words like shame, guilt, remorse, sorrow, frustration, resentment, disgust… I've spent these past many months of incarceration ruminating, learning and grasping the process of becoming a better man, father, grandfather, son, uncle, friend, neighbor and practicing these principles in all my affairs that I have acquired...

A 69-70.

PSR ¶¶ 66, 77. Mr. Fryar, who is too old to continue his previous ways, seeks a life now with sobriety and a better relationship with his children and siblings. A 82.

Here, the District Court's failure to apply equal punishment for equal weight of the same drug in a different form produced a fundamentally unjust and unfair result. *See again*, 18 U.S.C. § 3553(a)(2)(A). Sentencing Mr. Fryar to extra prison time beyond appropriately calculated powder cocaine Guidelines range and the § 841(b)(1)(B) mandatory minimum 60-month term, under these inherently unfair and well-known circumstances, was unreasonable.

## **Conclusion**

This Court should invalidate the appeal waiver and remand with instructions for the District Court, to the extent statutorily permissible, to resentence Mr. Fryar consistent with a 1:1 crack / powder cocaine ratio.

Dated:      April 19, 2023
            Buffalo, New York

                          Respectfully submitted,

                          **/s/ Timothy P. Murphy**
                          Timothy P. Murphy
                          Federal Public Defender's Office
                          Western District of New York
                          300 Pearl Street, Suite 200
                          Buffalo, New York 14202
                          Telephone: (716) 551-3341

## <u>Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements</u>

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————

UNITED STATES OF AMERICA,                    **22-1670-cr**

        Appellee,

     v.

OCTAVIUS FRYAR, AKA Tate,

        Defendant-Appellant.

———————————————

1.    This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

- ■    this brief contains 6,314 words, excluding the parts of the brief exempted by Fed.R. App.P. 32(a)(7)(B)(iii), *or*

- ☐    this brief uses a monospaced typeface and contains [*state the number of* ] lines of text, excluding the parts of the brief exempted by Fed.R.App.P.32(a) (7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5)and the type style requirements of Fed.R. App.P. 32(a)(6)because:

■     this brief has been prepared in a proportionally spaced
       typeface using Century Schoolbook in size 14 font,

                 *or*

☐     this brief has been prepared in a monospaced typeface using
       Microsoft Word 2013 with _____.

Dated:         April 19, 2023
               Buffalo, New York


                        Respectfully submitted,


                        **/s/ Timothy P. Murphy**
                        Timothy P. Murphy
                        Federal Public Defender's Office
                        Western District of New York
                        300 Pearl Street, Suite 200
                        Buffalo, New York 14202
                        Telephone: (716) 551-3341

40