# 22-1670-cr

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———

UNITED STATES OF AMERICA,

*Appellee,*

v.

OCTAVIUS FRYAR, AKA Tate,

*Defendant-Appellant.*

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———

## JOINT APPENDIX

———

**DEREK WIKSTROM**
United States Attorney's Office
Southern District of New York
*Attorney for Appellee*
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-1085

**TIMOTHY P. MURPHY**
Federal Public Defender's Office
Western District of New York
*Attorney for Defendant-Appellant*
300 Pearl Street, Suite 200
Buffalo, New York 14202
Telephone: (716) 551-3341

# <u>TABLE OF CONTENTS</u>

Docket Entries, 7:21-cr-00703 .................................................................. 1

Waiver of Indictment, November 16, 2021 ............................................ 11

Information, November 16, 2021 ........................................................... 12

Plea agreement, January 31, 2022 ....................................................... 16

Plea hearing transcript, March 4, 2022 ................................................ 25

Defense correspondence regarding sentencing, July 8, 2022 ................ 57

Defendant's *pro se* correspondence regarding
   sentencing, July 18, 2022 .................................................................. 69

Sentencing hearing transcript, July 20, 2022 ....................................... 71

Judgment, entered July 25, 2022 .......................................................... 96

Notice of Appeal, filed July 30, 2022 ................................................. 104

*Submitted in separate, sealed envelope along with the Joint Appendix is
the Revised Presentence Investigation Report, dated June 27, 2022 &
Letter filed under seal, July 17, 2022.*
**(not for public disclosure)**

i

A-1

**Query      Reports      Utilities      Help      Log Out**

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:21-cr-00703-NSR-1

Case title: USA v. Fryar                                    Date Filed: 11/16/2021

Magistrate judge case number: 7:20-mj-12259-UA              Date Terminated: 07/22/2022

---

Assigned to: Judge Nelson Stephen Roman

### Defendant (1)

**Octavius Fryar**                          represented by  **Francis Lee O'Reilly**
*TERMINATED: 07/22/2022*                                    Law Office of Francis L. OReilly
*also known as*                                             1735 Post Road, Suite 2C
Tate                                                        Fairfield, CT 06824
*TERMINATED: 07/22/2022*                                    203-319-0707
                                                            Email: attflor@aol.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: CJA Appointment*

### Pending Counts                          ### Disposition

                                            Imprisonment for a total term of Sixty-Nine
                                            (69) Months. The Court agrees with the
                                            parties that the Equal Act adjustments are
                                            appropriate in this case and that the custody
21:846=CD.F CONSPIRACY TO                   Guidelines should be 110-137 months.
DISTRIBUTE CONTROLLED                       Although Defendant waived his right to
SUBSTANCE                                   appeal under the plea agreement, the Court
(1)                                         directed Defendants attorney to thoroughly
                                            discuss the ramifications of the waiver with
                                            Defendant. Supervised release for a term of
                                            Four (4) Years, subject to the standard
                                            conditions 1-12 as well as mandatory and
                                            special conditions.

### Highest Offense Level (Opening)

Felony

### Terminated Counts                       ### Disposition

None

### Highest Offense Level (Terminated)

2/17/23, 11:33 AM

SDNY CM/ECF NextGen Version 1.6

None

| **Complaints** | **Disposition** |
|---|---|
| 18:922G.F UNLAWFUL TRANSPORT OF FIREARMS, ETC. | |

**Plaintiff**

USA                         represented by **Derek Wikstrom**
DOJ-USAO
300 Quarropas Street
White Plains, NY 10601
914-993-1946
Email: derek.wikstrom@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/16/2020 | 1 | COMPLAINT as to Octavius Fryar (1). Approved. (Signed by Magistrate Judge Judith C. McCarthy) (lnl) [7:20-mj-12259-UA] (Entered: 11/16/2020) |
| 11/16/2020 | 2 | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy: Initial Appearance as to Octavius Fryar held on 11/16/2020. AUSA Derek Wikstrom present. The defendant consents to proceed remotely and is advised of his rights and the charges against him. Public reading of the complaint is waived. Financial Affidavit approved. Frank O'Reilly is appointed to represent the defendant. The defendant is denied bail and remanded to the custody of the US Marshals. Preliminary Hearing: 11/30/2020. (AT&T Recording) (lnl) [7:20-mj-12259-UA] (Entered: 11/17/2020) |
| 11/16/2020 | 3 | CJA 23 Financial Affidavit by Octavius Fryar. APPROVED. (Signed by Magistrate Judge Judith C. McCarthy) (lnl) [7:20-mj-12259-UA] (Entered: 11/17/2020) |
| 11/16/2020 | 4 | CONSENT TO PROCEED BY VIDEO OR TELECONFERENCE as to Octavius Fryar. (Signed by Magistrate Judge Judith C. McCarthy on 11/16/2020) (lnl) [7:20-mj-12259-UA] (Entered: 11/17/2020) |
| 11/16/2020 | 5 | MEDICAL ORDER as to Octavius Fryar. (Signed by Magistrate Judge Judith C. McCarthy on 11/16/2020) (lnl) [7:20-mj-12259-UA] (Entered: 11/17/2020) |
| 11/24/2020 | 6 | ENDORSED LETTER as to Octavius Fryar addressed to Magistrate Judge Paul E. Davison, from Derek Wikstrom dated 11/24/2020 re: The Government writes to request a continuance. ENDORSEMENT: Granted. The Government is directed to make certain this case appears on the preliminary hearing calendar for 12/16/20. (Signed by Magistrate Judge Paul E. Davison on 11/24/2020) (ap) [7:20-mj-12259-UA] (Entered: 11/24/2020) |
| 12/16/2020 | 7 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 12/16/2020 until 1/13/2021. (Signed by Magistrate Judge Paul E. Davison on 12/16/2020) (ap) [7:20-mj-12259-UA] (Entered: 12/17/2020) |
| 01/14/2021 | 8 | 2ND ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 1/13/21 until 2/10/21. (Signed by Magistrate Judge Judith C. McCarthy on 1/13/2021)(jw) [7:20-mj-12259-UA] (Entered: 01/14/2021) |

A-3

| 01/14/2021 | 9 | AFFIRMATION of Derek Wikstrom in Support by USA as to Octavius Fryar re: 8 Order to Continue - Interest of Justice (jw) [7:20-mj-12259-UA] (Entered: 01/14/2021) |
| 02/11/2021 | 10 | 3rd ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 2/11/2021 until 3/10/2021. (Signed by Magistrate Judge Andrew E. Krause on 2/11/2021) (lnl) [7:20-mj-12259-UA] (Entered: 02/11/2021) |
| 02/11/2021 | 11 | AFFIRMATION of Derek Wikstrom in Support by USA as to Octavius Fryar re: 10 3rd Order to Continue - Interest of Justice. (lnl) [7:20-mj-12259-UA] (Entered: 02/11/2021) |
| 03/11/2021 | 12 | 4TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 3/10/2021 until 4/7/2021. (Signed by Magistrate Judge Andrew E. Krause on 3/10/2021) (ap) [7:20-mj-12259-UA] (Entered: 03/11/2021) |
| 03/11/2021 | 13 | AFFIRMATION of Derek Wikstrom in Support by USA as to Octavius Fryar re: 12 Order to Continue - Interest of Justice. (ap) [7:20-mj-12259-UA] (Entered: 03/11/2021) |
| 04/07/2021 | 14 | 5TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 4/7/2021 until 5/5/2021. (Signed by Magistrate Judge Andrew E. Krause on 4/7/2021) (ap) [7:20-mj-12259-UA] (Entered: 04/07/2021) |
| 04/07/2021 | 15 | AFFIRMATION of Derek Wikstrom in Support by USA as to Octavius Fryar re: 14 Order to Continue - Interest of Justice. (ap) [7:20-mj-12259-UA] (Entered: 04/07/2021) |
| 05/05/2021 | 16 | 6TH ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Octavius Fryar. Time excluded from 5/5/2021 until 6/2/2021. (Signed by Magistrate Judge Judith C. McCarthy on 5/5/2021) (ap) [7:20-mj-12259-UA] (Entered: 05/05/2021) |
| 05/05/2021 | 17 | AFFIRMATION of Derek Wikstrom in Support by USA as to Octavius Fryar re: 16 Order to Continue - Interest of Justice. (ap) [7:20-mj-12259-UA] (Entered: 05/05/2021) |
| 05/25/2021 | 18 | NOTICE OF ATTORNEY APPEARANCE Stephanie Simon appearing for USA. (Simon, Stephanie) [7:20-mj-12259-UA] (Entered: 05/25/2021) |
| 06/02/2021 | 19 | LETTER by USA as to Octavius Fryar addressed to Magistrate Judge Paul E. Davison from Stephanie Simon dated June 2, 2021 re: Application for 7th Order of Continuance Document filed by USA. (Simon, Stephanie) [7:20-mj-12259-UA] (Entered: 06/02/2021) |
| 06/02/2021 | 20 | STIPULATION IN SUPPORT OF APPLICATION FOR 7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 7TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 6/2/2021 until 6/30/2021. (Signed by Magistrate Judge Paul E. Davison on 6/2/2021) (ap) [7:20-mj-12259-UA] (Entered: 06/02/2021) |
| 06/30/2021 | 21 | STIPULATION IN SUPPORT OF APPLICATION FOR 7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 8TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 6/30/2021 until 7/28/2021. (Signed by Magistrate Judge Andrew E. Krause on 6/30/2021) (lnl) [7:20-mj-12259-UA] (Entered: 07/01/2021) |
| 07/29/2021 | 22 | STIPULATION IN SUPPORTOF APPLICATION FOR7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 9TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 7/28/2021 until 8/25/2021. (Signed by Magistrate Judge Judith C. McCarthy on 7/28/2021) (ap) [7:20-mj-12259-UA] (Entered: 07/29/2021) |
| 08/25/2021 | 23 | STIPULATION IN SUPPORT OF APPLICATION FOR 7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 10TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 8/25/21 until 9/22/21. (Signed by Magistrate Judge Paul E. Davison on 8/25/21)(jw) [7:20-mj-12259-UA] (Entered: 08/25/2021) |

| 09/22/2021 | 24 | STIPULATION IN SUPPORT OF APPLICATION FOR 7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 11TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 9/22/2021 until 10/20/2021. (Signed by Magistrate Judge Andrew E. Krause on 9/22/2021) (ap)[7:20-mj-12259-UA] (Entered: 09/22/2021) |
| --- | --- | --- |
| 10/20/2021 | 25 | STIPULATION IN SUPPORT OF APPLICATION FOR 7TH OR SUBSEQUENT ORDER OF CONTINUANCE AND 12TH ORDER OF CONTINUANCE as to Octavius Fryar. Time excluded from 10/20/2021 until 11/17/2021. (Signed by Magistrate Judge Judith C. McCarthy on 10/20/2021) (ap) [7:20-mj-12259-UA] (Entered: 10/20/2021) |
| 11/12/2021 | 26 | SCHEDULING ORDER as to Octavius Fryar: The Court has scheduled an arraignment on an information for 11/16/2021 at 11:30 am before Magistrate Judge Paul E. Davison. The Court expects to conduct the proceeding in person at the Hon. Charles L. Brieant, Jr., Courthouse, 300 Quarropas Street, Courtroom 420, White Plains, NY 10601. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The questionnaire is located on the Courts website at https://nysd.uscourts.gov /sites/default/files/2020-10/QR%20Sign%20-%20Public_Media_v.5.pdf. (Arraignment set for 11/16/2021 at 11:30 AM in Courtroom 420, 300 Quarropas Street, White Plains, NY 10601 before Magistrate Judge Paul E. Davison) (Signed by Magistrate Judge Paul E. Davison on 11/12/2021) (ap) (Main Document 26 replaced on 11/12/2021) (ap). [7:20-mj-12259-UA] (Entered: 11/12/2021) |
| 11/16/2021 | 27 | INFORMATION (Felony) filed as to Octavius Fryar (1) count(s) 1. (lnl) (Entered: 11/16/2021) |
| 11/16/2021 | | Case Designated ECF as to Octavius Fryar. (lnl) (Entered: 11/16/2021) |
| 11/16/2021 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Arraignment as to Octavius Fryar (1) Count 1 held on 11/16/2021. The defendant present with defense counsel Frank O'Reilly. AUSA: Steven Kochevar present for the Government. Court Reporter: Courtflow. The defendant was arraigned on the one count Felony Information, waives public reading, and enters a not guilty plea. The matter has been wheeled out and assigned to Judge Roman. Time excluded under the Speedy Trial Act to no later than 11/30/21. Further requests for exclusions should be made to the district judge. Rule 5F obligations reviewed with the Government. The defendant remains remanded. **Plea entered by Octavius Fryar (1) Count 1 Not Guilty.** (lnl) (Entered: 11/16/2021) |
| 11/16/2021 | 28 | WAIVER OF INDICTMENT by Octavius Fryar. (lnl) (Entered: 11/16/2021) |
| 11/16/2021 | 29 | RULE 5(f) ORDER as to Octavius Fryar. (Signed by Magistrate Judge Paul E. Davison on 11/16/2021) (lnl) (Entered: 11/16/2021) |
| 11/18/2021 | 30 | SCHEDULING ORDER as to Octavius Fryar. It is hereby ORDERED that the above case is scheduled for Initial Appearance via teleconference on November 23, 2021 at 3:00 pm. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest (Initial Appearance set for 11/23/2021 at 03:00 PM before Judge Nelson Stephen Roman.) (Signed by Judge Nelson Stephen Roman on 11/18/2021)(jw) (Entered: 11/18/2021) |
| 11/23/2021 | 31 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated November 23, 2021 re: Waiver of In Person Hearing . Document filed by Octavius Fryar. (O'Reilly, Francis) (Entered: 11/23/2021) |
| 11/23/2021 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman:Initial Appearance via telephone as to Octavius Fryar held on 11/23/2021. Defendant Octavius Fryar present with counsel Francis L. OReilly, Esq. AUSA Derek Wikstrom also present. |

A-5

| | | |
|---|---|---|
| | | Sue Ghorayeb is court reporter. The Court finds Defendant knowingly, intentionally and voluntarily waives his physical appearance and consents to this proceeding to be conducted telephonically. The Court also found sufficient reasoning pursuant to the CARES Act as to why this Initial Appearance can't be further delayed without serious harm to the interests of justice. Judge Davison previously issued an oral and written order pursuant to R. 5(f) at Defendants arraignment. The Government acknowledges its obligations. The Government hasnt produced discovery as a plea disposition is likely. The parties are awaiting a decision from the Second Circuit on a matter related to the plea disposition. Status Conference via teleconference is scheduled for February 24, 2022 at 1:00 pm with an alternate date/time of February 25, 2022 at 1:00 pm. The Court granted exclusion of speedy trial time, with no objection from Defendant, from today, November 23, 2021, until February 25, 2022 in the interests of justice. Defendant remains detained (Status Conference set for 2/24/2022 at 01:00 PM before Judge Nelson Stephen Roman.) (jw) (Entered: 11/23/2021) |
| 12/09/2021 | 32 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated December 9, 2021 re: Bail Review Application . Document filed by Octavius Fryar. (O'Reilly, Francis) Modified on 2/1/2022 (lnl). (Entered: 12/09/2021) |
| 01/05/2022 | 33 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated January 5, 2022 re: Transcript of Initial Hearing and Bail Application Hearing . Document filed by Octavius Fryar. (Attachments: # 1 Exhibit Transcript of Initial Hearing and Bail Application)(O'Reilly, Francis) Modified on 2/1/2022 (lnl). (Entered: 01/05/2022) |
| 01/06/2022 | 34 | LETTER RESPONSE in Opposition by USA as to Octavius Fryar addressed to Judge Nelson Stephen Roman from Derek Wikstrom dated January 6, 2022 re: 32 LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated December 9, 2021 re: Bail Review Application ., 33 LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated January 5, 2022 re: Transcript of Initial Hearing and Bail Application Hearing .. (Wikstrom, Derek) (Entered: 01/06/2022) |
| 01/24/2022 | 35 | SCHEDULING ORDER as to Octavius Fryar. In light of the recent Coronavirus Disease 2019 ("COVID-19") pandemic affecting New York, and given the directives provided by the Chief Judge of the United States District Court for the Southern District of New York to limit inperson court appearances due to the risk presented by COVID-19, it is hereby ORDERED that the above case is scheduled for a De Novo Bail Review Hearing via teleconference on February 1, 2022 at 1:00 pm. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest..... (Bond Hearing set for 2/1/2022 at 01:00 PM before Judge Nelson Stephen Roman.) (Signed by Judge Nelson Stephen Roman on 1/24/22)(jbo) (Entered: 01/25/2022) |
| 01/26/2022 | 36 | ENDORSED LETTER as to Octavius Fryar addressed to Judge Nelson Stephen Roman from counsel Francis L. O'Reilly dated 1/26/22 re: Interim billing as CJA... ENDORSEMENT: Deft's request to submit interim billing as CJA counsel is GRANTED. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 1/26/22)(jbo) (Entered: 01/27/2022) |
| 02/01/2022 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman: Bond Hearing as to Octavius Fryar held on 2/1/2022. De Novo Bail Review via telephone held. Defendant Octavius Fryar present with counsel Francis L. OReilly, Esq. AUSA Derek Wikstrom also present with U.S. Pretrial Services Officer Andrew Abbott. Angie Shaw-Crockett is court reporter. The Court finds Defendant knowingly, intentionally and voluntarily waives his physical appearance and consents to this proceeding to be conducted telephonically. The Court also found sufficient reasoning pursuant to the CARES Act as to why this |

