## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 22-1670 _____    _____ Caption [use short title] _____

**Motion for:** Dismissal

_____

_____

Set forth below precise, complete statement of relief sought:

The United States seeks to dismiss the appeal based on    United States v. Fryar

the appellate waiver in the defendant's plea agreement.

_____

_____

_____

_____

**MOVING PARTY:** United States of America    **OPPOSING PARTY:** Octavius Fryar

☐ Plaintiff        ☐ Defendant

☐ Appellant/Petitioner    ☑ Appellee/Respondent

**MOVING ATTORNEY:** Damian Williams, U.S. Attorney, Southern District of New York    **OPPOSING ATTORNEY:** Timothy P. Murphy, Esq.

[name of attorney, with firm, address, phone number and e-mail]

By: Derek Wikstrom, Assistant U.S. Attorney    Federal Public Defender's Office, Western District of New York

1 Saint Andrew's Plaza, New York, NY 10007    300 Pearl Street, Ste 200, Buffalo, NY 14202

(212) 637-1085; Email: derek.wikstrom@usdoj.gov    (716) 551-3341; Email: timothy_murphy@fd.org

Court- Judge/ Agency appealed from: The Honorable Nelson Román, United States District Judge, Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____

_____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

_____

_____

_____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**

Derek Wikstrom_____ **Date:** 07/18/2023_____ Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA, :
:
*Appellee*, : **AFFIRMATION IN**
: **SUPPORT OF MOTION**
- v. - : **TO DISMISS APPEAL**
:
OCTAVIUS FRYAR, also known as : No. 22-1670
Tate, :
:
*Defendant-Appellant*. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK )
COUNTY OF NEW YORK : ss.:
SOUTHERN DISTRICT OF NEW YORK )

DEREK WIKSTROM, pursuant to Title 28, United States Code, Section

1746, hereby affirms under penalty of perjury:

1. I am an Assistant United States Attorney in the Office of Damian

Williams, United States Attorney for the Southern District of New York, and I

represent the Government in this appeal. I submit this affirmation in support of the

Government's motion to dismiss the appeal brought by defendant-appellant

Octavius Fryar based on Fryar's knowing and voluntary waiver of his appellate

rights.

## PRELIMINARY STATEMENT

2.      Fryar appeals from a judgment of conviction entered on July 22, 2022, in the United States District Court for the Southern District of New York, by the Honorable Nelson S. Román, United States District Judge, following Fryar's guilty plea.

3.      On November 16, 2021, Fryar waived indictment and consented to the filing of Information 21 Cr. 703 (NSR) (the "Information"). Count One, the sole count of the Information, charged Fryar with conspiracy to distribute at least 28 grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

4.      On March 4, 2022, Fryar pled guilty to Count One of the Information before United States Magistrate Judge Paul E. Davison, pursuant to a plea agreement with the Government (the "Plea Agreement"). In the Plea Agreement, Fryar waived his right to appeal a sentence not exceeding 235 months' imprisonment, a term of supervised release less than or equal to the statutory maximum of life, a fine less than or equal to $5,000,000, a forfeiture amount less than or equal to $5,833, or a special assessment less than or equal to $100. On April 21, 2022, the District Court accepted Fryar's guilty plea.

5.      On July 20, 2022, Judge Román sentenced Fryar to 69 months' imprisonment, to be followed by a four-year term of supervised release, and ordered Fryar to pay a $100 mandatory special assessment. Judge Román also

2

entered an order, on consent, requiring Fryar to forfeit $5,833. Judgment was entered on July 22, 2022.

6.      On July 30, 2022, Fryar filed a timely notice of appeal. On April 19, 2023, Fryar filed a brief claiming that the appellate waiver in the Plea Agreement is unenforceable, and that his sentence was procedurally and substantively unreasonable. Because Fryar (a) validly waived his right to appeal any sentence less than or equal to 235 months' imprisonment; (b) in fact received a sentence less than 235 months' imprisonment; and (c) has not identified a valid basis for finding that his waiver is invalid, the appeal should be dismissed.