| | | proceeding can't be further delayed without serious harm to the interests of justice. The Government has provided a plea offer to Defendant. Oral argument held. Defendant's application for bail is denied as the Court finds Defendant to be a risk of flight and danger to the community. The Government has demonstrated no combination of conditions set will ensure Defendant's return to Court. While the Court is sympathetic to Defendant's medical conditions, they don't outweigh the risk of flight and danger to the community that Defendant poses. Defendant remains detained. Clerk of Court requested to terminate the motions (doc. 32 and 33). (lnl) (Entered: 02/01/2022) |
|---|---|---|
| 02/18/2022 | 37 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Derek Wikstrom dated February 18, 2022 ., MOTION to cancel status conference . Document filed by USA as to Octavius Fryar. (Wikstrom, Derek) (Entered: 02/18/2022) |
| 02/18/2022 | 38 | MEMO ENDORSEMENT 37 LETTER MOTION addressed to Judge Nelson Stephen Roman from Derek Wikstrom dated February 18, 2022 . MOTION to cancel status conference as to Octavius Fryar...ENDORSEMENT...In light of a scheduled change of plea before Judge Davison, the Govt's request to cancel the Feb. 25, 2022 telephonic Status Conf. before Judge Romn is GRANTED. Clerk of Court requested to terminate the motion (doc. 37). (Signed by Judge Nelson Stephen Roman on 2/18/22) (jw) (Entered: 02/18/2022) |
| 02/18/2022 | | Terminate Deadlines and Hearings as to Octavius Fryar (jw) (Entered: 02/18/2022) |
| 03/02/2022 | 39 | LETTER MOTION addressed to Judge Nelson Stephen Roman from Francis L. O'Reilly dated March 2, 2022 re: Cares Act Finding . Document filed by Octavius Fryar. (O'Reilly, Francis) (Entered: 03/02/2022) |
| 03/03/2022 | 40 | CARES ACT ORDER as to Octavius Fryar. (Signed by Judge Nelson Stephen Roman on 3/3/2022) (lnl) (Entered: 03/03/2022) |
| 03/03/2022 | | **\*\*\*DELETED DOCUMENT. Deleted document number 41 SCHEDULING ORDER, as to Octavius Fryar. The document was incorrectly filed in this case. (ap)** (Entered: 03/03/2022) |
| 03/03/2022 | 41 | SCHEDULING ORDER as to Octavius Fryar. The Court has scheduled a change of plea for 3/4/2022 at 11:00 am before Magistrate Judge Paul E. Davison. To access the conference, counsel should call 877-336-1839 and use access code 5999739. A Teams link will be provided to counsel to access the conference by video. Members of the press and public may call the same number, but will not be permitted to speak during the conference. (Change of Plea Hearing set for 3/4/2022 at 11:00 AM before Magistrate Judge Paul E. Davison) (Signed by Magistrate Judge Paul E. Davison on 3/3/2022) (ap) (Entered: 03/03/2022) |
| 03/04/2022 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: Change of Plea Hearing as to Octavius Fryar held on 3/4/2022. All parties appeared by Teams (video) and ATT (telephone). The defendant present with defense attorney Frank O'Reilly. AUSA Derek Wikstrom present for the Government. As per Judge Roman's CARES Act Order (DE #40) and after executing the consent to proceed remotely and the consent form to enter a Felony Plea Allocution before a USMJ, the defendant withdraws his previously entered plea of not guilty, and now enters a plea of guilty as charged in the One Count Information. The Court directs a Pre Sentence Investigation and schedules sentence on June 8, 2022 at 10 am or June 9, 2022 at 10 am Report and Recommendation will be provided to Judge Nelson S. Roman via transcript. Defendant remains remanded. (Sentencing set for 6/8/2022 at 10:00 AM before Judge Nelson Stephen Roman) (Court Reporter Tabitha Dente) (ap) (Entered: 03/04/2022) |

A-7

| 03/04/2022 | | Minute Entry for proceedings held before Magistrate Judge Paul E. Davison: **Plea entered by Octavius Fryar (1) Guilty as to Count 1.** (ap) (Entered: 03/04/2022) |
|---|---|---|
| 03/04/2022 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to Octavius Fryar. (Signed by Magistrate Judge Paul E. Davison on 3/4/2022) (ap) (Entered: 03/04/2022) |
| 03/04/2022 | 42 | CONSENT TO PROCEED BY VIDEO OR TELE CONFERENCE as to Octavius Fryar. (Signed by Magistrate Judge Paul E. Davison on 3/4/2022) (ap) (Entered: 03/04/2022) |
| 03/04/2022 | 43 | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE ON A FELONY PLEA ALLOCUTION by Octavius Fryar. (ap) (Entered: 03/04/2022) |
| 03/24/2022 | 44 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Octavius Fryar. Notice is hereby given that an official transcript of a Hearing proceeding held on 11/16/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Arends-Dieck, Christina) (Entered: 03/24/2022) |
| 03/24/2022 | 45 | TRANSCRIPT of Proceedings as to Octavius Fryar re: Hearing held on 11/16/21 before Magistrate Judge Judith C. McCarthy. Court Reporter/Transcriber: Christina Arends-Dieck, (914) 390-4103, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/14/2022. Redacted Transcript Deadline set for 4/25/2022. Release of Transcript Restriction set for 6/22/2022. (Arends-Dieck, Christina) (Entered: 03/24/2022) |
| 04/05/2022 | 46 | REPORT AND RECOMMENDATIONS as to Octavius Fryar. Objections to R&R due by 4/19/2022. (Signed by Magistrate Judge Paul E. Davison on 4/5/2022) (lnl) (Entered: 04/05/2022) |
| 04/21/2022 | 47 | ORDER ACCEPTING PLEA ALLOCUTION as to Octavius Fryar. (Signed by Judge Nelson Stephen Roman on 4/21/22)(jbo) (Entered: 04/21/2022) |
| 05/16/2022 | 49 | MOTION to Continue *Sentencing Date*. Document filed by Octavius Fryar. (O'Reilly, Francis) (Entered: 05/16/2022) |
| 05/16/2022 | 50 | MEMO ENDORSEMENT as to Octavius Fryar (1) granting 49 MOTION to Continue Sentencing Date. ENDORSEMENT: Deft's request to adjourn the in-person Sentencing from June 8, 2022 until July 20, 2022 at 9:45 am is GRANTED without objection by the Gov't. Clerk of Court is requested to terminate the motion at ECF No. 49. (Signed by Judge Nelson Stephen Roman on 5/16/2022) (ap) (Entered: 05/17/2022) |
| 05/16/2022 | | Set/Reset Hearings as to Octavius Fryar: Sentencing set for 7/20/2022 at 09:45 AM before Judge Nelson Stephen Roman. (ap) (Entered: 05/17/2022) |
| 07/04/2022 | 52 | NOTICE of Change of Address as to Octavius Fryar. New Address: Francis L. O'Reilly, 1735 Post Road, Suite 2C, Fairfield, Connecticut, United States 06824, 2039134608. (O'Reilly, Francis) (Entered: 07/04/2022) |
| 07/08/2022 | 53 | Sentencing Letter by Octavius Fryar addressed to Judge Nelson S. Roman from Francis L. O'Reilly dated July 8, 2022 re: Sentencing Submission. (O'Reilly, Francis) (Entered: 07/08/2022) |
| 07/17/2022 | 55 | SEALED DOCUMENT placed in vault. (ap) (Entered: 07/19/2022) |

A-8

2/17/23, 11:33 AM

SDNY CM/ECF NextGen Version 1.6

| 07/18/2022 | 54 | SENTENCING SUBMISSION by Octavius Fryar. (O'Reilly, Francis) (Entered: 07/18/2022) |
|---|---|---|
| 07/20/2022 | 56 | CONSENT PRELIMINARY ORDER OF FORFEITURE/MONEY JUDGMENT as to Octavius Fryar. ...[*** See this Consent Preliminary Order of Forfeiture/Money Judgment ***]... IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, by its attorney Damian Williams, United States Attorney, Assistant United States Attorney Derek Wikstrom, of counsel, and the Defendant and his counsel, Francis L. O'Reilly, Esq., that: 1. As a result of the offense charged in Count One of the Information, to which the Defendant pled guilty, a money judgment in the amount of $5,833.00 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count One of the Information that the Defendant personally obtained, shall be entered against the Defendant. 2. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant OCTAVIUS FRYAR, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith....[*** See this Consent Preliminary Order of Forfeiture/Money Judgment ***]... 7. The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. 8. The signature page of this Consent Preliminary Order of Forfeiture/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. SO ORDERED: (Signed by Judge Nelson Stephen Roman on 7/20/2022)(bw) (Entered: 07/21/2022) |
| 07/20/2022 | | Minute Entry for proceedings held before Judge Nelson Stephen Roman:Sentencing held on 7/20/2022 for Octavius Fryar (1) Count 1. Defendant Octavius Fryar present with counsel Francis L. OReilly, Esq. AUSA Derek Wikstrom also present. Court reporter is Sue Ghorayeb. The Court finds Defendant knowingly, intentionally and voluntarily waives Judge Romns physical appearance and consents to proceed with Judge Romn appearing by Teams videoconference due to the Judge testing positive for the COVID virus and the USDC, SDNY COVID protocols. The Court also finds sufficient reasoning pursuant to the CARES Act as to why this proceeding can't be further delayed without serious prejudice to the interests of justice. Presentence Report approved. Oral argument held regarding adjustments pursuant to the Equal Act. The Court sentenced Defendant to a term of Sixty-Nine (69) Months on one count of conviction. The Court agrees with the parties that the Equal Act adjustments are appropriate in this case and that the Custody Guidelines should be 110-137 months. The Court recommends incarceration at FCI Danbury. The Court also recommends incarceration at a facility that offers the RDAP program while Defendant is incarcerated. Upon release from imprisonment, the Defendant shall be on supervised release for a term of Four (4) Years, subject to the standard conditions 1-12 (Presentence Report at pages 33-35) as well as mandatory (Presentence Report at page 33) and special conditions (Presentence Report at page 35). Restitution not applicable. No fine levied. Defendant shall pay the United States $100 Special Assessment due immediately. Consent Preliminary Order of Forfeiture in the amount of $5,833.00 "So Ordered" by Judge Romn and marked as Court Exhibit #1. No open or underlying counts. Although Defendant waived his right to appeal under the plea agreement, the Court directed Defendants attorney to thoroughly discuss the ramifications of the waiver with Defendant. Defendant remanded. (jw) (Entered: 07/25/2022) |
| 07/22/2022 | 57 | FILED JUDGMENT IN A CRIMINAL CASE as to Octavius Fryar (1), Pleaded guilty to Count(s) 1, Imprisonment for a total term of Sixty-Nine (69) Months. The Court agrees with the parties that the Equal Act adjustments are appropriate in this case and that the custody Guidelines should be 110-137 months. Although Defendant waived his right to appeal under the plea agreement, the Court directed Defendants attorney to thoroughly |

A-9

|  |  | discuss the ramifications of the waiver with Defendant. Supervised release for a term of Four (4) Years, subject to the standard conditions 1-12 as well as mandatory and special conditions. The court makes the following recommendations to the Bureau of Prisons: The Court recommends incarceration at FCI Danbury to facilitate family visitation. The Court also recommends defendant participate in the RDAP program. Special Assessment of $100 which is due immediately. (Signed by Judge Nelson Stephen Roman on 7/22/22)(jw) (Entered: 07/25/2022) |
|---|---|---|
| 07/30/2022 | 58 | NOTICE OF APPEAL by Octavius Fryar from 57 Judgment. (tp) (Entered: 08/01/2022) |
| 08/01/2022 |  | Appeal Remark as to Octavius Fryar re: 58 Notice of Appeal - Final Judgment. $505.00 Appeal Fee Waived. Attorney CJA. (tp) (Entered: 08/01/2022) |
| 08/01/2022 |  | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Octavius Fryar to US Court of Appeals re: 58 Notice of Appeal - Final Judgment. (tp) (Entered: 08/01/2022) |
| 08/01/2022 |  | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Octavius Fryar re: 58 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 08/01/2022) |
| 11/04/2022 | 59 | TRANSCRIPT REQUEST by Octavius Fryar for a Arraignment proceeding held on 11-16-2021; 11-23-2021; 2-1-2022; 3-4-2022; 7-20-2022 before Judge Nelson Stephen Roman re: 58 Notice of Appeal - Final Judgment. Transcript due by 11/14/2022. (Murphy, Timothy) (Entered: 11/04/2022) |
| 02/13/2023 | 60 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Octavius Fryar. Notice is hereby given that an official transcript of a Plea proceeding held on 11/15/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Dente, Tabitha) (Entered: 02/13/2023) |
| 02/13/2023 | 61 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Octavius Fryar. Notice is hereby given that an official transcript of a Arraignment proceeding held on 11/15/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Dente, Tabitha) (Entered: 02/13/2023) |
| 02/13/2023 | 62 | TRANSCRIPT filed as to Octavius Fryar re: Arraignment for dates of 11/15/2021 before Magistrate Judge Paul E. Davison. re 58 Notice of Appeal - Final Judgment. Court Reporter/Transcriber: Tabitha Dente, (914) 390-4027. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2023. Redacted Transcript Deadline set for 3/16/2023. Release of Transcript Restriction set for 5/15/2023. (Dente, Tabitha) (Entered: 02/13/2023) |
| 02/13/2023 | 63 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Octavius Fryar. Notice is hereby given that an official transcript of a Plea proceeding held on 3/4/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Dente, Tabitha) (Entered: 02/13/2023) |

A-10

| 02/13/2023 | 64 | TRANSCRIPT filed as to Octavius Fryar re: Plea for dates of 3/4/2022 before Magistrate Judge Paul E. Davison. re 58 Notice of Appeal - Final Judgment. Court Reporter/Transcriber: Tabitha Dente, (914) 390-4027. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/6/2023. Redacted Transcript Deadline set for 3/16/2023. Release of Transcript Restriction set for 5/15/2023. (Dente, Tabitha) (Entered: 02/13/2023) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/17/2023 11:26:56 | | |
| **PACER Login:** | fpdusernyw | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:21-cr-00703-NSR |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