7.      Fryar is serving his sentence.

## STATEMENT OF FACTS

### A.    The Offense Conduct

8.      In July 2020, Fryar was arrested in possession of 42 grams of crack cocaine and a smaller quantity of heroin, after law enforcement officers saw him conduct a series of hand-to-hand drug transactions in Newburgh, New York. Fryar immediately waived his *Miranda* rights and confessed to his involvement in a drug distribution conspiracy. (PSR ¶¶ 10-11).[1]

---

[1] "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Fryar's sentencing; "Dkt." refers to an entry on the District Court's docket in this case; "Br." refers to Fryar's brief on appeal; "A." refers to the appendix filed with that brief; and "SD" refers to the sealed documents filed

3

9. In November 2020, the Federal Bureau of Investigation ("FBI") learned that Fryar had resumed dealing crack, that he had been the victim of a drug robbery, and that he had responded to that robbery by acquiring a shotgun. (PSR ¶¶ 11-12). On November 16, 2020, the FBI re-arrested Fryar, who again waived his *Miranda* rights and confessed to having recently purchased a shotgun. Fryar agreed that law enforcement could retrieve the shotgun from his apartment; law enforcement officers subsequently seized a Mossberg model 500 pump-action shotgun from Fryar's apartment. (PSR ¶¶ 14-15). Fryar was charged by criminal complaint with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). (Dkt. 1).

**B. The Plea Agreement and Guilty Plea**

10. The Information was filed, with Fryar's consent (*see* Dkt. 28), on November 16, 2021. (A. 4). On January 31, 2022, the Government issued the Plea Agreement, and on March 4, 2022, Fryar's counsel executed the Plea Agreement on behalf of Fryar and on his own behalf. (A. 16-24). Fryar agreed to plead guilty to Count One of the Information, which charged him with conspiring to distribute at least 28 grams of cocaine base. In consideration of the plea, the Government

---

with that brief. Unless otherwise noted, case text quotations omit internal citations, footnotes, quotation marks, and previous alterations.

agreed not to further prosecute Fryar for that conspiracy, and to dismiss any open counts at sentencing. (A. 16).

11.    The Plea Agreement delineated the parties' positions on the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to Fryar's offense. The Plea Agreement noted that the parties did not stipulate regarding the application of the career offender Guidelines, but stipulated to the offense level that would apply if Fryar was not a career offender. That stipulated offense level was 25: (1) a base offense level of 26 pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(7); (2) a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) because Fryar possessed a firearm; and (3) a three-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1. The parties also agreed that Fryar had 13 criminal history points and was therefore in Criminal History Category VI, with a resulting Guidelines range of 110 to 137 months' imprisonment (the "Stipulated Guidelines Range"). (A. 17-20).

12.    The Plea Agreement noted the Government's position that Fryar was a career offender, resulting in an offense level of 31 and, in Criminal History Category VI, a Guidelines range of 188 to 235 months' imprisonment (the "Career Offender Guidelines Range"). (A. 17-18, 20).

13.    The parties also agreed that no departure from the Stipulated Guidelines Range—or, if applicable, the Career Offender Guidelines Range—was

warranted, and that neither party would seek a departure. (A. 20). The parties agreed, however, that either party could seek a sentence outside the Stipulated Guidelines Range or, if applicable, the Career Offender Guidelines Range, and that Fryar's ultimate sentence would be determined solely by the District Court, which could impose any sentence, up to the statutory maximum. (A. 21).