A-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - -  X
UNITED STATES OF AMERICA          :
                                  :     WAIVER OF INDICTMENT
        - v. -                    :
                                  :     21 Cr.  703
OCTAVIUS FRYAR,                   :
                                  :
            Defendant.            :
- - - - - - - - - - - - - - - -  X
```

　　　　The above-named defendant, who is accused of violating

Title 21, United States Code, Section 846, being advised of the

nature of the charge and of his rights, hereby waives, in open

Court, prosecution by indictment and consents that the proceeding

may be by information instead of by indictment.


_____
Octavius Fryar
Defendant


_____
Witness


_____
Frank O'Reilly
Counsel for Defendant


Date:    White Plains, New York

         November 16, 2021

A-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
UNITED STATES OF AMERICA              :
                                      :    INFORMATION
   - v. -                             :
                                      :    21 Cr. 703-NSR
OCTAVIUS FRYAR,                       :
     a/k/a "Tate,"                    :
                                      :
                        Defendant.    :
                                      :
------------------------------------- X

### COUNT ONE

   The United States Attorney charges:

   1.   From at least in or about July 2020 up to and including in or about November 2020, in the Southern District of New York and elsewhere, OCTAVIUS FRYAR, a/k/a "Tate," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree with others to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that OCTAVIUS FRYAR, a/k/a "Tate," the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   3.   The controlled substance that OCTAVIUS FRYAR, a/k/a "Tate," the defendant, conspired to distribute and possess with

the intent to distribute was 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

### FORFEITURE ALLEGATION

4.   As a result of committing the offense alleged in Count One of this Information, OCTAVIUS FRYAR, a/k/a "Tate," the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

### SUBSTITUTE ASSET PROVISION

5.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred, or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the

A-14

court;

    d.   has been substantially diminished in value; or

    e.   has been comingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the above

forfeitable property.

*Damian Williams*
DAMIAN WILLIAMS
United States Attorney

A-15

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**v.**

**OCTAVIUS FRYAR, a/k/a "Tate,"**

**Defendant.**

**INFORMATION**

21 Cr. 703 (NSR)

(21 U.S.C. § 846)

DAMIAN WILLIAMS
United States Attorney

A-16



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

January 31, 2022

Francis L. O'Reilly, Esq.
O'Reilly and Shaw
41 Unquowa Place
Fairfield, CT 06824

**Re: United States v. Octavius Fryar, 21 Cr. 703 (NSR)**

Dear Mr. O'Reilly:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Octavius Fryar ("the defendant") to Count One of the above-referenced information (the "Information"). Count One charges the defendant with conspiracy to distribute 28 grams and more of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), and carries a maximum term of imprisonment of 40 years, a mandatory minimum term of imprisonment of five years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of four years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Section 841(b)(1)(B), of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his participation in a narcotics distribution conspiracy from in or about July 2020 through in or about November 2020, as charged in Count One of the Information, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count One of the Information and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, a sum of money equal to $5,833 in United States currency, representing the gross proceeds received by the defendant pursuant to his narcotics trafficking as alleged in Count One during the relevant time period alleged in the Information and all interests and proceeds traceable

thereto (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The defendant consents to the entry of the Consent Order of Forfeiture annexed hereto as Exhibit A and agrees that the Consent Order of Forfeiture shall be final as to the defendant at the time it is ordered by the Court.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

**A. Offense Level**

1. The November 1, 2021 edition of the Guidelines Manual applies.

2. The parties do not stipulate regarding the applicability of the provisions of U.S.S.G. § 4B1.1 relating to career offenders. As set forth below, the parties stipulate as to the Guidelines that would be applicable to the offense charged in Count One if the defendant is not a career offender, and the Guidelines that would be applicable to the offense charged in Count One if the defendant is a career offender. The Government's position is that the convictions identified in paragraphs B.3 and B.4 below are "controlled substance offenses" as defined in U.S.S.G. § 4B1.2(b), and the defendant disagrees with that position and is not waiving his right to dispute it.

Count One

3. The Guideline applicable to the offense charged in Count One is U.S.S.G. § 2D1.1.

4. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(7), the base offense level is 26, because the offense involved approximately 150 grams of cocaine base.

5. Pursuant to U.S.S.G. § 2D1.1(b)(1), because the defendant possessed a firearm, a two-level increase is warranted.

6. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant timely provided complete information to the Government concerning his own involvement in the offenses.

7. Accordingly, if the defendant is not a career offender, the Guidelines offense level for Count One is 25.

Career Offender Analysis

8. It is the Government's position that, pursuant to U.S.S.G. § 4B1.1(a), the defendant is a career offender because (1) he was at least 18 years old at the time he committed the instant

offense; (2) the instant offense is a felony controlled substance offense; and (3) the defendant has at least two prior felony convictions for controlled substance offenses, identified in paragraphs B.3, B.4, and B.5 below.

9. Pursuant to U.S.S.G. § 4B1.1(b), because the statutory maximum sentence for the instant offense is 25 years or more, the base offense level is 34. Accordingly, the base offense level for Count One is 34 because it is higher than the offense level otherwise applicable (28).

10. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant timely provided complete information to the Government concerning his own involvement in the offenses.

11. Accordingly, if the defendant is a career offender, the Guidelines offense level for Count One is 31.

**B. Criminal History**

Based upon the information now available to this Office (including representations by the defense), the defendant has 13 criminal history points, calculated as follows.

1. The defendant was convicted on or about April 22, 2019 in Ardsley Village Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and was sentenced on or about July 29, 2019 to one year's imprisonment. Pursuant to U.S.S.G. § 4A1.1(b), this sentence results in two criminal history points.

2. The defendant was convicted on or about April 4, 2017 in Newburgh City Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and was sentenced to 90 days' imprisonment. Pursuant to U.S.S.G. § 4A1.1(b), this sentence results in two criminal history points.

3. The defendant was convicted on or about October 15, 2014 in Orange County Court of criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.39(1), and was sentenced on or about December 8, 2014 to three years' imprisonment. Pursuant to U.S.S.G. § 4A1.1(a), this sentence results in three criminal history points.

4. The defendant was convicted on or about June 24, 2014 in Orange County Court of criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.39(1), and was sentenced on or about December 8, 2014 to three years' imprisonment. Pursuant to U.S.S.G. § 4A1.1(a), this sentence results in three criminal history points.

5. The defendant was convicted on or about September 23, 2010 in the United States District Court for the Southern District of New York of conspiracy to distribute heroin and

cocaine base in violation of 21 U.S.C. § 846 and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and was sentenced to time served after having served approximately 20 months' imprisonment. Pursuant to U.S.S.G. § 4A1.1(a), this sentence results in three criminal history points.

6. The defendant was convicted on or about November 18, 2008 in Newburgh City Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and was sentenced to a fine. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

7. The defendant was convicted on or about November 13, 2007 in Newburgh Town Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and received a sentence of time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

8. The defendant was convicted on or about September 12, 2007 in Newburgh City Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and received a sentence of time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

9. The defendant was convicted on or about April 17, 2007 in Newburgh City Court of possession of an imitation controlled substance in violation of N.Y. Public Health Law § 3383, and received a conditional discharge. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

10. The defendant was convicted on or about November 4, 2005 in Newburgh City Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and received a sentence of time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

11. The defendant was convicted on or about February 25, 2002 in Newburgh City Court of obstructing governmental administration in the second degree in violation of N.Y. Penal Law § 195.05, and was sentenced to 30 days' imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

12. The defendant was convicted on or about March 1, 1999 in Orange County Court of attempted criminal possession of a controlled substance in the fifth degree in violation of N.Y. Penal Law § 220.06, and was sentenced to two to four years' imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

13. The defendant was convicted on or about June 10, 1998 in Newburgh City Court of false personation in violation of N.Y. Penal Law § 190.23, and received a sentence of time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

14. The defendant was convicted on or about January 19, 1993 in Rockland County Court of criminal sale of a controlled substance in the third degree in violation of N.Y. Penal Law

A-20

§ 220.39, and was sentenced to 54 months' to nine years' imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

15. The defendant was convicted on or about October 15, 1991 in Orangetown Town Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and was sentenced to 90 days' imprisonment. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

16. The defendant was convicted on or about July 16, 1991 in Rockland County Court of criminal possession of a controlled substance in the fourth degree in violation of N.Y. Penal Law § 220.09 and bail jumping in the second degree in violation of N.Y. Penal Law § 215.56, and was sentenced to one year's imprisonment concurrent on each count. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

17. The defendant was convicted on or about May 13, 1991 in Newburgh City Court of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and received a sentence of time served. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

18. The defendant was convicted on or about May 17, 1989 in Spring Valley Village Court of attempted criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03, and was sentenced to one year's probation. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is VI.

**C. Sentencing Range**

Based upon the calculations set forth above, the parties agree that, if U.S.S.G. § 4B1.1 does not apply, the defendant's applicable Guidelines range is 110 to 137 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 25, the applicable fine range is $20,000 to $5,000,000.

The Government's position is that the career offender provisions of U.S.S.G. § 4B1.1 apply and that the resulting applicable Guidelines range is 188 to 235 months' imprisonment, with the same mandatory minimum term of 60 months' imprisonment (the "Career Offender Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 31, the applicable fine range is $30,000 to $5,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range or, if applicable, the Career Offender Guidelines Range, set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range or, if applicable, the Career Offender Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the range running from the low end of the Stipulated Guidelines Range to the high end of the Career Offender Guidelines Range, *i.e.* of any sentence within or below the range of 110 to 235 months' imprisonment, even if the Court

rules against the defendant as to the applicability of the career offender provisions of U.S.S.G. § 4B1.1, and (ii) that the Government will not appeal any sentence that is within or above the range of 110 to 235 months' imprisonment. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $5,000,000, and the Government agrees not to appeal or bring a collateral challenge of any fine that is greater than or equal to $20,000. The defendant and the Government also agree not to appeal or bring a collateral challenge of any forfeiture amount that is less than or equal to $5,833. The defendant also agrees not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw

his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

A-24

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: _____
Derek Wikstrom
Assistant United States Attorney
(914) 993-1946

APPROVED:

_____
Jason M. Swergold
Deputy Chief, White Plains Division

AGREED AND CONSENTED TO:

_____
Octavius Fryar
FRANCIS O'Reilly Attorney for
APPROVED: Octavius Fryar

_____      _____ 3 / 4 / 22 _____
Francis E. O'Reilly, Esq.                    DATE
Attorney for Octavius Fryar

_____ 3 / 4 / 22 _____
                    DATE

2020.11.02

1

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ----------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                 21 CR 703 (NSR)(PED)
 5       -vs-
                                 PLEA
 6
    OCTAVIUS FRYAR,
 7
                        Defendants.
 8  ----------------------------------------x

 9                           United States Courthouse
                             White Plains, New York
10
                             Friday, March 4
11                           11:00 a.m.

12
    B e f o r e :
13
                             HONORABLE PAUL E. DAVISON,
14                           Magistrate Judge

15

16  A P P E A R A N C E S :

17

    DAMIAN WILLIAMS
18       United States Attorney for the
         Southern District of New York
19  DEREK WIKSTROM,
         Assistant United States Attorney
20

21  O'REILLY & SHAW
         FRANCIS L. O'REILLY, ESQ.
22       Attorney for Defendant

23

24

25
```

A-26

Plea Hrg.                    USA v. Fryar                    2

```
 1              THE DEPUTY CLERK:  Good morning.  This matter is being
 2  conducted by video and telephone.  This is the matter of the
 3  United States v. Fryar, case number 21 cr 703.
 4              Starting with the attorney for the Government, can you
 5  please note your appearance for the record.
 6              MR. WIKSTROM:  Yes, good morning.  Derek Wikstrom for
 7  the Government.
 8              THE COURT:  I can barely hear Mr. Wikstrom.
 9              (Off-the-record discussion)
10              THE COURT:  All right.  Thank you for your patience,
11  Mr. Fryar.
12              Brigid, why don't you call the case.
13              THE DEPUTY CLERK:  Yes.
14              Good morning.  This proceeding is being conducted by
15  video and telephone.  This is the matter of the United States v.
16  Fryar, case number 21 cr 703.
17              Starting with the attorney for the Government, can you
18  please note your appearance for the record.
19              MR. WIKSTROM:  Yes, good morning again, your Honor.
20  Derek Wikstrom for the Government.
21              THE COURT:  Good morning, Mr. Wikstrom.
22              MR. O'REILLY:  Good morning, your Honor.  Francis
23  O'Reilly on behalf of Octavius Fryar, who's present by video
24  conferencing.
25              THE COURT:  Good morning, Mr. O'Reilly.
```

A-27

Plea Hrg.                          USA v. Fryar                            3

1          All right, my understanding is that Mr. Fryar is

2   prepared to plead guilty to Count I of the Felony Information

3   pursuant to a plea agreement dated January 31st, 2022.

4          Is that correct?

5          MR. O'REILLY:  Yes, it is, your Honor.

6          THE COURT:  All right.  And has Mr. Fryar previously

7   been arraigned on this Information?

8          MR. WIKSTROM:  He has, your Honor.

9          THE COURT:  All right.

10          Mr. Fryar, Judge Román has authorized this plea to be

11   conducted remotely.  That's in a CARES Act order dated March 3,

12   2022, and docketed as Docket 40 in this matter.  My

13   understanding is that one of the attorneys has a quarantine

14   issue which necessitates this.  I want to make certain this is

15   acceptable to you.

16          Mr. O'Reilly has provided me with a copy of a written

17   consent form which indicates -- well, that he signed indicating

18   consent to proceed by video or teleconference.  I want to make

19   certain that this is acceptable to you.

20          Do you recall discussing this with Mr. O'Reilly?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  The form reads as follows.

23   I'm going to read it to you, and then I'm going to ask you if I

24   have your permission to sign it on your behalf.

25          "Defendant Octavius Fryar hereby voluntarily consents

TABITHA R. DENTE, RPR, RMR, CRR
(914)-390-4027

1  to participate in the following proceeding via videoconferencing

2  or teleconferencing," and then the box is checked for "guilty

3  plea or change of plea hearing."

4          Is that acceptable to you, Mr. Fryar?

5          THE DEFENDANT:  Yes, sir, your Honor.

6          THE COURT:  And do I have your permission to sign that

7  written form on your behalf?

8          THE DEFENDANT:  Yes, sir, your Honor.

9          THE COURT:  Very well.  The Court will execute the

10  consent form on Mr. Fryar's behalf and it will go into the court

11  record.

12          Mr. Fryar, this is not a trial.  I am told you have

13  decided to enter a guilty plea in this case, so it's my job to

14  make sure you're aware of all of your rights and to verify that

15  any waiver of those rights is knowing and voluntary.

16          In addition, the Court has to make certain there is a

17  factual basis for your plea of guilty and it's important for you

18  to understand that the Court will not accept your guilty plea

19  unless the Court is satisfied that you are, in fact, guilty.

20          Do you understand?

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  All right.

23          Now, this is a somewhat, heh, awkward format, we're

24  doing this remotely, and it's very important that you hear and

25  understand everything that goes on here, so if at any point you

```
 1  don't hear me or understand what I say, I want you to interrupt
 2  me, you can wave your arms to get my attention, but it's very
 3  important that you hear and understand everything that goes on
 4  here.
 5          Will you do that?  Will you let us know if you lose
 6  the audio or you don't hear or understand something?
 7          THE DEFENDANT:  Yes, I will, your Honor.
 8          THE COURT:  Good.
 9          Mr. Fryar, you have the absolute right to be
10  represented by a lawyer at this and every stage of the
11  proceedings against you and you have the right to consult your
12  attorney before you answer any questions.
13          Do you understand?
14          THE DEFENDANT:  Yes, sir, your Honor.
15          THE COURT:  All right.
16          You should take advantage of that right if you feel
17  the need, we could set up a private conference between you and
18  Mr. O'Reilly if necessary, we're not in any hurry here, so just
19  let us know if you need to talk to Mr. O'Reilly.  Okay?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Mr. Fryar, if you were to become
22  dissatisfied with Mr. O'Reilly's services, you would be entitled
23  to apply to the Court for a new attorney to represent you, and
24  if the Court was still satisfied that you could not afford to
25  hire a lawyer and was persuaded that there was an appropriate
```

Plea Hrg.                    USA v. Fryar                         6

```
 1  reason to relieve Mr. O'Reilly, under those circumstances a new
 2  lawyer would be appointed to represent you without cost to you.
 3          Do you understand?
 4          THE DEFENDANT:  Yes, sir, your Honor.
 5          THE COURT:  All right.
 6          Ms. Altimari, would you place Mr. Fryar under oath or
 7  affirmation.
 8          THE DEPUTY CLERK:  Mr. Fryar, can you hear me?
 9          THE DEFENDANT:  Yes, ma'am.
10          THE DEPUTY CLERK:  Mr. Fryar, you do solemnly swear or
11  affirm that the testimony you are about to give the Court in
12  this matter shall be the truth, the whole truth, and nothing but
13  the truth so help you God.
14          THE DEFENDANT:  Yes, I do.
15          THE COURT:  Can we figure out what's producing that
16  feedback loop and make it stop?
17          (Brief pause)
18          THE COURT:  All right.
19          Mr. Fryar, you're now under oath.  That means if you
20  knowingly make a false statement during this proceeding, you
21  could be prosecuted for perjury, you could face up to five years
22  in prison and a $250,000 fine if convicted for that.
23          For the record, what's your full name?
24          THE DEFENDANT:  Octavius Fryar.
25          THE COURT:  How old are you, Mr. Fryar?
```

A-31

Plea Hrg.                    USA v. Fryar                         7

```
 1              THE DEFENDANT:  Fifty-three.

 2              THE COURT:  Do you read, write, speak, and understand

 3  English?

 4              THE DEFENDANT:  Yes.

 5              THE COURT:  How far did you go in school?

 6              THE DEFENDANT:  I graduated high school.

 7              THE COURT:  Have you ever been hospitalized or treated

 8  for narcotic or alcohol addiction?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  How long ago were you in treatment?

11              THE DEFENDANT:  A couple of years ago, sir.

12              THE COURT:  And what were you being treated for?

13              THE DEFENDANT:  Cocaine, crack.

14              THE COURT:  All right, let me ask you this.  Is there

15  anything about your history of using cocaine or crack or any

16  other drug or any treatment that you received for that that's

17  interfering with your ability to understand what's going on here

18  this morning?

19              THE DEFENDANT:  No, sir, your Honor.

20              THE COURT:  Within the past 24 hours, have you used or

21  taken any drugs, marijuana, alcohol, medication or pills of any

22  kind?

23              THE DEFENDANT:  No, sir, your Honor.

24              THE COURT:  Are you feeling clear in your head today?

25              THE DEFENDANT:  Yes, sir, your Honor.
```

A-32

Plea Hrg.                    USA v. Fryar                         8

```
 1              THE COURT:  Now, Mr. Fryar, have you received a copy
 2  of the one-count Felony Information that's been filed with the
 3  Court and gone over the charges with Mr. O'Reilly?
 4              THE DEFENDANT:  Yes, I have.
 5              THE COURT:  Mr. O'Reilly, does your client waive the
 6  public reading?
 7              MR. O'REILLY:  Yes, your Honor.  Thank you.
 8              THE COURT:  All right.  Then we will proceed with what
 9  is referred to as a plea allocution.
10              Mr. Fryar, I want you to understand that you have the
11  absolute right to have this plea allocution conducted before a
12  United States District Judge, here, the Honorable Nelson Stephen
13  Román to whom this case has been assigned.  It is Judge Román,
14  the District Judge, who will impose sentence in this case.
15              I am a United States Magistrate Judge.  If you consent
16  and agree, I will conduct the plea allocution here this morning
17  and I will then make a report to Judge Román in which I will
18  recommend whether or not Judge Román should accept your plea of
19  guilty.  I'll make that recommendation based on information that
20  comes out at today's proceeding.
21              Do you understand?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  Do you understand that you have an
24  absolute right to have this plea allocution conducted before a
25  United States District Judge?
```

Plea Hrg.                    USA v. Fryar                         9

```
 1              THE DEFENDANT:  Yes, I do.

 2              THE COURT:  Do you consent and agree that I should

 3    conduct the plea allocution here this morning?

 4              THE DEFENDANT:  Yes, I do.

 5              THE COURT:  All right.

 6         I have been provided with a written consent form which

 7    indicates, Mr. Fryar, that you do consent to proceed before me

 8    for this felony plea allocution, and it appears that Mr.

 9    O'Reilly has signed this written consent form on your behalf.

10              Is that correct?

11              THE DEFENDANT:  Yes, sir, your Honor.

12              THE COURT:  You authorized Mr. O'Reilly to sign it for

13    you?

14              THE DEFENDANT:  Yes, sir.  Yes, I did.

15              THE COURT:  And did Mr. O'Reilly read that consent

16    form to you before you authorized him to sign it?

17              THE DEFENDANT:  Yes, he did.

18              THE COURT:  Did anyone threaten you or coerce you or

19    promise you anything in order to get you to authorize Mr.

20    O'Reilly to sign this form on your behalf?

21              THE DEFENDANT:  No, your Honor.

22              THE COURT:  Did you give Mr. O'Reilly authority to

23    sign that form on your behalf freely and voluntarily?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  All right.
```

```
 1              Counsel, do either of you know of any reason why this
 2    waiver and consent to proceed with a plea allocution before a
 3    United States Magistrate Judge should not be accepted?
 4              Mr. Wikstrom?
 5              MR. WIKSTROM:  No, your Honor.
 6              THE COURT:  Mr. O'Reilly.
 7              MR. O'REILLY:  No, your Honor.
 8              THE COURT:  All right.  I find that Octavius Fryar is
 9    fully competent and capable of waiving his right to appear
10    before a United States District Judge in order to enter his plea
11    of guilty.  I, therefore, accept the consent form, which will be
12    signed and placed in the court record.
13              Mr. Fryar, do you understand that your right to be
14    represented by a lawyer continues through every stage of the
15    proceeding, including trial and appeal, and that you have this
16    right whether or not you choose to plead guilty to this offense?
17              THE DEFENDANT:  Yes, I do, your Honor.
18              THE COURT:  Mr. Fryar, have you had an adequate
19    opportunity to consult with Mr. O'Reilly about your case and
20    especially about your decision to plead guilty?
21              THE DEFENDANT:  Yes, I have.
22              THE COURT:  Are you satisfied with the services which
23    Counsel has provided to you in this case?
24              THE DEFENDANT:  Yes, your Honor.
25              THE COURT:  Have you told Mr. O'Reilly everything you
```

A-35

```
 1  know about the case?

 2            THE DEFENDANT:  Yes, your Honor.

 3            THE COURT:  All right.  There is, as I indicated

 4  earlier, a written plea agreement.  It's in letter form, it's

 5  dated January 31st, 2022, it's addressed to Mr. O'Reilly in

 6  reference to this case, and it appears to have been

 7  countersigned by Mr. O'Reilly and signed, or countersigned, on

 8  Mr. Fryar's behalf by Mr. O'Reilly today, March 4th, 2022.

 9            Mr. Wikstrom, this is the operative plea agreement?

10            MR. WIKSTROM:  Yes, it is, your Honor.

11            THE COURT:  All right.  The signed plea agreement will

12  be marked as a court exhibit.

13            Mr. Fryar, do you have a copy of this January 31st

14  plea agreement?

15            THE DEFENDANT:  Yes, I do, your Honor.

16            THE COURT:  And have you read that entire agreement?

17            THE DEFENDANT:  Yes, I have.

18            THE COURT:  And did you discuss the entire agreement

19  with Mr. O'Reilly?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Did Mr. O'Reilly answer any questions that

22  you had about that agreement?

23            THE DEFENDANT:  Yes, sir, your Honor.

24            THE COURT:  And did you authorize Mr. O'Reilly to sign

25  the agreement on your behalf?
```