14.    Fryar agreed that he would "not file a direct appeal; nor bring a collateral challenge … of any sentence within or below the range running from the low end of the Stipulated Guidelines Range to the high end of the Career Offender Guidelines Range, *i.e.* of any sentence within or below the range of 110 to 235 months' imprisonment." (A. 21-22). Fryar likewise agreed not to appeal or collaterally challenge "any term of supervised release that is less than or equal to the statutory maximum," any fine less than or equal to $5,000,000, any forfeiture amount less than or equal to $5,833, and any special assessment less than or equal to $100. (A. 22). The Government agreed not to appeal, *inter alia*, any sentence "within or above the range of 110 to 235 months' imprisonment." (A. 22).

15.    On March 2, 2022, Fryar filed a motion seeking permission to enter a guilty plea via videoconference pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. (Dkt. 39). Judge Román granted Fryar's motion the next day. (Dkt. 40).

16.     On March 4, 2022, Fryar appeared via videoconference before Judge
Davison to plead guilty to Count One pursuant to the Plea Agreement's terms.
Judge Davison conducted a careful plea colloquy that complied in all respects with
Federal Rule of Criminal Procedure 11. (A. 25-56).

17.     Judge Davison began the proceeding by confirming that Fryar wished
to proceed remotely pursuant to the CARES Act. (A. 27-28). Judge Davison then
placed Fryar under oath and questioned him about his background and mental state
to confirm that Fryar was fully competent to enter an informed guilty plea. (A. 30-
31). Judge Davison advised Fryar of his right to have his plea allocution conducted
before a District Judge, and confirmed that Fryar consented to proceed before a
Magistrate Judge. (A. 32-34).

18.     Judge Davison then confirmed that Fryar had discussed the case and
Plea Agreement with counsel, that Fryar had authorized counsel to sign the Plea
Agreement of Fryar's behalf, that Fryar fully understood the charges and Plea
Agreement, and that Fryar was satisfied with counsel's representation. (A. 34-37).
Fryar was advised of the elements of the crime to which he would be pleading
guilty and the maximum penalties he would face because of his plea. (A. 37-44,
50-51). Judge Davison also confirmed that Fryar understood the rights he was
giving up by pleading guilty, including the privilege against self-incrimination and
the rights to (1) plead not guilty; (2) a speedy, public jury trial, at which he would

7

be presumed innocent unless the Government proved every element of the charged crime beyond a reasonable doubt; (3) the assistance of counsel, including appointed counsel if necessary, at every stage of the proceeding; (4) confront and cross-examine witnesses at trial; and (5) testify, present evidence, and compel the attendance at trial of witnesses. (A. 48-49).

19.     Judge Davison confirmed that Fryar was not pleading guilty as the result of any promises beyond those set forth in the Plea Agreement, or as the result of any threats, coercion, or improper pressure. (A. 51-52).

20.     Judge Davison also confirmed that Fryar understood the Plea Agreement's appeal-waiver provisions, and Fryar stated that he understood that he was giving up the right to appeal or collaterally challenge any sentence that did not exceed 235 months' imprisonment, any term of supervised release, any fine not exceeding $5,000,000, and any forfeiture not exceeding $5,833. (A. 46-47).

21.     Finally, Judge Davison established that there was an adequate factual basis for the plea. Fryar confirmed, in relevant part, that he conspired with another person to distribute at least 28 grams of crack cocaine in and around Newburgh, New York, between July 2020 and November 2020. (A. 52-53).

22.     Judge Davison recommended that Judge Román accept the plea. (A. 53-54). On April 21, 2022, Judge Román independently determined that Fryar's

plea was knowing, voluntary, and supported by a sufficient factual basis, and accordingly accepted the plea. (Dkt. 47).

23.     Other than claiming that his appellate waiver was not knowing and voluntary, Fryar does not challenge any aspect of his guilty plea on appeal.

**C.     The Sentencing**

24.     Before sentencing, the Probation Office issued the Presentence Report. The Probation Office agreed with the Government that Fryar was a career offender, calculated the same Career Offender Guidelines Range as the Plea Agreement, and recommended a sentence of 188 months' imprisonment. (PSR at 31-32; *see also* PSR ¶¶ 20-53, 116). The Government recommended a below-Guidelines sentence. (SD-47).