A-36

Plea Hrg.                          USA v. Fryar                          12

```
 1              THE DEFENDANT:  Yes, sir, your Honor.
 2              THE COURT:  Mr. O'Reilly, did you review each and
 3   every part of the plea agreement with your client?
 4              MR. O'REILLY:  Yes, your Honor.
 5              THE COURT:  Mr. Fryar, are you satisfied that you
 6   understand this entire plea agreement?
 7              THE DEFENDANT:  Yes, sir, your Honor.
 8              THE COURT:  Do you have any questions for me or for
 9   Mr. O'Reilly about what the plea agreement says?
10              THE DEFENDANT:  No, sir, your Honor.
11              THE COURT:  Does the plea agreement contain the
12   complete understanding between you and the Government in
13   connection with this case?
14              THE DEFENDANT:  Yes, sir, your Honor.
15              THE COURT:  Do you understand that anything which is
16   not set forth in the written plea agreement or placed on the
17   record at this time is not going to be binding on the outcome of
18   your case?
19              THE DEFENDANT:  Yes, I do.
20              THE COURT:  Mr. Wikstrom, is there anything apart from
21   the written plea agreement the Court should be aware of?
22              MR. WIKSTROM:  No, your Honor.
23              THE COURT:  Mr. O'Reilly, any other agreements the
24   Court should know about?
25              MR. O'REILLY:  No, your Honor.
```

Plea Hrg.                        USA v. Fryar                            13

```
 1          THE COURT:  Mr. Fryar, did you authorize your attorney
 2  to sign this agreement on your behalf freely and voluntarily?
 3          THE DEFENDANT:  Yes, sir, your Honor.
 4          THE COURT:  Did anyone force you or coerce you or
 5  threaten you or promise you anything other than what is set
 6  forth in the written plea agreement itself in order to get you
 7  to sign the plea agreement?
 8          THE DEFENDANT:  No, sir, your Honor.
 9          THE COURT:  All right.
10          At this point, Mr. Fryar, the law requires me to
11  advise you of the maximum possible penalties to which you expose
12  yourself by pleading guilty to this charge.  This is the
13  worst-case scenario.  Do you understand?
14          THE DEFENDANT:  Yes, sir, your Honor.
15          THE COURT:  Okay.
16          First of all, the Felony Information charges you with
17  participating in an illegal conspiracy or agreement with other
18  people to distribute 28 grams or more of cocaine base, or crack.
19          Do you understand that charge?
20          THE DEFENDANT:  Yes, sir, your Honor.
21          THE COURT:  If you are convicted as charged for that
22  offense, you face a maximum term of imprisonment of 40 years,
23  you face a mandatory minimum term of imprisonment of 5 years,
24  you face a maximum term of supervised release of life and a
25  mandatory minimum term of supervised release of 4 years, you
```

A-38

1  face a maximum fine of the greater of $50 million or twice the

2  gain or loss associated with the offense, and you also face a

3  $100 special assessment, which is mandatory.

4          Now, with regard to any term of supervised release,

5  Mr. Fryar, if you are sentenced to a term of imprisonment, even

6  if you are sentenced to the maximum term of imprisonment, and

7  you are also sentenced to a term of supervised release, and if

8  you then violate the conditions of your supervised release,

9  under those circumstances you could be sentenced to an

10 additional term of imprisonment for violating the conditions of

11 your supervised release.  In this case, you would face an

12 additional prison term of up to 3 years.  Also, if you violate

13 the conditions of your supervised release, you're not going to

14 receive credit for time you already served in prison or for time

15 served on supervised release.

16         What that means here, Mr. Fryar, is if you were

17 sentenced to a term of imprisonment, even if you got the

18 maximum, which is 40 years, and you served all forty, and you

19 then went out on supervised release and you violated, the Court

20 could send you back to prison without a jury trial even though

21 you had already served the maximum.

22         Do you understand?

23         THE DEFENDANT:  Yes, sir, your Honor.

24         THE COURT:  You are also exposed to the possibility of

25 an order of forfeiture or restitution.

A-39

 1          Mr. Wikstrom, is there some agreement in that regard?

 2          (Brief pause)

 3          MR. WIKSTROM:  Sorry, your Honor, I got confused about

 4  which mute button to press.

 5          There's no restitution that's going to be sought here.

 6  There is an agreement with respect to forfeiture that is

 7  contained on the bottom of page 1 and the top of page 2 of the

 8  plea agreement.

 9          THE COURT:  And, in fact, the agreement references a

10  consent order of forfeiture which is attached, but not actually

11  --

12          MR. WIKSTROM:  That's -- yes, your Honor, the consent

13  order of forfeiture has not yet been prepared.  However, the

14  Defendant is admitting to a forfeiture allegation in the plea

15  agreement and is agreeing to forfeit a sum of money equal to

16  $5,833.

17          THE COURT:  And is that the full extent of forfeiture

18  that the Government would be seeking here?

19          MR. WIKSTROM:  It is, your Honor.

20          THE COURT:  All right, thank you.

21          Mr. Fryar, do you understand that these are all

22  possible sentences that could be imposed following a plea of

23  guilty in this case?

24          THE DEFENDANT:  Yes, sir, your Honor.

25          THE COURT:  Are you a United States citizen?

A-40

1      THE DEFENDANT:  Yes, I am, your Honor.

2      THE COURT:  And are you a citizen by birth or by

3  naturalization?

4      THE DEFENDANT:  Birth, your Honor.

5      THE COURT:  All right.  I ask you these questions, in

6  part, Mr. Fryar, because if you were not a United States citizen

7  or even if you were a naturalized citizen, a conviction in this

8  case could potentially have an adverse affect on your status,

9  but we don't have to discuss that further because you're a

10  natural-born citizen.

11      Do you understand you are pleading guilty here to a

12  felony offense and that a felony conviction may deprive you of

13  certain valuable civil rights which might include the right to

14  vote, the right to hold public office, the right to serve on a

15  jury, the right to possess any type of firearm, including rifles

16  and shotguns, the right to be considered for certain types of

17  employment or to be bonded or to serve in the U.S. military, and

18  the right to possess or obtain certain government-issued

19  licenses, including licenses that may be required in certain

20  professions and occupations?

21      Do you understand that.

22      (Brief pause)

23      THE COURT:  Mr. Fryar, I did not hear your response.

24  We seem to have a problem here because I can't hear Mr. Fryar.

25      (Brief pause)

1              THE DEPUTY CLERK:  We lost the audio.

2              MR. WIKSTROM:  Yeah, I can't hear him either.

3              THE DEPUTY CLERK:  Yeah, they need to dial him back

4   in.

5              (Brief interruption)

6              THE COURT:  All right, Mr. Fryar seems to have

7   summoned assistance.

8              (Brief interruption)

9              THE COURT:  All right, we have reestablished the audio

10  link with Mr. Fryar.

11             Mr. Fryar, the last thing I said to you was to explain

12  that by pleading guilty, you are giving up certain valuable

13  civil rights.  Did you hear that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And do you understand it?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  All right.  Let me explain to you further,

18  Mr. Fryar, that many of those civil rights, including the right

19  to vote, are controlled by state law and consequently, the

20  specific consequences of a felony conviction will vary from

21  state to state.

22             Do you also understand that one effect of a plea of

23  guilty to a narcotics offense is that it may render you

24  ineligible for certain federal and federally-funded benefits

25  that you might otherwise have been entitled to that might

A-42

 1  include Social Security, food stamps, education loans or grants,

 2  and public housing or housing subsidies?

 3          Do you understand that?

 4          THE DEFENDANT:  Yes, sir, your Honor.

 5          THE COURT:  Mr. Fryar, do you understand that these

 6  are all possible legal consequences of a guilty plea in this

 7  case?

 8          THE DEFENDANT:  Yes, sir, your Honor.

 9          THE COURT:  Do you understand that the United States

10  Sentencing Commission has published guidelines for judges to

11  follow in determining the appropriate sentence to impose in a

12  criminal case?

13          THE DEFENDANT:  Yes, sir, your Honor.

14          THE COURT:  Do you also understand that the guidelines

15  are not mandatory, but must be considered by the Court, along

16  with other factors and other information, when the Court

17  determines the appropriate sentence to impose?

18          THE DEFENDANT:  Yes, sir, your Honor.

19          THE COURT:  Have you and Mr. O'Reilly talked about how

20  the sentencing guidelines would be calculated in your case?

21          THE DEFENDANT:  Yes, sir, your Honor.

22          THE COURT:  All right.

23          Now, the plea agreement that we talked about a couple

24  of minutes ago includes a stipulated guideline range of between

25  110 and 137 months of imprisonment.  It also indicates that

A-43

Plea Hrg.                              USA v. Fryar                              19

1   subject to your ability to pay, the fine range in this

2   case...well, withdrawn.  It's a little bit more complicated than

3   that and so, Mr. Fryar, what I just said is not entirely

4   correct.

5          The agreement indicates that there may be a dispute or

6   an unresolved issue in this case regarding whether or not you

7   fall under the career offender provisions of the sentencing

8   guidelines.  You're aware of that issue?

9          THE DEFENDANT:  Yes, sir, your Honor.

10          THE COURT:  All right.  And the calculation of your

11   sentencing guideline range is going to be different whether or

12   not Judge Román determines that you fall under career offender.

13   Do you understand that?

14          THE DEFENDANT:  Yes, sir, your Honor.

15          THE COURT:  The agreement indicates that if you fall

16   under career offender, then the guideline range is 188 to 235

17   months and the fine range is between $30,000 and $50 million.

18          You're aware of that?

19          THE DEFENDANT:  Yes, sir, your Honor.

20          THE COURT:  The agreement also indicates that if you

21   don't fall under career offender, then the guideline range is

22   110 months to 137 months and the fine range is between $20,000

23   and $50 million.  You're aware of that?

24          THE DEFENDANT:  Yes, sir, your Honor.

25          THE COURT:  And you understand that Judge Román will

Plea Hrg.                          USA v. Fryar                          20

```
 1  make the final decision about whether you are treated as a
 2  career offender or not?
 3              THE DEFENDANT:  Yes, sir, your Honor.
 4              THE COURT:  Do you understand that regardless of
 5  whether you fall under the career offender or don't fall under
 6  the career offender, these ranges represent nothing more than an
 7  understanding between you and your lawyer and Government Counsel
 8  and those ranges are not binding on Judge Román when he imposes
 9  sentence?
10              THE DEFENDANT:  Yes, sir, your Honor.
11              THE COURT:  Do you understand that Judge Román will
12  consider the guidelines, but will impose a sentence in
13  accordance with the applicable statute, which means the only
14  thing you can know for sure in this case is that the sentence
15  will not be more than 40 years, nor will it be less than 5
16  years?
17              THE DEFENDANT:  Yes, sir, your Honor.
18              THE COURT:  Do you understand that the Court will not
19  be able to determine the appropriate sentence to impose until
20  after a pre-sentence report has been prepared and after you and
21  your lawyer, as well as Government Counsel, have had an
22  opportunity to challenge the facts reported in the pre-sentence
23  report, as well as the calculation of the sentencing guideline
24  range and any sentence recommendation contained in that report?
25              THE DEFENDANT:  Yes, sir, your Honor.
```

```
 1              THE COURT:  Do you understand that if there are
 2   objections to the pre-sentence report, those objections will be
 3   ruled on by the Court and if necessary, a hearing will be held
 4   to determine what information is pertinent to the calculation of
 5   your sentence?
 6              THE DEFENDANT:  Yes, sir, your Honor.
 7              THE COURT:  And you also understand that the Probation
 8   Department will make a recommendation with regard to the career
 9   offender treatment and then it will be up to Judge Román to make
10   a determination about that?
11              THE DEFENDANT:  Yes, sir, your Honor.
12              THE COURT:  Mr. Wikstrom, do we have an appeal waiver
13   in this agreement?
14              MR. WIKSTROM:  We do, your Honor.
15              THE COURT:  Can I ask you to summarize it for the
16   record.
17              MR. WIKSTROM:  Certainly.  So it begins -- just for
18   the record, it begins on the bottom of page 6 and continues on
19   to page 7.
20              In substance, the appeal waiver provides that the
21   Defendant will not directly appeal or collaterally challenge any
22   sentence within or below the range running from the low end of
23   the stipulated guidelines range to the high end of the higher
24   career-offender range.  In other words, the Defendant won't
25   appeal or collaterally challenge any sentence within or below
```

Plea Hrg.                          USA v. Fryar                          22

1  the range of 110 to 235 months imprisonment, and that applies

2  regardless of the outcome of this dispute over the

3  career-offender provisions, and it's mutual in the sense that

4  the Government is prohibited from appealing any sentence within

5  or above that range of 110 to 235 months imprisonment.

6           In addition, the appeal waiver waives any appeal or

7  collateral challenge as to any fine that is less than or equal

8  to $5 million on the part of the Defendant and waives as to the

9  Government any appeal of a fine greater than or equal to

10 $20,000.

11          The parties are also agreeing not to appeal or bring

12 any collateral challenge to a forfeiture amount that is less

13 than or equal to $5,833 and the Defendant is agreeing not to

14 appeal or collaterally challenge a special assessment less than

15 or equal to $100.

16          As always, this appellate waiver does not prohibit

17 appeals or collateral challenges based on ineffective assistance

18 of counsel.

19          THE COURT:  Do you understand this to mean, in effect,

20 that neither party can appeal Judge Román's determination as to

21 the career-offender application so long as Judge Román imposes a

22 guideline sentence?

23          MR. WIKSTROM:  So long as Judge Román imposes a

24 sentence within either guidelines range, meaning that -- say the

25 Government loses on this issue and then the Defendant is

A-47

1   sentenced to 110 months, the Government would not be permitted

2   to appeal that, and, likewise, if Mr. Fryar loses the

3   career-offender issue and Judge Román imposes a sentence of 235

4   months, the top of the upper range, Mr. Fryar would have waived

5   his right to appeal or collaterally challenge that sentence.

6           THE COURT:  Mr. Fryar, do you understand that one

7   effect of this plea agreement that you've entered into with the

8   Government is that you are giving up the right -- the rights

9   that you might otherwise have had to appeal or otherwise

10  challenge any sentence that does not exceed 235 months

11  imprisonment?

12          THE DEFENDANT:  Yes, sir, your Honor.

13          THE COURT:  And that means that if Judge Román rules

14  against you on the career-offender issue, you won't be able to

15  appeal unless the Judge gives you more than 235 months.

16          Do you understand?

17          THE DEFENDANT:  Yes, sir, your Honor.

18          THE COURT:  Now, do you also understand that you are

19  giving up the right to appeal or otherwise challenge any term of

20  supervised release, any fine that does not exceed $5 million,

21  and any forfeiture that does not exceed $5,833?

22          THE DEFENDANT:  Yes, sir, your Honor.

23          THE COURT:  Mr. O'Reilly, have you reviewed with your

24  client the first full paragraph on page 7 of the agreement

25  commonly referred to as the *Brady* waiver paragraph?

A-48

Plea Hrg.                    USA v. Fryar                    24

```
 1            MR. O'REILLY:  Yes, I have, your Honor.

 2            THE COURT:  Are you satisfied that Mr. Fryar

 3   understands the consequences of that particular paragraph?

 4            MR. O'REILLY:  Yes, your Honor.

 5            THE COURT:  Mr. Fryar, do you understand that if you

 6   disagree with Judge Román's sentencing decision, that will not

 7   give you a basis to withdraw your plea of guilty?

 8            THE DEFENDANT:  Yes, sir, your Honor.

 9            THE COURT:  Do you also understand that parole has

10   been abolished in the federal system and that if you are

11   sentenced to a term of imprisonment, you will not be eligible

12   for early release on parole?

13            THE DEFENDANT:  Yes, sir, your Honor.

14            THE COURT:  Do you understand you do not have to plead

15   guilty, you have an absolute right to plead not guilty and to

16   have this case go to trial by judge or by jury?

17            THE DEFENDANT:  Yes, sir, your Honor.

18            THE COURT:  Do you understand that if you choose to

19   plead not guilty, you have a right to have a speedy and public

20   trial of your case?

21            THE DEFENDANT:  Yes, sir, your Honor.

22            THE COURT:  Do you understand that at any such trial,

23   you would be entitled to the presumption of innocence and that

24   the presumption would remain with you until the Government

25   proves each and every element of the crimes charged beyond a
```

1  reasonable doubt to the satisfaction of the judge if it's a

2  judge trial or to the unanimous satisfaction of the jury if it's

3  a jury trial?

4          THE DEFENDANT:  Yes, sir, your Honor.

5          THE COURT:  Mr. Fryar, at any such trial, you would

6  have the right, with the assistance of your lawyer, to confront

7  and cross-examine the witnesses against you.  You would have the

8  right to call witnesses to testify on your behalf and to have

9  subpoenas issued to compel witnesses to come and testify.  You

10 would also have the right to testify at your trial, but you

11 could not be forced to testify, and if you decided not to

12 testify, your decision to remain silent could not be held

13 against you in any way.

14          At your trial, you would also have the right I

15 described earlier to the assistance of a lawyer and to have a

16 lawyer appointed to represent you without fee if you could not

17 afford counsel.

18          Mr. Fryar, do you understand that if you plead guilty

19 to this offense, you will give up your right to a trial, and

20 except for the right to a lawyer, you will also give up all the

21 other rights which I have explained to you here?

22          THE DEFENDANT:  Yes, sir, your Honor.

23          THE COURT:  Mr. Fryar, have you clearly heard and

24 understood everything I've said?