25.     On July 20, 2022, the parties appeared before Judge Román for sentencing.[2] The sentencing proceeding complied in all respects with Federal Rule of Criminal Procedure 32. (A. 71-95).

26.     Judge Román indicated that he had reviewed the Presentence Report and the parties' respective sentencing submissions. (A. 77). Judge Román confirmed that Fryar and his counsel had each reviewed the Presentence Report

---

[2] The parties appeared for sentencing in person. However, Judge Román participated in the sentencing via videoconference because he had recently tested positive for COVID-19 and was in quarantine. Fryar specifically requested that the parties proceed despite the circumstances. (A. 72-77). Fryar does not challenge this aspect of his sentencing proceeding on appeal.

and had discussed it. (A. 77-78, 85). Judge Román heard argument from defense counsel regarding Fryar's sole objection to the report, namely, to its designation of Fryar as a career offender, and regarding what the appropriate sentence would be based on the factors in 18 U.S.C. § 3553(a). The defense requested a sentence of 60 months' imprisonment, which it argued would have been the applicable Guidelines sentence if the powder cocaine Guidelines applied instead of the crack cocaine Guidelines. (A. 78-83, 89-90). Judge Román also heard from the Government (A. 83-85, 88-89) and from Fryar himself (A. 90).

27.     After hearing from the parties and the defendant, Judge Román adopted the factual recitation in the Presentence Report. (A. 90). Judge Román resolved Fryar's objection to the Presentence Report's Guidelines calculation in Fryar's favor, holding that he was not a career offender. (A. 92-93). As a result, Judge Román calculated a sentencing range of 110 to 137 months' imprisonment, *i.e.* the Stipulated Guidelines Range from the Plea Agreement. (A. 93).

28.     Judge Román described accurately the factors he was required to consider under Section 3553(a), noted that he had "considered the arguments made by both sides and the information provided by the parties," noted his agreement with the parties that "EQUAL Act adjustments are appropriate in this case,"[3] and

---

[3] The EQUAL Act was proposed legislation that would eliminate the disparity in the treatment of crack and powder cocaine under 21 U.S.C. §§ 841 and 960. The Department of Justice provided public testimony in support of the EQUAL Act,

explained that "[t]aking into account the nature and circumstances of the offense and the history and characteristics of the Defendant, and considering all of the factors listed in 18 U.S.C. Section 3553(a), this Court finds that a sentence of 69 months' imprisonment, to be followed by four years of supervised release, is reasonable and appropriate, in that such terms are sufficient, but not greater than necessary, to promote the proper objectives of sentencing." (A. 91-93).

29.     Judgment was entered on July 22, 2022. (A. 96). On July 30, 2022, Fryar filed a timely notice of appeal. (A. 104).

## ARGUMENT

### Fryar's Appeal Should Be Dismissed Based on the Appellate Waiver Fryar Knowingly and Voluntarily Executed

30.     In this appeal, Fryar argues that his appeal waiver is unenforceable and that his sentence was procedurally and substantively unreasonable. Because he is wrong on the first point, the Court need not reach the second. Fryar's appeal waiver is valid on its face. Fryar entered into it knowingly and voluntarily, and Judge Román's sentence was not so lacking in a rationale as to invalidate the waiver. Fryar's appeal should be dismissed pursuant to the waiver.

---

and, as a matter of policy, advised district courts in cases involving crack about the effect the Act would have on the Guidelines. The Government recommended a below-Guidelines sentence for Fryar in part on this basis. (SD-54; A. 88-89).

11

**A. Applicable Law**

31.     Knowing and voluntary waivers of the right to appeal a sentence are presumptively valid and enforceable. *See, e.g.*, *United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021); *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011); *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). "Ordinarily, when a defendant's plea agreement forecloses appeal of a sentence within a stipulated range, the government's remedy is dismissal of any appeal." *United States v. Ojeda*, 946 F.3d 622, 629 (2d Cir. 2020); *see also, e.g.*, *United States v. Yemitan*, 70 F.3d 746, 747-48 (2d Cir. 1995) ("Only the dismissal of this appeal will afford the prosecution the benefit of its bargain.").