25          THE DEFENDANT:  Yes, sir, your Honor.

A-50

```
1           THE COURT:  Do you have any questions for me or for
2  Mr. O'Reilly about anything I've said or anything I've asked
3  you?
4           THE DEFENDANT:  No, your Honor.
5           THE COURT:  All right.
6           Mr. Wikstrom, can I ask you to outline the elements of
7  the offense charged and then tell me what facts the Government
8  would be prepared to prove at trial to establish those elements.
9           MR. WIKSTROM:  Yes, certainly, your Honor.
10          The elements of Count I are:
11          First, an agreement or understanding to violate the
12 federal drug laws between the Defendant and one other person;
13          Second, that the Defendant knowingly became a member
14 of that conspiracy;
15          And, third, that the overall scope of that conspiracy
16 involved at least 28 grams of mixtures and substances containing
17 a detectable amount of cocaine base.
18          In addition to proving those three elements, the
19 Government would also have to prove by a preponderance of the
20 evidence that venue was proper in the Southern District of New
21 York.
22          At trial, I expect the Government would prove that Mr.
23 Fryar conspired with others to distribute crack cocaine in and
24 around Newburgh, New York, between at least July 2020 and
25 November 2020.
```

Plea Hrg.                    USA v. Fryar                    27

```
 1            The Government's evidence at trial would include,
 2  among other things, law enforcement testimony about surveillance
 3  of the Defendant and statements made by the Defendant,
 4  recordings of statements made by the Defendant, and physical
 5  evidence, including narcotics, seized from the Defendant and
 6  drug paraphernalia and money seized from him.
 7            THE COURT:  Thank you.
 8            Mr. Fryar, did you hear what the Assistant U.S.
 9  Attorney just said?
10            THE DEFENDANT:  Yes, sir, your Honor.
11            THE COURT:  At this time, how do you wish to plead to
12  Count I of the Information charging you with knowingly
13  participating in an illegal conspiracy with other people to sell
14  at least 28 grams of crack cocaine?
15            THE DEFENDANT:  Guilty, your Honor.
16            THE COURT:  Has anyone threatened you or coerced you
17  or pressured you improperly in order to get you to plead guilty
18  to this charge?
19            THE DEFENDANT:  No, sir, your Honor.
20            THE COURT:  Has anyone made any promises to you other
21  than what is set forth in the written plea agreement in order to
22  persuade you to plead guilty?
23            THE DEFENDANT:  No, sir, your Honor.
24            THE COURT:  Has anyone made any specific promise to
25  you about what the sentence of the Court will be?
```

A-52

```
 1              THE DEFENDANT:  No, sir, your Honor.

 2              THE COURT:  All right, then, Mr. Fryar, you need to

 3  tell me in your own words what you did that makes you guilty of

 4  this offense.

 5              THE DEFENDANT:  I conspired with another person to

 6  distribute 28 grams of cocaine base.

 7              THE COURT:  All right, let me follow up with a couple

 8  of questions.

 9              First of all, you conspired.  Are you telling me that

10  you agreed with somebody else to jointly participate in the

11  acquisition and distribution of cocaine base, or crack cocaine?

12              THE DEFENDANT:  Yes, sir, your Honor.

13              THE COURT:  And did you do that at least between about

14  July 2020 and November 2020?

15              THE DEFENDANT:  Yes, sir, your Honor.

16              THE COURT:  And did you do that up in and around

17  Newburgh, New York?

18              THE DEFENDANT:  Yes, sir, your Honor.

19              THE COURT:  And that's in Orange County in the

20  Southern District of New York.

21              Did you commit these acts knowingly and willfully?

22              THE DEFENDANT:  Yes, sir, your Honor.

23              THE COURT:  Did you know it was against the law to do

24  what you were doing?

25              THE DEFENDANT:  Yes, sir, your Honor.
```

1          THE COURT:  Is there anything else which either

2    Counsel believes the Court needs to elicit from Mr. Fryar before

3    making the appropriate recommendation to Judge Román?

4          Mr. Wikstrom?

5          MR. WIKSTROM:  No, your Honor.  Thank you.

6          THE COURT:  Mr. O'Reilly.

7          MR. O'REILLY:  No, your Honor.

8          THE COURT:  All right.

9          Mr. Fryar, just to confirm, you are consenting to the

10   forfeiture of $5,833 here?

11         THE DEFENDANT:  Yes, sir, your Honor.

12         THE COURT:  Mr. O'Reilly, do you know of any reason

13   why the Court should not recommend acceptance of your client's

14   plea of guilty?

15         MR. O'REILLY:  No, your Honor.

16         THE COURT:  Mr. Wikstrom, do you know of any reason

17   why the Court should not recommend acceptance of this plea?

18         MR. WIKSTROM:  No, your Honor.

19         THE COURT:  Mr. Fryar, in light of everything that's

20   been said here today, is it still your wish to plead guilty to

21   the single count of the Felony Information?

22         THE DEFENDANT:  Yes, sir, your Honor.

23         THE COURT:  Very well.

24         Upon this allocution, I find that Defendant, Octavius

25   Fryar, is fully competent and capable of entering an informed

A-54

Plea Hrg.                    USA v. Fryar                    30

```
 1  plea.  The plea is knowing and voluntary and is supported by an
 2  independent factual basis for each and every element of the
 3  crime charged.  Accordingly, I respectfully report and recommend
 4  to Judge Román that the plea be accepted and that Mr. Fryar be
 5  adjudged guilty of the offense charged in the Felony
 6  Information.
 7            I direct the Probation Department to conduct a
 8  pre-sentence investigation.
 9            Mr. Fryar, this is important.  Arrangements will be
10  made for you to be interviewed by a probation officer.  I'm sure
11  Mr. O'Reilly will assist you in preparing for that interview.
12  You're entitled to have your attorney participate in the
13  interview if you wish.  You must be fully honest and truthful
14  during that interview, because if Judge Román learns that you
15  have provided false, incomplete, or misleading information, that
16  could be held against you at the time of sentencing.
17            Do you understand?
18            THE DEFENDANT:  Yes, sir, your Honor.
19            THE COURT:  All right.
20            Mr. Wikstrom, the case summary should go to Probation
21  within 14 days.
22            Mr. O'Reilly, you should promptly contact Probation
23  and make your client available for interview within that same
24  interval.  I direct the reporter to provide a transcript of
25  these proceedings within 30 days setting forth my report and
```

1  recommendation to Judge Román.  That transcript should come to

2  me for review.

3          Defendant is under an order of detention, Mr.

4  Wikstrom?

5          MR. WIKSTROM:  Yes, your Honor.

6          THE COURT:  That will continue.  We'll adjourn for

7  sentencing.

8          Ms. Altimari, do we have a date and time?

9          THE DEPUTY CLERK:  Yes.  It will either be June 8th or

10 June 9th at ten a.m. on either day.

11         THE COURT:  All right.  Counsel should contact Judge

12 Román's chambers as those dates approach to firm up the date and

13 time of sentencing.

14         Mr. Wikstrom, just to confirm on the record, a 5(f)

15 warning has previously been given in this case?

16         MR. WIKSTROM:  Yes, your Honor, in November of last

17 year, I believe this -- I believe your Honor gave a 5(f) warning

18 and then issued a written order.