32.     This Court will decline to enforce appeal waivers only in "certain exceptional circumstances." *Ojeda*, 946 F.3d at 629. The exceptional circumstances include situations where (1) the waiver was not knowing, voluntary, and competent, (2) "the sentence was imposed based on constitutionally impermissible factors," (3) the Government breached the plea agreement, or (4) the district court did not describe any rationale for the sentence. *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000); *see also, e.g.*, *United States v. Buissereth*, 638 F.3d 114, 117-18 (2d Cir. 2011).

33.     These exceptions, however, are "circumscribed," and the Court has continually "upheld waiver provisions even in circumstances where the sentence

12

was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement." *Gomez-Perez*, 215 F.3d at 319; *see also, e.g.*, *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997) ("This rule has been held to bar even those appeals which claim that the sentencing court illegally sentenced the defendant under the Guidelines and relevant statutes, so long as the court nevertheless imposed a sentence within the range outlined in the agreement."); *Yemitan*, 70 F.3d at 747-48 (rejecting claim that waiver was "unenforceable because the district court's sentence was illegal" in light of court's failure to explain sentence as required by 18 U.S.C. § 3553(c)(1)).

For example, the Court has repeatedly enforced appellate waivers in circumstances involving alleged procedural error, including where the defendant claimed that the district court: "failed to give adequate reasons and discussed sentencing-related matters off the record in the court's chambers," *United States v. Coston*, 737 F.3d 235, 236-38 (2d Cir. 2013); failed to comply with Rule 32, *see Arevalo*, 628 F.3d at 97; imposed an illegal sentence in violation of the parsimony clause of 18 U.S.C. § 3553(a), *see United States v. Ruiz*, 272 F. App'x 19, 20-21 (2d Cir. 2008); failed to give the defendant an opportunity to seek safety-valve relief under 18 U.S.C. § 3553(f), *see United States v. DeJesus*, 219 F.3d 117, 120-21 (2d Cir. 2000); erred in calculating the Guidelines, *see Rosa*, 123 F.3d at 101-02; and "failed in its duty

13

under 18 U.S.C. § 3553(c)(1) to adduce reasons for imposing th[e] specific sentence, thereby rendering the sentence illegal," *Yemitan*, 70 F.3d at 746, 748.

34.     That an appellate waiver was knowing and voluntary can be established by demonstrating that during the plea hearing, the defendant's attention was drawn to the waiver provision in the plea agreement. *See DeJesus*, 219 F.3d at 121 (rejecting defendant's contention that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy).

35.     "[A]n unpreserved challenge to an appeal waiver" is subject to plain-error review. *United States v. Cook*, 722 F.3d 477, 479 (2d Cir. 2013). To establish such error, a "defendant must demonstrate that there is a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 481.

## B.  Discussion

36.     Fryar offers three bases on which he asserts the appellate waiver he agreed to is invalid. But none of the three falls within the circumscribed "exceptional circumstances" that may warrant disregarding a waiver. As a result, Fryar's appellate waiver should be enforced, and his appeal should be dismissed.

37.     *First*, Fryar asserts that the District Court imposed "an intrinsically wrong sentence contravening its own premise." (Br. 12). He bases that argument on Judge Román's remark that "the Court concludes that a sentencing range of 110

14

to 137 months is appropriate *after* the EQUAL Act adjustments." (A. 93 (emphasis added)). In point of fact, the range of 110 to 137 months was the range applicable based on the crack cocaine Guidelines, *i.e.* the range *before* taking account of the disparity in the Guidelines' treatment of crack versus powder cocaine. But the range the District Court calculated was correct based on the Guidelines manual in effect at the time of Fryar's sentencing. And having correctly calculated the Guidelines, the District Court in fact *did* adjust the sentence downward from that range—by 41 months below the bottom of the Stipulated Guidelines Range—to account for the crack/powder disparity. (A. 93).