19         THE COURT:  Quite possible, but I can't confirm that.

20         MR. WIKSTROM:  Heh, heh.

21         THE COURT:  All right, is there anything else from the

22 Government?

23         MR. WIKSTROM:  There is not.  Thank you, Your Honor.

24         THE COURT:  Anything else from you, Mr. O'Reilly?

25         MR. O'REILLY:  No, your Honor.  Thank you.

A-56

```
1              THE COURT:  Very well.  Then we'll stand in recess.

2         Good luck to you, Mr. Fryar.

3              THE DEFENDANT:  Thank you, Your Honor.  Have a nice

4    day.

5              THE COURT:  You, too.

6              MR. WIKSTROM:  Take care, everyone.

7         Certified to be a true and accurate transcript.

8

9                 _____

10               TABITHA DENTE, SR. COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# FRANCIS L. O'REILLY

1735 Post Road, Suite 2C
Fairfield, CT 06824

P: (203) 319-0707
F: (203) 319-0128

July 8, 2022

The Hon. Nelson S. Román
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:   *United States v. Octavius Fryar*
      Docket No. 7:21-CR-703 (NSR)

Dear Judge Román:

The defendant in the above-captioned case, Octavius Fryar, respectfully submits this memorandum as an aid to the Court in his sentencing.

Mr. Fryar is presently before the Court facing an excessive sentence driven primarily by a number of incorrect guideline calculations. As discussed in detail herein, he is not a career offender. And the bulk of his advisory guideline range is mandated by an archaic relic of the Sentencing Guidelines, one which even the Department of Justice has acknowledged is excessive and produces racially disparate results.

In light of these factors, and Mr. Fryar's history and circumstances, a sentence that approaches two decades of incarceration—the top of Probation's proposed guideline range—is both unnecessary and unreasonable. Mr. Fryar humbly requests the Court impose the mandatory minimum sentence of 60 months' imprisonment.

## I.   INTRODUCTION AND PROCEDURAL HISTORY

On March 4, 2022, Mr. Fryar pleaded guilty to Count One of the Indictment in the above-captioned case, charging him with conspiracy to distribute and possess with intent to distribute crack, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B). Pursuant to a plea agreement with the Government, which is effectively reproduced in the Presentence Report at pages 3 and 4, the parties agreed that the applicable base offense level is 26. Two-levels are added because Mr. Fryar possessed a firearm. Three levels are then subtracted for acceptance of responsibility, for an adjusted offense level of 25. Mr. Fryar falls into Criminal History Category VI, so his guideline range is 110 to 137 months' imprisonment, of which 60 months are mandatory.

However, the Government and the Probation Office contend that Mr. Fryar is a career offender, and that his base offense level therefore becomes 34, by operation of U.S.S.G. § 4B1.1(b). This offense level is adjusted to 31 for acceptance of responsibility, for a guideline range of 188 to 235 months' imprisonment, of which 60 months are mandatory. As discussed in greater detail herein, the Court should decline the invitation to apply the career offender guideline, which is inapposite in the instant case.

## II.   LEGAL STANDARD

The Guideline range provides the "starting point and the initial benchmark" for the Court in considering an appropriate sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007). The Second Circuit has identified the following principles governing the selection of sentences:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby,* 397 F.3d 103, 113 (2d Cir. 2005). These principles do not render the Guidelines a mere "body of casual advice," and instead require the courts to "'consider' the Guidelines and all of the other factors listed in in § 3553(a)" in reaching an individualized sentence. *Id.,* at 113–4; *see also Gall,* 552 U.S. at 50 (requiring an "individualized assessment based on the facts presented"). § 3553(a) provides the following factors for the Court's consideration in imposing a sentence:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed--

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for--

      (A)  the applicable category of offense committed by the applicable
      category of defendant as set forth in the guidelines--
        (i)  issued by the Sentencing Commission . . .
    (5)  any pertinent policy statement--
      (A)  issued by the Sentencing Commission . . .
    (6)  the need to avoid unwarranted sentence disparities among defendants with
    similar records who have been found guilty of similar conduct; and
    (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The goal of these strictures and the governing precedent is a mechanism that enables sentencing judges to arrive at sentences that are, pursuant to § 3553(a), "sufficient, but not greater than necessary, to comply with the purposes" of the federal sentencing regime. *Id.*

### III.    MR. FRYAR IS NOT A CAREER OFFENDER

      The Presentence Report's guideline calculation is driven primarily by the classification of Mr. Fryar as a career offender pursuant to U.S.S.G. § 4B1.1. That classification is predicated, per the PSR, on the fact that at the time he committed the instant offense, Mr. Fryar had previously been convicted in 2010 of participation in a federal drug conspiracy, and on three other occasions of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York State Law, specifically NYPL § 220.39(1). However, only the federal drug conspiracy qualifies as a "controlled substance offense" for the purposes of § 4B1.1. Accordingly, Mr. Fryar does not have "two prior felony convictions of…a controlled substance offense," and he is not a career offender.

      To determine whether a prior drug offense under state law counts as a controlled substance offense for purposes of U.S.S.G. § 4B1.2(b), courts are to apply "categorical" and "modified categorical" approaches. *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008). The categorical approach examines the elements of the state law drug offense—*not* the facts underlying the defendant's conviction—and compares these elements to the "elements of the corresponding generic federal crime." *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018). Then, if the state statute "is broader than its federal counterpart—that is, if the state statute criminalizes some conduct that is not criminalized under the analogous federal law—the state conviction cannot support an increase in the base offense level." *Id.* The categorical approach is deployed where a criminal statute is "indivisible," which is to say where the statute defines only one crime with "various factual means of committing the crime." *Id.* at 73 (citing *Mathis v. United States*, 136 S.Ct. 2243, 2249(2016)).

      Here, NYPL § 220.39(1) is an indivisible statute. It defines a single crime, the knowing and unlawful sale of a "narcotic drug." *See, e.g., United States v. Swinton*, 495 F. Supp. 3d 197, 205 (W.D.N.Y., October 15, 2020) (finding NYPL § 220.39 indivisible and subject to the categorical approach).

      With regard to the categorical approach analysis, NYPL § 220.39(1) is broader than its federal counterparts in the Controlled Substance Act ("CSA"). This is because Schedule II(b)(1) of the New York Public Health Law criminalizes the possession or sale of naloxegol, while

federal law does not. 21 C.F.R. § 1308.12(b)(1). A number of courts in this District and elsewhere have determined this categorical difference to be a basis, under *Townsend*, for declining to label a New York State drug conviction a "controlled substance offense" for guideline purposes. *See Townsend,* 897 F.3d at 74*; see also United States v. Butler,* 19-cr-177 (S.D.N.Y.) (Daniels, J) (determining violation of § 220.39(1) was not controlled substance offense); *United States v. Santana,* 18-cr-865 (S.D.N.Y.) (Caproni, J) (determining violation of § 220.44 was not controlled substance offense)*; United States v. Campbell,* 20-cr-651 (S.D.N.Y., November 23, 2021) (Halpern, J.); *United States v. Augustine,* 17-cr-753 (S.D.N.Y) (Seibel, J.) (determining violation of § 220.39(1) was not controlled substance offense); *Swinton,* 495 F. Supp. 3d 197 (same); *United States v. Gibson,* 19-cr-66 (W.D.N.Y.) (same); *see also United States v. Gibson,* No. 20-3049 (2d Cir.) (argued Nov. 23, 2021) at ECF No. 27 (Brief for the United States of America, at 6 n.2 (conceding that "[A] 2015 amendment to the Controlled Substances Act ("CSA") removed naloxegol as a federally controlled substance, rendering New York State Penal Law § 110/220.39-1 broader than its federal counterpart.")).

In *Swinton,* for example, Judge Wolford held that a prior conviction under NYPL § 220.39(1) was not a controlled substance offense because "New York criminalizes the sale of naloxegol, while federal law does not." 495 F. Supp. 3d at 206. Judge Seibel reached the same conclusion in *Augustine,* opining that because

> [w]e live in this world where *Townsend* is the law, I am persuaded by the defendant's argument that this totally obscure compound, naloxegol, may be criminalized under New York law and is clearly not criminalized under federal law and, therefore, categorically, the one is broader than the other and, under *Townsend,* the state crime can't constitute a controlled substance offense.

*Augustine,* 17-cr-753 (Sentencing Transcript, Pages 5-6). The analysis is the same here. New York's criminal statutes are broader than the CSA, and, as a result, the two are different for the purposes of the categorical approach. Thus, Mr. Fryar's convictions for violations of NYPL § 220.39(1) cannot form the basis of a career offender enhancement,

Much of the debate in this Circuit surrounding the use of New York drug statutes as predicate offenses for guideline purposes concerns the timing of the categorical approach. That is, which version of the CSA should be compared to which versions of the NYPL? The Government, for its part, typically argues that the categorical approach should be performed using the statutes in effect at the time the defendant was convicted of the underlying state law drug offense. *See, e.g., Swinton,* 495 F. Supp. 3d at 206-08 (discussing timing of categorical approach and collecting cases).

The distinction is an important one, though not as important as it might appear on first analysis. This is because the CSA was not amended to remove naloxegol as a controlled substance—thereby making the CSA categorically different from the NYPL—until 2015. So if the court were to use a "time-of-conviction" categorical approach, Mr. Fryar's convictions for violating NYPL 220.39(1) might qualify as controlled substance offenses.

A-61

The Second Circuit has not expressly decided this issue, though the undersigned understands that it is currently pending in that Court, in the case of *United States v. Hodayah Johnson,* Case No. 19-4071. However, the majority of lower courts in this Circuit have rejected a "time-of-conviction" categorical approach in favor of a "time-of-sentencing" categorical approach. *E.g., Swinton,* 495 F. Supp. 3d at 206. As Judge Wolford noted in *Swinton,* the guidelines expressly direct courts to "apply the Guidelines in effect at the time of sentencing." *Id.* (citing U.S.S.G. § 1B1.11(a)). And, moreover, the drastically enhanced sentences compelled by the career offender guideline, coupled with the ambiguity of the statutory language, invoke the rule of lenity, which applies to the Guidelines, *see, e.g., United States v. Parkins,* 935 F.3d 63, 66 (2d Cir. 2019), and which directs the Court to resolve ambiguities such as the timing of the categorical approach in favor of the defendant.

However, even if the Court decides to break with the majority of lower courts in this Circuit and apply a time-of-sentencing categorical approach, the CSA and NYPL are still not categorical matches. This is because New York's drug statutes criminalize the possession or sale of another substance which the CSA does not. Specifically, the New York drug statutes criminalize certain isomers of cocaine, and the CSA does not. Cocaine includes stereoisomers (i.e., optical, and geometric isomers) and non-optical, non-geometric isomers (e.g., constitutional, and positional isomers). *See United States v. Holmes,* 2022 WL 1036631 at 7 (E.D.N.Y., April 6, 2022) (Garaufis, J.) (explaining the numerous types of and subtypes of isomers). Judge Garaufis in *Holmes* conducted a comprehensive review of expert testimony, of the legislative history of Public Health Law § 3306, and of the plain text of § 3306, and concluded that the "New York Law covers non-optical, non-geometric isomers in its definition of isomers of cocaine, whereas the CSA does not." *Id.* at 11; *accord. United States v. Fernandez-Taveras,* 2021 WL 66485 (E.D.N.Y., Jan. 7, 2021) (Garaufis, J.); *United States v. Baez-Medina,* 20 Cr 24 (S.D.N.Y.) (Koeltl, J.); *United States v. Ferrer,* 20 Cr. 650 (S.D.N.Y.) (Buchwald, J). Because NYPL § 220.39(1) is broader than the CSA, none of Mr. Fryar's convictions for violating that Section constitute controlled substance offenses for the purposes of the career offender analysis.

Probation's sentencing calculation offers none of this analysis. The Presentence Report merely states in conclusory fashion that Mr. Fryar is a career offender and asks the Court to act accordingly. The Court should decline this invitation. As discussed above, Mr. Fryar has only one conviction for a "controlled substance offense" as the Guidelines define that term. He is not a career offender.

## IV.   THE CRACK-POWDER SENTENCING DISPARITY SHOULD BE ABANDONED

Mr. Fryar's guideline range is also driven by a drug quantity calculation under which he is responsible for approximately 150 grams of crack cocaine. (*Id.* at 4.) This figure results in a base offense level of 26. (*Id.*) By contrast, if Mr. Fryar had only been trafficking in powder cocaine, his base offense level would be 16. U.S.S.G. § 2D1.1. These figures are themselves the result of the guidelines' treatment of cocaine base respective to powder cocaine, with cocaine base equating to more than eighteen times as much converted drug weight as powder cocaine.

However, in January 2021, the Eliminating a Quantifiably Unjust Application of the Law ("EQUAL") Act was introduced in the United States Senate. *See* S. 79, 117th Congress. The EQUAL Act, if passed, would eliminate the current 18:1 equivalency ratio between crack and powder cocaine, replacing it with a simple 1:1 ratio. While the EQUAL Act is not currently in effect, the Department of Justice provided legislative testimony in support of its passage. Specifically, the DOJ presented Congress with three main arguments for eliminating the crack-powder disparity. (*See* DOJ Statement regarding EQUAL Act, attached as Exhibit 1). First, the disparate treatment of crack and powder cocaine "is simply not supported by science." (*Id.* at 6.) Second, "the crack/powder sentencing differential is still responsible for unwarranted racial disparities in sentencing." (*Id.*) And third, "the higher penalties for crack cocaine offenses are not necessary to achieve (and actually undermine) our law enforcement priorities." (*Id.*) It is the undersigned's understanding that the DOJ presently disavows the application of the crack-powder sentencing disparity.

Assuming the crack-powder disparity did not exist as a matter of law in this case, Mr. Fryar's base offense level of 16, with the same adjustments as contemplated in the plea agreement, would produce a guideline range of 41 to 51 months' imprisonment.

Of course, the EQUAL Act is, as of the date of this writing, not law, and so this discussion is not meant to advance it a legal basis for a downward departure to a different guideline range.[1] But the Supreme Court long ago vested in the District Courts the authority to impose sentences outside the advisory guideline range, to account for circumstances including, *inter alia,* the disparate treatment at sentencing of crack and powder cocaine. *United States v. Kimbrough,* 552 U.S. 85 (2007). That authority is particularly important in case like this one, in which both parties seemingly agree that the current crack-powder disparity is unjust and should be abandoned, and in which it is that disparity that drives the bulk of the advisory guideline range.

The disparate treatment of crack and powder cocaine is a relic of a bygone era of criminal justice. The full catalogue of its unjust effects on American society is both beyond the scope of this memorandum and explored in greater detail elsewhere, by more capable hands. Suffice it to say that the crack-powder disparity should, at the very least, not be permitted to live on in this case. It should be accounted for here, with a variance from the advisory guideline range.

## V.   MR. FRYAR'S BACKGROUND AND POTENTIAL FOR REHABILITATION

Before discussing Octavius Fryar's unique history, it is worth considering briefly the end goals of the federal sentencing regime, and their respective influences on the sentence that is ultimately appropriate for Mr. Fryar. This Court is, of course, well acquainted with the notions of "proportionality, deterrence, incapacitation, and rehabilitation." 18 U.S.C. § 3553(a)(2). Each one has a part to play in fashioning a sentence that is sufficient but not greater than necessary. But it is hardly controversial to say that the respective influence of each—or the weight that each should be afforded when it comes time to impose a sentence—differs on a case-by-case basis. In violent cases or cases involving sex crimes, proportionality and incapacitation may be rendered

---

[1] Indeed, the plea agreement expressly establishes the applicable Guideline range in the presence or absence of the career offender enhancement. (*Id.* at ¶ 4.)

crucial to imposing an appropriate sentence. For financial crimes and drug offenses, deterrence, both specific and general, may become a key consideration. And in certain cases, with certain criminal defendants, rehabilitation assumes the central focus.

Octavius Fryar presents one such case.

He is a man who has suffered for most of his adult life under the twin burdens of mental health concerns and substance abuse. He has always longed for something better, for some way to fulfill the promise of his youth. But he has been thwarted at every turn by obstacles of his own creation. The instant case is no exception. As these pages will demonstrate, the conduct that brought Mr. Fryar before the Court was, unfortunately, not an aberration, but neither does it merit a brutally long sentence. Better a more thoughtful sentence, one that recognizes what Mr. Fryar already knows—that his behavior was unacceptable—while giving him a chance to once again pursue the help that he needs to become a functioning member of society. What better outcome could there be than that? If Mr. Fryar could be rehabilitated, would that not satisfy the highest ideal of criminal punishment? To restore him to his youthful promise, rather than stripping it away?

If it is true that rehabilitation of criminal offenders is a core aspiration of punishment, then Mr. Fryar represents a cause for optimism. He has, as the court will see, demonstrated a thorough understanding that he is the root cause of his own problems, that he needs professional help and treatment if he is to unlearn the behaviors that have thus far characterized his fifty-four years. Over the course of his adulthood, he has pursued that help in various forms, though his performance has been sporadic. That rehabilitation should be allowed to continue, and Mr. Fryar's efforts to atone for his actions and be a better man should not yield to the desire for retribution.

### a. UPBRINGING AND FAMILY LIFE

Octavius Fryar was born in 1968 in Clinton, North Carolina. (*Id.* at ¶ 64.) At the time of this writing, he is fifty-four years old. Mr. Fryar had no relationship with his father growing up. (*Id.*) He estimates that he has spoken with his father only three times during his life, the last of which was approximately ten years ago. (*Id.*)

Mr. Fryar and his three half-brothers were raised primarily in Newburgh, New York, by their mother, Josephine, and Mr. Fryar's stepfather, Edward Gardner. (*Id.* at ¶ 67, 69.) Mr. Fryar recalls a childhood he describes as "normal," but for an incident when he was six or seven and he was molested by a Cub Scout worker. (*Id.* at 69.) He suppressed the memory of this incident for many years—only recalling and sharing it in his thirties during a brief stint in Narcotics Anonymous. (*Id.*)

Despite this incident, Mr. Fryar recalls his childhood as a good one. (*Id.*) He was a bright student who received good grades. (*Id.* at ¶ 78.) He was placed in gifted classes, and he seemed to have a genuine interest in school. (*Id.*)

7

However, at around age thirteen, Mr. Fryar recalls that his priorities began to shift. He still struggles to explain this. There was no apparent catalyst, no trauma that forced him to change. And yet, around age thirteen, Mr. Fryar began experimenting with drugs and alcohol. And slowly, his focus began to drift.

This was, in many ways, the inflection point in his life, the proverbial fork in the road. If he continued on the path he had laid out for himself, he was headed for ruin. And perhaps, if he had had a role model in his life, someone to take an interest in him and steer him in the right direction, things might have been different. But as it was, Mr. Fryar's mother was often away from the home working long hours to support the family, and there was no one else to look after him.

And so the pattern of Mr. Fryar's life unfolded. He slipped slowly, progressively into addiction. He managed to graduate from high school, but this was the last of his accomplishments. By 1991, he had been incarcerated for the first time. And when he was released from that brief period in jail, the world he found awaiting him was not a welcoming one. He had a high school degree, of course, but he had no real work history and no job prospects. He was also saddled with the looming presence of his addiction, which was growing steadily worse and worse.

The things Mr. Fryar became involved in over the years are shocking, even to him. He lied. He manipulated. He sold drugs to feed his habit. And all these things landed him right where one might predict: back in jail, with progressively fewer prospects, and even less chance to break the growing cycle.

That cycle has led Mr. Fryar to where he is now: before another court in another city, asking for mercy.

Today, as Mr. Fryar reflects on his life story, he is surprised and saddened to see how it has unfolded. He remembers the boy he was in his youth—bright, curious, interested—and in many ways he feels that way still. But he also acknowledges that his choices have, in many ways, buried that person. His abiding hope is that the instant case proves not a curse but an opportunity—to recover some of the promise of his youth and to become a better person.

Mr. Fryar intends to work at that opportunity, and there is evidence that he can be successful. As the Presentence Report notes, he attended college classes while incarcerated in his twenties, receiving 42 credits and maintaining a 3.8 GPA. (*Id.* at ¶ 107.) He has consistently sought treatment through the years for his substance abuse struggles. (*Id.* at ¶ 93-103.) And despite his history of incarceration and drug use, he has attempted—and to some degree succeeded—at maintaining a consistent presence in the lives of his children, unlike his father before him. (*Id.* at ¶ 72-75.)

All of these factors evince his desire and his willingness to change. But he cannot do so alone. Mr. Fryar knows that. So he intends to treat the instant case, and any period of incarceration that might be imposed as an opportunity. To get clean. To get help. To get an education and a steady job. To be the best father, family member, and man that he knows how.

8

### b. MENTAL HEALTH

Mr. Fryar's struggles with mental health are not well-documented. The simple fact is that he has never in his life sought or received proper treatment or diagnosis. The outline of his condition is there though, if one looks closely. As the PSR notes, in 1992, Mr. Fryar was taken to Rockland County Mental Health Center after expressing suicidal ideation. (*Id.* at ¶ 87.) He was diagnosed with an adjustment and anxiety disorder. (*Id.*) Then, in 2006, he self-reported suffering from bouts of insomnia and was diagnosed with PTSD. (*Id.* at ¶ 85.)

These scant bits of information are all we have. The unfortunate reality is that Mr. Fryar was raised in a time and in a culture where mental health was obscure and largely undiscussed. He did not grow up with any understanding that therapy and counseling were available or even permissible. He was instead encouraged to bury his anxieties and to persevere on his own.

This, of course, has not served him well.

However, Mr. Fryar's struggles with mental health suggest, at the very least, that proper treatment might yield different results. Mr. Fryar might have some hope of escaping the pattern described in the Presentence Report. Today, he is willing to pursue that hope, whatever it requires. He sees the influence his struggles have had on the people around him, and on his own life. He wants to be better, and he asks the Court for that opportunity.

### c. SUBSTANCE ABUSE

Unlike his mental health diagnoses, Mr. Fryar's problems with addiction are many and well-documented. At thirteen, he first experimented with alcohol. (*Id.* at ¶ 88.) By eighteen, he was drinking every single day, a pattern which continued until he was forty-five. (*Id.*) Around the same time, he began smoking marijuana on a daily basis. (*Id.* at ¶ 89.)

By the time he graduated high school, the alcohol and the marijuana were not enough, and Mr. Fryar began using cocaine. (*Id.* at ¶ 90.) He used cocaine daily until his early-mid-twenties, at which point he switched to crack. (*Id.*) At first, he would put crack in his marijuana cigarettes, but soon his addiction progressed to the point that he was smoking crack all day. (*Id.* at ¶ 91.) This pattern continued in some form until Mr. Fryar was forty-four years old. (*Id.*)

At thirty-five, Mr. Fryar began using heroin to offset the effects of the crack. (*Id.* at ¶ 92.) He would smoke crack and then use heroin to come down, a practice that very quickly began to destroy his body. (*Id.*) He started experiencing kidney failure, and had to wean himself off heroin, though he continued to smoke crack. (*Id.*)

The Presentence Report also details thoroughly Mr. Fryar's attempts to receive treatment for this brutal cycle of addiction. (*Id.* at ¶ 93-103.) His performance in the many programs he has

9

attended over the forty-year cycle of his addiction has been inconsistent. He has excelled at some and failed at others. He has graduated from some and left against medical advice from others. The results, though, are not as important as Mr. Fryar's continued willingness to seek and accept help. He knows, somewhere beneath the tyranny of his addiction, that he has been killing himself for more than four decades. He knows he cannot conquer this oppressor alone. He knows he needs help, and that willingness is a factor that the Court can and should consider in fashioning his sentence.

### d. POTENTIAL FOR REHABILITATION

As discussed above, Octavius Fryar is someone for whom rehabilitation through the criminal justice system is a genuine possibility. He is not a lost cause.

Mr. Fryar looks back now, at fifty-four years old, and he can see the still-unfolding pattern of his life. He can see how all his choices and decisions were colored by a desire to escape. The drug use. The arrests. The slow drift away from his family and toward the streets. All of them attempts to get away from something inside himself.

And one need only look at his criminal history to see evidence of the pattern. It is lengthy, dating back almost forty years, but it involves almost exclusively drug offenses, all of which were the result of Mr. Fryar's own pernicious struggles with addiction. He habitually possessed and sold drugs not out of a desire to for wealth or for power, but out of necessity, to feed his own habit.

Amid this sick, cyclical pattern of drug abuse and incarceration, there is hope. Who is Octavius Fryar if he is freed from his addictions? Who is he with mental health counseling? The answers are unknowable, of course, but the evidence suggests that he is necessarily different from the man described in the pages of the Presentence Report. Mr. Fryar asks only for the opportunity to prove that this is the case, to demonstrate to the Court, to the Probation Office, and to his family that he is more than the sum of his worst mistakes.

### VI.   OTHER FACTORS THE COURT MAY WISH TO CONSIDER

In addition to the sentencing factors specifically enumerated by § 3553, there are several other factors that the Court may wish to consider pursuant to its broad sentencing discretion.

### a. THE ONGOING COVID-19 PANDEMIC

Aside from the enumerated § 3553 factors, the Court may also wish to consider the fact that the period of incarceration that Mr. Fryar has already served while awaiting trial in this case has been more punitive than it would have been under ordinary circumstances. With the COVID-19 pandemic now seemingly in slow recession across much of the United States, it is easy to forget that the past few years have presented unique challenges and dangers to citizens all across the social spectrum. This is perhaps truer of inmates and detainees than of any other class of persons.

State and federal prisoners, already deprived by their status of many privileges we take for granted, have suffered through a long period in which even their barest and most essential liberties were curtailed by the pandemic. Recreational time, education, prison jobs, library time, prison programming—all of these have been at times restricted or outright suspended during the pendency of the pandemic. The same is true of contact visitation, that most essential link to the outside world. These factors combine to create circumstances under which inmates are more isolated, more segregated, possessed of even fewer liberties than they would normally be.

Mr. Fryar's incarceration has been no different. As noted above, he has remained in detention since his arrest in November 2020, during some of the most difficult circumstances presented by the pandemic. He has been denied visitation from his friends and family. He has been isolated for a large majority of his detention. And he has been forced to reckon with the reality that his circumstances—the practical realities of being in a county jail—placed him at a higher risk of infection from the coronavirus than an ordinary person. And, of course, his various medical conditions, including diabetes and hypertension, placed him at a higher risk of complication and severe illness or death.

This detention during the COVID-19 pandemic resulted in a period of incarceration that was fundamentally different—more restrictive, more punitive, more difficult—than it would otherwise have been, and the undersigned respectfully submits that this fact can and must be accounted for at sentencing.

## VII.   CONCLUSION

Mr. Fryar is presently before the Court humbly requesting that the Court impose a sentence of 60 months' imprisonment. Such a sentence will serve to adequately punish him for his admitted criminal conduct, deter others, and promote respect for the law.

THE DEFENDANT
**OCTAVIUS FRYAR**

**By:**   **/s/ FO0875**
Francis L. O'Reilly
Fed. Bar No.: FO0875
41 Unquowa Place
Fairfield, CT 06824
Phone: 203-319-0707
Fax: 203 319-0128

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was electronically filed this the 8th day of July 2022, through the District Court's CM/ECF system, and thereby submitted to all counsel and parties of record capable of receiving such filings:

<u>      **/s/ FO0875**           </u>
Francis L. O'Reilly

5/3/2022

Dear Honorable Judge Roman,

As I write this letter I can not describe the awe that overwhelms me at this moment. I'd say that I can best describe as one that I feel when I miss a stair in the dark and begin to fall, feeling that terrible lurch of wrongness combined with the fear of the impact that will surely follow. Sometimes the resulting damage is not as bad as feared on the way down, the type of result I pray for now as I continue this missive.

By me allowing drugs and alcohol to be the anesthesia by which I endured the operations of life caused me to fail perpetually at every attempted endeavor, not excluding crime. I draft this letter of sorrow with my sincerest apologies.

My life has become a monumental frustration. Frustrations that has become a function of my expectations and my expectations are often a reflection of my social mirror, rather than my own values and priorities. It's taken the pain of this incarceration to made my brain continuously think smarter. I accept culpability because it is I who has fallen on my own sword, the same sword used for protection of freedom has now taken it away.

My voice of positive discipline succumbed to my voice of negative temptation and along with pandemic reasons I allowed myself to jeopardize my liberty and freedom. My voice of discipline was weakened by worldly events causing my addictions to re-surface and be my catalyst for my lapse in judgment. The hold it had on me no longer broke away at that moment. By no means does it give validity to my actions, however, by sharing this I trust and pray that when the time comes it will be considered.

The day of my arrest has impacted my soul. It has awakened me to the realization that there are no shortcuts, no get-rich-quick schemes and the paths of least resistance will most always be the road to self-destruction. These are facts I now share with my children along with the knowledge that laws can not be broken, as we can only break ourselves against the law. God made laws and the

won't allow them to be broken. I'm done trying to climb the ladder of success that's leaning against the wrong wall.

I'm not asking you to trust me because trust is feelings and actions stretched out over time. However, I am asking for a chance to start establishing some traits characterized by trust and be allowed to be a conducive member of society in the very near future.

When it comes to my actions I can not say what or how I feel in a language that anyone besides my inner voice can understand. I think of regular words like shame, guilt, remorse, sorrow, frustration, resentment, disgust. But when I utter these words out loud they are words that can't capture my true feelings at this moment.

I've spent these first many months of incarceration ruminating, learning and grasping the process of becoming a better man, father, grandfather, son, uncle, friend, neighbor and practicing these principles in all my affairs that I have acquired. Now I know that being rich in spirit is all the Godly gains that I need. It's made me a happier person wanting to share the joy God gives me daily with others. I can get long-winded with the pen when it comes to sharing these newfound treasures so I'm not going to take up too much more of your already precious time.