38.    Fryar's argument boils down to an allegation that the appellate waiver cannot be enforced because the District Court misspoke.[4] But that was not a procedural error, let alone one sufficient to vitiate the appellate waiver. *See, e.g.*, *United States v. Valente*, 844 F. App'x 430, 432 (2d Cir. 2021) ("Errors alone do not render a sentence procedurally unreasonable absent a showing that, for example, the court selected a sentence based on such errors or that the errors caused the court to improperly calculate the Guidelines range."); *United States v.*

---

[4] Fryar describes the procedural error as "a failure of execution, not 'analysis.'" (Br. 12). But that does not affect the enforceability of the waiver. *See Arevalo*, 628 F.3d at 97 (waiver of defendant's "right to challenge his sentence plainly includes a waiver of his right to claim errors arising out of the District Court's crafting of [his] sentence"); *Gomez-Perez*, 215 F.3d at 319 (appellate waivers apply even to sentences "conceivably imposed in an illegal fashion").

*Morgan*, 451 F. App'x 42, 45 (2d Cir. 2011) (district court's mistaken reference to a safety-valve adjustment was not procedural error, as there was "no evidence that the district court's momentary error influenced its decision"); *United States v. Bacon*, 617 F.3d 452, 457 (6th Cir. 2010) ("The fact that the court misspoke … when discussing the high end of a hypothetical Guidelines range does not make Bacon's sentence procedurally unreasonable.").

39.     To be sure, this Court has said that it is possible for a sentence to be so procedurally unreasonable as to invalidate an appellate waiver. *See Yemitan*, 70 F.3d at 748 ("At some point, one that is not approached here, an arbitrary practice of sentencing without proffered reasons would amount to an abdication of judicial responsibility subject to mandamus."). But Fryar has not come close to clearing that high bar. Even errors far more significant than Fryar alleges do not prevent enforcement of appeal waivers.[5] In *Buissereth*, for instance, this Court enforced an appellate waiver despite finding *multiple* procedural errors at sentencing. There, the sentencing court:

---

[5] This Court has rejected various errors Fryar alleges as bases to invalidate an appellate waiver. For instance, Fryar alleges that the District Court failed to adequately explain the sentence. (Br. 26-27). That does not invalidate an appellate waiver. *See Yemitan*, 70 F.3d at 747-48 & n.1. Neither does Fryar's allegation (Br. 24-25) that the District Court applied the wrong Guidelines calculation. *See United States v. Patt*, 498 F. App'x 73, 74 (2d Cir. 2012) (claim that district court miscalculated the Guidelines range was barred by appeal waiver).

> failed to (1) rule on the numerous filed objections to the PSR; (2) rule on the requests for downward departures and a variance; (3) adopt the findings of the PSR; (4) mention, much less articulate its consideration of, the relevant factors set forth in 18 U.S.C. § 3553(a); or (5) calculate an applicable sentencing range under the Sentencing Guidelines.

*Buissereth*, 638 F.3d at 117. Despite those significant errors, the Court held that the appeal waiver "preclude[d] this Court from correcting the errors alleged to have occurred below." *Id*.

40.    Here, Judge Román did all five of the things the sentencing judge had failed to do in *Buissereth*. Where, as here, the alleged procedural errors fall short of the standard set by *Yemitan* and *Buissereth*, this Court routinely refuses to reach them, and instead enforces appeal waivers. *See, e.g.*, *United States v. Rojas*, 853 F. App'x 733, 737-38 (2d Cir. 2021) (even a "meaningful error" was not "an abdication of judicial responsibility sufficient to render [the defendant's] appeal waiver unenforceable"); *United States v. Stein*, 469 F. App'x 67, 68 (2d Cir. 2012) (enforcing appeal waiver despite sentencing proceeding that "left much to be desired," and in which "the district judge used less-than-ideal language").