In conclusion it is known that almost every part of governmental structure has the element of human discretion because day to day practicalities demand some measure of flexibility and I hope it's safe, staying within the realm of propriety, to kindly ask that you grant me the minimum amount of time that you can.

Thank you in advance for your time and consideration.

Respectfully Yours,
Mr. Octavius B. Bryan

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA

                v.               21 CR 703 (NSR)

**OCTAVIUS FRYAR,**

                Defendant.
------------------------------------x
                U.S. Courthouse
                White Plains, N.Y.
                July 20, 2022
                9:45 a.m.


Sentencing Before:  HON. NELSON S. ROMÁN,
                   United States District Judge




APPEARANCES

**UNITED STATES ATTORNEY'S OFFICE**
**SOUTHERN DISTRICT OF NEW YORK**
**300 Quarropas Street**
**White Plains, N.Y.  10601**
BY:  DEREK WIKSTROM
**Assistant United States Attorney**

**O'REILLY & SHAW, LLC**
**BY:**  FRANCIS L. O'REILLY, Esq.
41 Unquowa Place
**Fairfield, CT  06824**
**Attorney for** Defendant



**Sue Ghorayeb, R.P.R., C.S.R.**
Official Court Reporter

A-72

2

1           THE CLERK:  Docket number 21-CR-703, United States
2    of America v. Octavius Fryar.
3           Will counsel please state their appearance for the
4    record beginning with the Government.
5           MR. WIKSTROM:  Yes.  Good morning, Your Honor.
6    Derek Wikstrom for the Government.
7           MR. O'REILLY:  Good morning, Your Honor.  Francis
8    O'Reilly on behalf of Octavius Fryar, who is also present in
9    court.
10          THE COURT:  Good morning, everyone.
11          This is a proceeding in the matter of the United
12   States v. Octavius Fryar, Docket Number 21-CR-703, and it is
13   intended to be the sentencing of the Defendant.
14          The record should reflect that the Defendant, his
15   attorney, and counsel for the Government are appearing in
16   person in a courtroom and I, the Judge, Judge Román, is
17   appearing remotely via Teams videoconference for this
18   proceeding due to COVID protocols that are in place at the
19   U.S. District Courthouse for the Southern District of
20   New York.  This proceeding is going forward, I believe, with
21   the consent of the Defendant and the Government.
22          Pursuant to the Coronavirus Aid, Relief, and
23   Economic Security Act, video conferencing and telephone
24   conferencing may be used in enumerated criminal proceedings,
25   delineated by Standing Order M10-468, in certain

Sue Ghorayeb,  Official Court Reporter

1   circumstances during the national emergency related to the

2   Coronavirus Disease 2019.

3           The Chief Judge of the United States District Court

4   for the Southern District of New York has found that for

5   proceedings that cannot be conducted in person without

6   seriously jeopardizing public health and safety, video

7   teleconferencing or telephone conferencing, if video

8   conferencing is not reasonably available, may be used in such

9   proceedings with the consent of the Defendant after

10  consultation with counsel and upon a finding by the presiding

11  Judge that the proceeding cannot be further delayed without

12  serious harm to the interests of justice.  Presently before

13  the Court is one such proceeding, the sentencing of the

14  Defendant, Octavius Fryar.

15          Given the fact that I tested positive this past

16  Saturday, and the U.S. Courthouse for the Southern District

17  of New York protocols does not permit me to be physically

18  present in the courtroom, I will conduct this proceeding

19  remotely via Teams videoconferencing.

20          All right.  Mr. Fryar, I'm going to ask you several

21  questions for the record.  They do not pertain to the alleged

22  charges.  However, I need to make a complete record.

23          Can you please state your full name and age?

24          THE DEFENDANT:  Octavius Fitzgerald Fryar, 54 years

25  old.

                Sue Ghorayeb,  Official Court Reporter

1    THE COURT: Do you have any difficulty reading,

2 writing, speaking, or understanding the English language?

3    THE DEFENDANT: No, Your Honor.

4    THE COURT: How far did you go in school?

5    THE DEFENDANT: I graduated high school, Your Honor.

6    THE COURT: Have you ever been hospitalized or

7 treated for narcotic or alcohol addiction?

8    THE DEFENDANT: Excuse me?

9    THE COURT: Have you ever been hospitalized or

10 treated for narcotic or alcohol addiction?

11    THE DEFENDANT: Yes.

12    THE COURT: All right. How long ago was that?

13    Or can you tell us for what you were treated or

14 hospitalized and how long ago was that?

15    THE DEFENDANT: I was treated for cocaine crack

16 addiction in 2018.

17    THE COURT: All right. Is there anything about that

18 course of treatment or hospitalization that affects your

19 ability to understand today's proceedings?

20    THE DEFENDANT: No.

21    THE COURT: All right. In the last 24 hours, have

22 you taken or used any drugs, marijuana, alcohol, or

23 medication?

24    THE DEFENDANT: No, Your Honor.

25    THE COURT: All right. Mr. O'Reilly, did you

1    consult with your client about his right to have the Judge,

2    meaning me, presiding over this sentencing — having me

3    physically in the courtroom, meaning in person?

4            MR. O'REILLY:  Yes, I did, Your Honor.

5            THE COURT:  Are you satisfied that your client has

6    knowingly, intentionally, and voluntarily consented to me

7    presiding over this proceeding remotely?

8            MR. O'REILLY:  Yes, Your Honor.

9            THE COURT:  All right.  Mr. Fryar, did you consult

10   with your attorney regarding your right to have me preside

11   over your sentencing proceeding in person?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you now knowingly, intentionally, and

14   voluntarily consent to have me preside remotely over your

15   sentencing via Teams videoconference?

16          THE DEFENDANT:  Yes, sir, Your Honor.

17          THE COURT:  All right.  The Court finds that the

18   Defendant, Octavius Fryar, has knowingly, intentionally, and

19   voluntarily consented to proceed at today's sentencing with

20   the Court appearing via videoconference.

21          All right.  Does any party wish to make any

22   statement as to why this proceeding cannot be further delayed

23   without serious harm to the interests of justice?

24          MR. WIKSTROM:  Yes, Your Honor.  My understanding,

25   from consultations with Mr. O'Reilly, is that Mr. O'Reilly

1    believes that — and he can speak for himself, but that Mr.

2    Fryar is eager to be designated to a BOP facility and start

3    serving there rather than in a pretrial facility, and that to

4    the extent he might appeal from any sentence the Court imposes

5    would like to do that as expeditiously as possible.

6            And on the basis of that understanding, the

7    Government believes there is a valid basis for the Court to

8    find that this proceeding cannot be delayed without harm to

9    the interests of justice.  And I'll note that the Second

10   Circuit recognized those factors I just mentioned as

11   legitimate reasons for that finding in the Paul Calder Leroux

12   case.  That's L-e-r-o-u-x, for the record.

13           Thank you, Your Honor.

14           THE COURT:  All right.  Thank you, Counsel.

15           Mr. O'Reilly, is there anything you would like to

16   say?

17           MR. O'REILLY:  I have nothing really to add to what

18   the Government said, other than that Mr. Wikstrom and I did

19   have those conversations, Your Honor, and Mr. Fryar does wish

20   to proceed because of — because he has waited 22 months for

21   this day.  He does want to expedite the process to get along

22   in the BOP and he does want to exercise his appellate rights,

23   if necessary.

24           THE COURT:  All right.  Thank you, Counselor.

25           In light of the ongoing national emergency arising

Sue Ghorayeb,  Official Court Reporter

1    from the COVID-19 pandemic, its continuing material impact on

2    the functioning of the federal courts, the increasing

3    necessity for judges in this District to conduct criminal

4    proceedings remotely in order to comply with social

5    distancing protocols, the fact that I tested positive for

6    COVID-19 less than five days ago, and the need to resolve

7    this matter as expeditiously as possible, the Court finds

8    that the sentencing in this matter cannot be further delayed

9    without serious harm to the interests of justice.

10            All right.  Let's proceed.

11            The Court has reviewed the Presentence

12   Investigation Report, prepared on May 9, 2022 and revised on

13   June 27, 2022, which was prepared in connection with today's

14   sentencing of Mr. Fryar; the Defendant's submissions dated

15   July 8, 2022 and July 18, 2022, and the Defendant's

16   submission filed under seal on July 17, 2022.

17            All right.  Has the Government reviewed the

18   Presentence Report?

19            MR. WIKSTROM:  Yes, Your Honor.

20            THE COURT:  And does the Government have any

21   objections to the Presentence Report?

22            MR. WIKSTROM:  No, Your Honor.

23            THE COURT:  Mr. O'Reilly, have you had an

24   opportunity to review the Presentence Report?

25            MR. O'REILLY:  Yes, Your Honor.

Sue Ghorayeb,  Official Court Reporter

1      THE COURT:  And have you had an opportunity to

2   discuss it with your client, Mr. Fryar?

3      MR. O'REILLY:  Yes, I did, Your Honor.

4      THE COURT:  Do you have any objections to the report

5   that you wish to raise at this time?

6      MR. O'REILLY:  Well, yes, Your Honor, to the career

7   offender designation in the PSR.  If you would like me to

8   start addressing that issue now, I'd be happy to do that.

9      THE COURT:  You can do that, and then I'll address

10   it during sentencing.

11      MR. O'REILLY:  Okay.  Your Honor, Mr. Fryar objects

12   to the designation of him being a career offender based on the

13   fact that his prior New York State convictions are not drug

14   offenses for purposes of the career offender enhancement.  He

15   does have one prior federal drug conviction, Your Honor.  He

16   has three prior State drug convictions.  However, the Supreme

17   Court and the Second Circuit in Townsend have said that when

18   you are looking for — at the federal drug statute and the

19   state drug statute to see if the state drug statute applies

20   for the enhancement, that the Court must apply the categorical

21   approach to determine whether the state's statute is a — is a

22   mirror image of the federal statute.  In this case, it is not,

23   Your Honor.

24      New York Public Law 20 — 220—39(1), which is the

25   prior convictions that Mr. Fryar suffered from, is an

1    individual statute and the categorical approach should apply.

2    That statute is broader than the federal statute because the

3    New York statute criminalizes a substance called naloxegol

4    and the federal statute does not, and since the statute —

5    the New York statutes are overbroad, Your Honor, they cannot

6    qualify as a drug offense for the career offender

7    enhancement.

8           The — I've looked at — well, I guess I can leave

9    it at that, and then — and then further add that there is a

10   discrepancy regarding the cocaine isomers that the New York

11   law criminalizes, which the federal Controlled Substances Act

12   does not.  And I think the two of those issues, Your Honor,

13   creating an overbroad New York statute, renders the prior

14   New York State convictions unscoreable for career offender

15   purposes.

16          And, so, therefore, I would argue that he is not a

17   career offender and that, therefore, the Court should apply a

18   normal guideline analysis.  If the Court did that, based on

19   his, his conviction, his Guidelines were — 150 grams of

20   crack cocaine would be 110 to 137 months.  However, Your

21   Honor, understanding the crack powder cocaine ratio, the

22   Supreme Court's decision in Kimbrough, saying that the courts

23   can use their discretion to, to remedy the inequitable

24   punishments between crack and powder cocaine, the Government

25   is essentially agreeing that the Court should apply a

A-80

1 one-to-one ratio.  Here, we're asking Your Honor to apply a

2 one-to-one ratio of crack to powder.

3    If the Court finds that the career offender

4 analysis does not apply and the Court applies the crack/-

5 powder ratio of one-to-one, then his Offense Level would be

6 16, Your Honor, and he would have a criminal — I'm sorry, a

7 Guideline range of 40 to 51 months, which, of course, then

8 the mandatory minimum of 60 months would control, and so his

9 guideline range would be 60 months, Your Honor.

10    We think that that's an appropriate sentence in

11 this case for a number of reasons:

12    First, Mr. Fryar is 54 years old, Your Honor.  He's

13 struggled with drug addiction his entire life.  As he just

14 mentioned to you, Your Honor, as recently as 2018, he was in

15 drug treatment, but he's essentially struggled with alcohol

16 since — well, he began using alcohol, marijuana when he was

17 13, 14 years old.  He was fortunate enough to graduate high

18 school, and I think — and he is a very intelligent man.  I

19 think you can tell that from the letter he provided to Your

20 Honor.  It's very well-written, and I think it lays out in

21 his own words, you know, what his life and what he hopes for

22 in the future.  And, so, I think — you know, I think

23 recognizing his substance abuse, Your Honor, is a significant

24 consideration for Your Honor.

25    We also are suggesting to Your Honor that he has

Sue Ghorayeb,  Official Court Reporter

1   untreated mental health issues.  He had PTSD in the past.  He

2   was treated for anxiety in the '90s, Your Honor.  I think

3   there was a suicide attempt back then.  He's struggled his

4   whole life, I think, because a lot of his drug addiction is

5   due to his self-medicating on substances.

6          Mr. Fryar reported some abuse as a young boy, Your

7   Honor, that he suffered.  I think it's in the PSR, it's in my

8   memo as well, and that I think probably had a significant

9   impact on his life.  His father was absent from his life,

10  Your Honor, and he didn't have that male role model to guide

11  him as he was growing up.  And, so, what happened is, is he

12  fell into — he fell into the use of drugs and alcohol, and

13  that really has led to his entire criminal history.  If you

14  look at it, Your Honor, it's, it's replete with drug

15  offenses, relatively — I don't want to say minor drug

16  offenses, because I don't think any offense is minor, but

17  it's not, that I could tell, that there was large-scale drug

18  trafficking.  It's more of drug trafficking to support a

19  habit and to have a basic subsistence, because he's

20  unemployable due to his drug addiction.

21          As I mentioned, Your Honor, he is an intelligent

22  man.  He does want to address you briefly at the end of my

23  remarks.  I think there is hope for Octavius.  He and I have

24  gotten to know each other over the past 22 months.  We've

25  talked, I don't know, 50 times maybe.  He calls.  He's

                    Sue Ghorayeb,   Official Court Reporter

1    prolific in his calling, and he and I have had many times to

2    talk and have had many phone calls, and each time — not each

3    time, but many times, Your Honor, he has indicated to me that

4    he's too old to continue with his lifestyle, that he wants

5    to, he wants to live a different type of life, that he wants

6    to get back into sobriety.  He has had periods of sobriety in

7    the past.  That's his goal for the future, Your Honor, is to

8    remain sober, to have a better relationship with his children

9    and his, his mother and his brothers and sisters.

10            And, so, all of that, Your Honor, the career

11   offender argument, that it should not apply, the crack/powder

12   disparity resulting in a Guideline range below the mandatory

13   minimum, the Guideline range of 60 months, in our view, is

14   sufficient, but not more than necessary, to accomplish the

15   goals of sentencing.

16            There's one more thing I would like to point out

17   before I finish, Your Honor, is that Mr. Fryar has been

18   incarcerated throughout the period of the COVID-19 pandemic

19   and through some of the worst, the worst periods of the

20   pandemic, and that, obviously, as Your Honor is well-aware,

21   has magnified the harshness of his conditions of confinement,

22   and I think that that is a consideration for Your Honor

23   when — in imposing the appropriate sentence in this case.

24            So, for all of those reasons, Your Honor, I would

25   ask the Court to impose a sentence of 60 months.  Thank you,

Sue Ghorayeb,   Official Court Reporter

1    Your Honor.

2            THE COURT:  All right.  Thank you, Mr. O'Reilly.

3            I'm going to ask the Government to respond with

4    respect to the appropriate Guidelines and to tell me whether

5    or not the career offender status applies.

6            MR. WIKSTROM:  Your Honor, on the Guidelines issue,

7    Mr. Fryar is a career offender, and I've laid out the reasons

8    in my submission.  I'm happy to answer any questions the Court

9    has, but I'll say, just briefly, that it requires, on the part

10   of Mr. O'Reilly and on the part of a number of courts that

11   have ruled in the defense's favor on this issue, some, some

12   creativity to get to the point of saying that naloxegol is

13   criminalized in New York and not criminalized federally.  It

14   certainly is not criminalized federally, but I think it's

15   fairly clear, as argued in our letter, that it's not

16   criminalized in New York either, and the argument to the

17   contrary relies on the application of the DEA's own

18   interpretation of its regulations about the meaning of the

19   word "derivative" to New York law, but there's no evidence

20   that that interpretation applies.

21           And, in fact, as we explain on page — pages 4 and

22   5 of our letter, there's a lot of good reasons to think that

23   the DEA's interpretation of the word "derivative" doesn't

24   apply in state law, because New York does not identify

25   naloxegol as a Schedule II controlled substance for purposes

Sue Ghorayeb,  Official Court Reporter

1    of the State's prescription monitoring program.  Mr. O'Reilly

2    has identified no prosecution for naloxegol possession or

3    sale, and the Government is aware of none.

4              And, so, in a context where it's not at all clear

5    that New York, on its face, criminalizes naloxegol, the Court

6    ought to resort to the realistic probability test and

7    conclude that there's no realistic probability that Mr. Fryar

8    or anyone else could have been convicted of the crimes he's

9    been convicted of for the possession of naloxegol.

10             There is particularly no realistic probability, by

11   the way, because, in the case of Mr. Fryar's convictions,

12   they all occurred before naloxegol was added as an exclusion

13   in the federal schedules.  And, so, at the time of his

14   convictions under New York Penal Law Section 220.39

15   Subsection (1), both laws were — both sets of schedules were

16   silent as to naloxegol.  It was only after Mr. Fryar's

17   conviction that naloxegol was expressly excluded from the

18   federal schedules.

19             As for positional isomers of cocaine, roughly, the

20   same analysis applies.  The language of the respective

21   schedules is set out in our letter on pages 5 and 6, and

22   although the statutes aren't worded identically, they are

23   worded sufficiently similarly that the Court can conclude

24   that it is not on the face of the statutes that these isomers

25   Mr. O'Reilly invokes are prohibited under state but not

Sue Ghorayeb,  Official Court Reporter

1      federal law.  The Court has to go further and do some

2      analysis of what the word "isomer" is defined to mean in each

3      and what qualifies as an isomer of cocaine, and that analysis

4      is not an analysis of the face of the statute.  And, so,

5      again, the realistic probability test ought to apply, and,

6      again, Mr. O'Reilly has identified no prosecutions for the

7      possession of positional isomers of cocaine.

8            So, for those reasons and the reasons set forth in

9      the Government's letter, we would respectfully request that

10     the Court find that Mr. Fryar is a career offender.  Having

11     said that, and I'm happy to do this now or at a later time in

12     this proceeding, for the reasons explained in our letter, we

13     do agree with Mr. O'Reilly that the Court ought to vary

14     downward from that Guidelines range.

15            THE COURT:  Thank you.  All right.  Mr. Fryar, did

16     you have an opportunity to read and review the Presentence

17     Report?

18            THE DEFENDANT:  Yes, sir, Your Honor.

19            THE COURT:  And did you have an opportunity to

20     discuss it with your attorney?

21            THE DEFENDANT:  Yes, sir, Your Honor.

22            THE COURT:  All right.  The Felony Information

23     charges you with one count of conspiracy to distribute and

24     possess with intent to distribute 28 grams or more of crack

25     cocaine, in violation of Title 21, United States Code, Section

Sue Ghorayeb,  Official Court Reporter

1    846.  To the Defendant — I'm sorry.

2          The Defendant waived indictment at his arraignment

3    on November 16, 2021, before Magistrate Judge Davison.  The

4    Defendant entered a guilty plea to the sole count of the

5    Information before Magistrate Judge Davison on March 4, 2022.

6          All right.  I'm now going to ask you, Mr. Fryar,

7    with respect to a document which was submitted to the Court.

8    The title of the document is "Consent Preliminary Order of

9    Forfeiture/Money Judgment."  All right.  Did you receive such

10   a document?

11          THE DEFENDANT:  Yes, sir, Your Honor.

12          THE COURT:  And did you review the document?

13          THE DEFENDANT:  Yes, sir, Your Honor.

14          THE COURT:  All right.  Do you understand — well,

15   did you sign the document after consulting with your attorney?

16          THE DEFENDANT:  Yes, sir, Your Honor.

17          THE COURT:  All right.  Did you sign the document

18   voluntarily and of your own free will?

19          THE DEFENDANT:  Yes, sir, Your Honor.

20          THE COURT:  All right.  Do you understand that by

21   signing this document, you agree to forfeit a sum of monies to

22   the United States Government?

23          THE DEFENDANT:  Yes, sir, Your Honor.

24          THE COURT:  The amount that I have before me is

25   $5,833.  Is that correct?

Sue Ghorayeb,  Official Court Reporter

1          THE DEFENDANT:  Yes, sir, Your Honor.

2          THE COURT:  All right.  Do you understand that you

3    are forfeiting that sum of money to the United States

4    Government and that you're making no legal claim as to those

5    funds?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And do you understand that you're

8    consenting to a monetary judgment for that amount, I guess, in

9    favor of the Government and against you?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And do you understand that this

12    forfeiture is separate and apart from any sentence that I may

13    impose?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.  So, the Court has reviewed

16    the document.  The Court determines that the Defendant has

17    knowingly and intentionally and voluntarily signed the

18    document.  The Court will so order the document.

19          The record should also reflect that the document —

20    the last page of the document is signed by the Government

21    attorney and is also signed by defense counsel.

22          All right.  We're going to proceed to sentencing.

23          Does the Government have any comments or motions

24    for the Court's consideration before the Court imposes a

25    sentence upon the Defendant?

Sue Ghorayeb,  Official Court Reporter

1      MR. WIKSTROM:  Yes, Your Honor, and I'll be very

2   brief, and I'll mostly rest on my submission.  But as I argued

3   in the submission, this is a really serious crime.  And I know

4   the Court hasn't resolved the career offender issue yet in

5   this case, but whatever the term means, for Guidelines

6   purposes, from an ordinary meaning perspective, Mr. Fryar

7   certainly is a career offender.  He has been doing this since

8   he was 18.  He is now in his fifties.  He is a career criminal

9   by any ordinary definition of those words.

10      On the other hand, his crimes have been drug

11   crimes, as Mr. O'Reilly knows.  They've been the crimes

12   committed by an addict, and that doesn't excuse them, but it

13   certainly means he's differently situated than somebody who

14   was out there engaged in robberies or assaults.  But this was

15   a serious crime, and Mr. Fryar has a serious history, and the

16   Court should account for that in imposing sentence.

17      Now, Mr. O'Reilly says that Mr. Fryar is too old to

18   continue with this lifestyle, that he wants to get sober and

19   move on with his life, and all I can say is, I hope that he

20   does.  He really ought to.  I hope this is the last time he's

21   in this position in a court.

22      Having said all that, for the reasons set forth in

23   my letter, including my agreement with Mr. O'Reilly and —

24   the Government's agreement, I should say, with Mr. O'Reilly

25   about the disparity between the sentences for crack cocaine

1    and for powder cocaine, and the other factors discussed in

2    our respective submissions, the Government agrees that a

3    below guideline sentence would be appropriate here.  Thank

4    you, Your Honor.

5         THE COURT:  All right.  Thank you.  Thank you,

6    Counselor.

7         Mr. O'Reilly, do you have any additional comments

8    you'd like to make on your client's behalf, because I believe

9    you addressed most of the issues during your prior remarks.

10        MR. O'REILLY:  I would, Your Honor.  I would just —

11   if Your Honor would indulge me briefly on the Government's

12   argument on the realistic probability test.  I would just

13   point out that — and I'm reading from a case here.  It's

14   United States v. Juan Fernandez-Taveras, Your Honor.  It's a

15   Judge Garaufis from the Eastern District, and it's 2021

16   Westlaw 66485, and it says, "The Second Circuit has recently

17   reiterated the holding of Hylton, that the realistic

18   probability test has no place where the plain text of the

19   statutes at issue does not match," and I think it's clear that

20   the plain — the text of the statutes — the plain language of

21   the statutes, they do not match in this case.  And, so,

22   therefore, I think the categorical approach does apply.  And

23   that comment was citing Williams v. Barr, 960 F.3d 68 (Second

24   Circuit 2020).  And other than that, I have no other comments,

25   Your Honor.  I know Mr. Fryar wants to address you himself

1    briefly.

2            THE COURT:  All right.  Thank you, Mr. O'Reilly.

3            Mr. Fryar, is there anything you'd like to say on

4    your own behalf before the Court imposes a sentence upon you?

5            THE DEFENDANT:  Yes, Your Honor, just very briefly.

6    That I'd just like to apologize to society, my community, my

7    peers, and you, Your Honor, for not being — for being a

8    problem and not part of the solution that God put me here on

9    this planet to be.  And with that, I just want to thank you

10   for the opportunity.

11           THE COURT:  All right.  Thank you, Mr. Fryar.

12           In accordance with the decision by the Supreme

13   Court in United States v. Booker, while the United States

14   Sentencing Guidelines are not mandatory, this Court

15   nonetheless must consult those Guidelines and take them into

16   account when sentencing.  Therefore, this Court has

17   considered the findings of fact stated in the Presentence

18   Report, as well as the Guidelines analysis and the

19   recommendations contained therein.  The Court has weighed

20   this information along with the factors listed in 18 U.S.C.

21   Section 3553(a) in coming to its final sentencing decision.

22           The Court adopts the factual recitation in the

23   Presentence Investigation Report.  The Presentence

24   Investigation Report includes a computation that Mr. Fryar's

25   offense level amounts to 31 and his criminal history falls

                Sue Ghorayeb,  Official Court Reporter

1    into Category VI.  The guideline sentence for that offense

2    level and criminal history category listed in the Presentence

3    Report is 188 to 235 months' imprisonment, with a mandatory

4    minimum of 60 months' imprisonment, followed by four to five

5    years of supervised release.

6           Mr. Fryar, you have been found guilty of conspiracy

7    to distribute and possess with intent to distribute 28 grams

8    and more of crack cocaine.

9           The Probation Office has recommended that the Court

10   impose a sentence of 188 months' imprisonment and four years

11   of supervised release.  The Probation Office recommends that

12   a forfeiture in the amount of $5,833.  The Probation Office

13   noted that for this offense you must pay a special assessment

14   of $100, in accordance with 18 U.S.C. Section 3013.

15          Subsection (a)(1) of 18 U.S.C. Section 3553

16   requires that courts take into consideration the nature and

17   the circumstances of the offense and the history and the

18   characteristics of the Defendant.  Subsection (a)(2) of 18

19   U.S.C. Section 3553 requires that the Court consider the need

20   for the sentence to promote certain objectives of the

21   criminal justice system, namely, punishment, specific and

22   general deterrence, and rehabilitation.  The Court must also

23   consider the kinds of sentences available, the Sentencing

24   Guidelines, pertinent policy statements, the need to avoid

25   unwarranted sentencing disparities, and the need to provide

Sue Ghorayeb,  Official Court Reporter

1    restitution to victims.

2         The Court has considered the arguments made by both

3    sides and the information provided by the parties, including

4    Mr. Fryar's acceptance of responsibility for his actions, the

5    nature and circumstances of the crime, his prior criminal

6    history, his history and characteristics, and the seriousness

7    of his crime.

8         Taking into account the nature and circumstances of

9    the offense and the history and characteristics of the

10    Defendant, and considering all of the factors listed in 18

11    U.S.C. Section 3553(a), this Court finds that a sentence of

12    69 months' imprisonment, to be followed by four years of

13    supervised release, is reasonable and appropriate, in that

14    such terms are sufficient, but not greater than necessary, to

15    promote the proper objectives of sentencing.

16         Specifically, the Court concludes that under United

17    States v. Townsend, 897 F.3d 66 (Second Circuit 2018),

18    Defendant's prior state conviction for criminal sale of a

19    controlled substance in the third degree, in violation of

20    New York Penal Law Section 220.39(1), should not be

21    considered as a predicate for the federal career offender

22    Guideline. As Defendant noted in his submission, several

23    courts within this Circuit agree on such conclusion,

24    including, most notably, the court in United States v.

25    Swinton, 495 F.Supp.3d 197, the Western District of New York

1    2020.

2              The Court also agrees with the parties that the

3    EQUAL Act adjustments are appropriate in this case.

4              Accordingly, the Court concludes that a sentencing

5    range of 110 to 137 months is appropriate after the EQUAL Act

6    adjustments.

7              That being said, the Court determines that a

8    sentence of 69 months of incarceration, to be followed by

9    four years of supervised release, is appropriate under these

10   circumstances.

11             While you are on supervised release, Mr. Fryar, you

12   must abide by the mandatory conditions on page 33 of the

13   Presentence Investigation Report; the standard conditions on

14   pages 33 to 35 of the Presentence Investigation Report, and

15   the special conditions on page 35 of the Presentence

16   Investigation Report.

17             In addition, Defendant is ordered to pay to the

18   United States a mandatory special assessment of $100, which

19   shall be due immediately.

20             In addition, the Defendant is ordered to pay

21   forfeiture in the amount of $5,833.

22             The sentence as stated is imposed.

23             Mr. Fryar, you have the right to appeal your

24   sentence.  Any Notice of Appeal must be filed within 14 days

25   after the entry of judgment.  So, if you wish to appeal, you

Sue Ghorayeb,  Official Court Reporter

1    must advise your attorney to prepare and file a Notice of

2    Appeal immediately.  If you are unable to pay the cost of an

3    appeal, you have the right to apply for leave to appeal in

4    forma pauperis, meaning as a poor person.  If you make such a

5    request, the Clerk of the Court must immediately prepare and

6    file a Notice of Appeal on your behalf.

7            Mr. Fryar, do you understand your right to appeal

8    to the extent it may exist?

9            THE DEFENDANT:  Yes, sir, Your Honor.

10           THE COURT:  All right.  Are there any remaining

11   counts or underlying information or indictment that need to be

12   addressed at this time?

13           MR. WIKSTROM:  There are not, Your Honor.

14           THE COURT:  All right.  Is there anything else from

15   the parties?

16           Any recommendations, Mr. O'Reilly, that you'd like

17   the Court to make?

18           MR. O'REILLY:  Yes, Your Honor, there are two.  One

19   is, Mr. Fryar would ask the Court if you could recommend

20   designation to the BOP facility in Danbury, Connecticut.  That

21   way, he can remain as close to New York as possible to

22   maintain his family relationships.  And he'd also like the

23   opportunity to take the RDAP program, the 500-hour drug

24   treatment program.  If Your Honor would recommend that as

25   well, that would be greatly appreciated.  Thank you.

Sue Ghorayeb,  Official Court Reporter

A-95

25