41.    *Second*, Fryar's argument that his agreement to the appellate waiver was not knowing and voluntary (Br. 13-14) ignores the record. Under oath at his plea hearing, Fryar confirmed to Judge Davison that Fryar had a copy of the Plea Agreement, had read it in full, had discussed the "entire agreement" with counsel

and had any questions answered,[6] and was "satisfied" that he understood "this entire plea agreement." (A. 35-36). Judge Davison also confirmed that Fryar understood the appellate waiver specifically, first by having the Government recite the terms of the waiver (A. 45-46), and then by describing the waiver himself and confirming that Fryar understood:

> THE COURT: Mr. Fryar, do you understand that one effect of this plea agreement that you've entered into with the Government is that you are giving up the right -- the rights that you might otherwise have had to appeal or otherwise challenge any sentence that does not exceed 235 months' imprisonment?
>
> THE DEFENDANT: Yes, sir, your Honor.

(A. 47).[7]

42.     Fryar argues that he should have been "asked to affirmatively explain his understanding of the rights he was waiving." (Br. 14). But that is not what the law requires. The court need only "inform the defendant of, and determine that the defendant understands," the terms of the appellate waiver. Fed. R. Crim. P.

---

[6] Fryar's counsel likewise confirmed that he had "review[ed] each and every part of the plea agreement" with Fryar. (A. 36).

[7] Fryar ignores this colloquy with Judge Davison, claiming—contrary to the record—that "the court ultimately only had *the prosecutor* recite the appeal waiver excerpt from the agreement," and that "[n]o substantive feedback was secured from Mr. Fryar on his understanding of the waiver." (Br. 14). But the procedure here complied with Rule 11: the Court can have the prosecution summarize information and then "follow up to ask the defendant if he understands the information." *Tellado v. United States*, 745 F.3d 48, 54 (2d Cir. 2014) (quoting *United States v. Rodriguez*, 725 F.3d 271, 277 (2d Cir. 2013)).

11(b)(1)(N); *see also Cook*, 722 F.3d at 481 (on Rule 11(b)(1)(N) challenge, rejecting argument that the record must "clearly demonstrate[] that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary"). That is exactly what happened at Fryar's plea, and nothing more was required to establish a knowing and voluntary waiver. *See United States v. Arvanitakis*, 807 F. App'x 35, 38 (2d Cir. 2020) ("[T]he knowing and voluntary nature of an appellate waiver can be established by demonstrating that, during the plea hearing, the defendant's attention was drawn to the waiver provision in the plea agreement." (citing *DeJesus*, 219 F.3d at 121)).

43.    *Third*, enforcing Fryar's knowing and voluntary appellate waiver would not result in a miscarriage of justice or contravene public policy. On this point, Fryar says that his sentence is a product of "racism," and that the appeal waiver should not "preclude[]" this Court "from addressing the racial disparity in Mr. Fryar's sentencing caused by the crack/powder dynamic." (Br. 17). This argument fails legally and is contradicted by the record. It should be rejected.

44.    There can be no doubt that, if the District Court had actually sentenced Fryar based on his race, no appeal waiver would stand in the way of reversal. *See, e.g.*, *Gomez-Perez*, 215 F.3d at 319. But this Court has rejected efforts to shoehorn challenges based on the crack/powder disparity into this

exception.[8] *See United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) (the allegation that defendant's sentence was "discriminatory" because of the crack/powder disparity's "adverse racial impact" "has no bearing on whether the District Court considered an impermissible factor when imposing sentence," and "does not fall within the waiver exception … for appeals claiming that bias influenced a sentencing court's decision"). Other Circuits agree. *See, e.g.*, *United States v. Langley*, 52 F.4th 564, 575 (3d Cir. 2022) (appellate waiver precluded challenge based on crack/powder disparity); *United States v. Scott*, 627 F.3d 702, 704-05 (8th Cir. 2010) (defendant's claim that sentencing court erred "by failing to consider the crack-powder disparity" was barred by appellate waiver); *United States v. Edelen*, 539 F.3d 83, 86-87 (1st Cir. 2008) (enforcing appellate waiver to bar challenge based on the crack/powder disparity would not "result in a miscarriage of justice").