```
 1              THE COURT:  The Court will recommend both.

 2              Anything else from the parties?

 3              MR. WIKSTROM:  No, Your Honor.  Thank you.

 4              MR. O'REILLY:  No.  I'm sorry.  No, Your Honor.

 5              THE COURT:  Everyone stay safe and healthy.

 6              Good luck, Mr. Fryar.

 7              THE DEFENDANT:  Thank you, Your Honor.

 8              THE CLERK:  Your Honor, I have one question.  Are

 9     there any changes to the PSR given your ruling?

10              THE COURT:  No, no changes need to be made.

11              THE CLERK:  Okay.  Thank you.

12              In that case, court is in recess.

13              THE COURT:  Everyone stay safe and healthy.

14              MR. WIKSTROM:  Thank you, Your Honor.  Feel better.

15              MR. O'REILLY:  Thank you, Your Honor.

16              THE COURT:  All right.

17              (Case concluded)

18

19

20

21

22

23

24

25
```

Sue Ghorayeb,  Official Court Reporter

A-96

AO 245B (Rev. 09/19)    Judgment in a Criminal Case    (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| | ) | |
| OCTAVIUS FRYAR | ) | Case Number:  7:21Cr.00703-01 (NSR) |
| | ) | USM Number:  85119-054 |
| | ) | |
| | ) | Francis L. O'Reilly, Esq. |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    One

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to Distribute and Possess with Intent to Distribute 28 grams and more of Crack - Class B Felony | 11/16/2020 | 1 |

The defendant is sentenced as provided in pages 2 through ___8___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)                           ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

7/20/2022
Date of Imposition of Judgment

Signature of Judge

Nelson S. Román, U.S.D.J.
Name and Title of Judge

7/22/2022
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  7/22/2022

AO 245B (Rev. 09/19) Judgment in Criminal Case
        Sheet 2 — Imprisonment

|  | Judgment — Page | 2 | of | 8 |

DEFENDANT:   OCTAVIUS FRYAR
CASE NUMBER:   7:21Cr.00703-01 (NSR)

## IMPRISONMENT

        The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a
total term of:
Sixty-Nine (69) Months. The Court agrees with the parties that the Equal Act adjustments are appropriate in this case and that
the custody Guidelines should be 110-137 months.  Although Defendant waived his right to appeal under the plea agreement,
the Court directed Defendant's attorney to thoroughly discuss the ramifications of the waiver with Defendant.

☑  The court makes the following recommendations to the Bureau of Prisons:
     The Court recommends incarceration at FCI Danbury to facilitate family visitation.  The Court also recommends
    defendant participate in the RDAP program.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at     _____ ☐ a.m.  ☐ p.m.  on  _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on  _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

at  _____ , with a certified copy of this judgment.

                         _____
                               UNITED STATES MARSHAL

          By  _____
                            DEPUTY UNITED STATES MARSHAL

A-98

Case 7:21-cr-00703-NSR   Document 57   Filed 07/22/22   Page 3 of 8

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
            Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___8___

DEFENDANT:   OCTAVIUS FRYAR
CASE NUMBER:   7:21Cr.00703-01 (NSR)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Four (4) Years, subject to the standard conditions 1-12 as well as mandatory and special conditions.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Case 7:21-cr-00703-NSR   Document 57   Filed 07/22/22   Page 4 of 8

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

|  |  |  |  |  |
|---|---|---|---|---|
| | Judgment—Page | 4 | of | 8 |

DEFENDANT:  OCTAVIUS FRYAR
CASE NUMBER:  7:21Cr.00703-01 (NSR)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page    5    of    8

DEFENDANT:  OCTAVIUS FRYAR
CASE NUMBER:  7:21Cr.00703-01 (NSR)

## SPECIAL CONDITIONS OF SUPERVISION

1. You must participate in an outpatient treatment program approved by the United States Probation Office, which programs may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

2. You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

3. You must submit your person, and any property, residence, place of business, vehicle, papers, computer, other electronic communications, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

4. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

5. The Court recommends you be supervised by the district of residence.

A-101

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 5 — Criminal Monetary Penalties

|  | Judgment — Page | 6 | of | 8 |

DEFENDANT: OCTAVIUS FRYAR
CASE NUMBER: 7:21Cr.00703-01 (NSR)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A-102

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___8___

DEFENDANT: OCTAVIUS FRYAR
CASE NUMBER: 7:21Cr.00703-01 (NSR)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __100.00__ due immediately, balance due

☐ not later than _____ , or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Case Number
Defendant and Co-Defendant Names                                    Joint and Several              Corresponding Payee,
*(including defendant number)*          Total Amount              Amount                        if appropriate

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
$5,833.00 in United States currency.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6B — Schedule of Payments

Judgment—Page    8    of    8

DEFENDANT: OCTAVIUS FRYAR
CASE NUMBER: 7:21Cr.00703-01 (NSR)

## ADDITIONAL FORFEITED PROPERTY

Specific properties identified in Consent Preliminary Order of Forfeiture, United States v. Fryar, 21 CR 703 (NSR), dated July 20, 2022 (ECF No. 56).

A-104

Case 7:21-cr-00703-NSR   Document 58   Filed 07/30/22   Page 1 of 1

Criminal Notice of Appeal - Form A

**NOTICE OF APPEAL**

United States District Court

Southern _____ District of New York _____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/2022 _____

Caption:

United States _____ v.

Octavius Fryar _____

Docket No.: 7:21CR703 _____

Roman, J. _____
(District Court Judge)

Notice is hereby given that Octavius Fryar _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment |✔|, other | _____

entered in this action on July 22, 2022 _____ .               (specify)
(date)

This appeal concerns: Conviction only |___ Sentence only |✔| Conviction & Sentence |___ Other |___

Defendant found guilty by plea |✔| trial | | N/A [ .

Offense occurred after November 1, 1987? Yes |✔| No [       N/A [

Date of sentence: July 20, 2022 _____ N/A |___|

Bail/Jail Disposition: Committed |✔| Not committed | | N/A |

Appellant is represented by counsel? Yes ✔ | No |   | If yes, provide the following information:

Defendant's Counsel:    Francis L. O'Reilly

Counsel's Address:      1735 Post Road, Suite 2C

                        Fairfield, CT 06824

Counsel's Phone:        2039134608

Assistant U.S. Attorney: Derek Wickstrom

AUSA's Address:         300 Quarropas Street

                        White Plains, NY 10601

AUSA's Phone:           914, 993-1900

_____
Signature