45.    Indeed, even if Judge Román had *refused* to account for the disparity entirely, rejecting the parties' joint request that he consider it, Fryar's appeal waiver would still be enforceable.[9] *See United States v. Blackmore*, 400 F. App'x

---

[8] This Court rejected this exact argument in an unpublished order two months ago. *See United States v. Grant*, No. 22-646, Dkt. 68 (2d Cir. May 19, 2023) (order dismissing based on appellate waiver); *United States v. Grant*, No. 22-646, Dkt. 25 at 11-14 (appellant's opening brief, containing same public-policy argument against enforcement of appellate waiver now advanced by Fryar).

[9] This hypothetical would not even suffice to support Fryar's challenge to the

583, 584-85 (2d Cir. 2010) (enforcing appellate waiver where the sentencing court "understood its discretion under *Kimbrough*[ *v. United States*, 552 U.S. 85 (2007)] to lower Appellant's sentence in light of the crack/powder disparity," but "explicitly chose not to exercise that discretion").

46.     In any event, the record here shows that Fryar's sentence *was not* "imposed based on constitutionally impermissible factors." *Gomez-Perez*, 215 F.3d at 319. The record contains not a shred of evidence that the District Court's sentence was based on Fryar's race, or on any racism on Judge Román's part, or on any other impermissible factor. To the contrary, Judge Román correctly described the Section 3553(a) factors on which he was relying in imposing sentence, and cited no unlawful factor. (A. 91-93). But more than that, Judge Román specifically agreed with *both* Fryar and the Government that it was appropriate to account for the crack/powder disparity, remarking that he "agreed with the parties that the EQUAL Act adjustments are appropriate in this case." (A. 93). Evidently in light of that agreement, Judge Román varied downward dramatically, imposing a

---

reasonableness of his sentence, let alone invalidate the appellate waiver here. *See United States v. Davis*, 561 F. App'x 50, 54-55 (2d Cir. 2014) ("While we require that 'the record…unambiguously demonstrate that the District Court was aware of its discretion to consider the potentially undue disparity,' we have not insisted that district courts reduce sentences on that basis…." (quoting *United States v. Keller*, 539 F.3d 97, 98, 101 (2d Cir. 2008))); *accord, e.g.*, *United States v. Covington*, 797 F. App'x 626, 630 (2d Cir. 2020); *United States v. Moody*, 381 F. App'x 113, 116 (2d Cir. 2010).

sentence 41 months below the low end of the Stipulated Guidelines Range, and almost a decade below the sentencing recommendation of the Probation Office. On this record, Fryar's claim that his sentence failed to account for the crack/powder disparity fails.

47.     Fryar waived his right to appeal any sentence less than or equal to 235 months, and Judge Román—after accounting for the crack/powder disparity Fryar claims was ignored—sentenced him to just 69 months' imprisonment. The appellate waiver bars this appeal.

## CONCLUSION

48.     Fryar's waiver of his right to appeal should be given effect, and his appeal should be dismissed.[10]

Dated:     New York, New York
           July 18, 2023

                                     _____/s/ Derek Wikstrom_____
                                     Derek Wikstrom
                                     Assistant United States Attorney
                                     (212) 637-1085

---

[10] If the Court denies this motion, the Government respectfully requests 60 days from the date of that denial to file a response to Fryar's appeal.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 5,102 words in this motion.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

_____/s/ Derek Wikstrom_____
By:   Derek Wikstrom
Assistant United States Attorney
(212) 637-1085