UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

━━━━━━━━━━━━━━━━━━━━━━━

UNITED STATES OF AMERICA,

Docket No. 22-1670

*Appellee*,

v.

OCTAVIUS FRYAR,

DECLARATION IN
SUPPORT OF
RESPONSE TO
GOVERNMENT'S
MOTION TO DISMISS
APPEAL

*Defendant-Appellant*.

━━━━━━━━━━━━━━━━━━━━━━━

STATE OF NEW YORK )
COUNTY OF ERIE ) ss:
CITY OF BUFFALO )

Timothy P. Murphy, pursuant to 28 U.S.C. §1746 and subject to
the penalties for perjury, hereby declares the following to be true and
accurate:

1.      I am an attorney duly licensed to practice in this Court. I am
an assistant federal public defender for the Western District of New
York and have been assigned to represent defendant-appellant Octavius
Fryar regarding this appeal.

2.     I make this declaration in support of defendant-appellant's response to the government's motion to dismiss this appeal, filed on July 18, 2023 (hereafter "GM"). *See*, Doc. 59. Therein the government argues the appeal waiver is valid and precludes this Court from considering the substantive issues of Mr. Fryar's appeal.

3.     The facts and procedural history of this case have been addressed in the appellant's principal brief (Doc. 42) and will not be repeated here.

4.     Mr. Fryar did not knowingly and voluntarily waive his right to appeal the sentencing disparity issue regarding crack and powder cocaine. Moreover, enforcing this waiver flies in the face of the essential public policy of prohibiting racially based disparities in drug crime sentencing. Finally, the District Judge's intrinsically erroneous sentence was beyond the scope of the waiver.

5.     Appeal waivers are scrutinized carefully and applied narrowly. *United States v. Ready*, 82 F3d. 551, 556 (2d Cir. 1996). And while waivers of appeal regarding the legality of a sentence are presumed valid, *id*. at 559, "[n]o appeal waiver serves as an absolute bar to all appellate claims." *Garza v. Idaho*, 586 U.S. __ , 139 S.Ct. 738,

744 (2019) (internal citation omitted). As noted previously, an appellate waiver will not be enforced unless the record "clearly demonstrates" it was knowingly and voluntarily entered. *Ready* 82 F.3d at 556-558; *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013); *see also*, *United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013) (cited at GM, par. 42; observing that "*Ready*'s "knowing and voluntary" test is not at all inconsistent with plain error review…").

6.     The government implies that merely drawing a defendant's attention to a waiver provision establishes in *all cases* the knowing and voluntary nature of the waiver. *See*, *United States v. Arvanitakis*, 807 F. Appx. 35, 38 (2d Cir. 2020), citing *United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000) (cited at GM, par. 42). If this were true, however, no other circumstance would need to be considered, thus contradicting the basic guidepost of examining "carefully the facts of a particular case and look[ ] at the manner in which the agreement and sentence were entered into and applied" when assessing the validity of a waiver provision. *United States v. Rosa*, 123 F.3d 94, 101 (2d Cir.

1997);[1] *United States v. Gomez-Perez*, 215 F.3d 315, 320 (2d Cir. 2000) (reflecting that "our… recitation of cases representing prior circumstances in which we have held waivers unenforceable should in no way be considered exhaustive").

7. Moreover, the government mischaracterizes appellant's argument by assuming that the District Judge misspoke (GM, pars. 37-38) when he plainly stated:

> The Court also agrees with the parties that the EQUAL Act adjustments are appropriate in this case. Accordingly, the Court concludes that a sentencing range of 110 to 137 months is appropriate after the EQUAL Act adjustments. That being said, the Court determines that a sentence of 69 months of incarceration, to be followed by four years of supervised release, is appropriate under these circumstances.

A 93 (emphasis added). The court "misspeaking" here would require at least two separate erroneous statements regarding its plainly stated

---

[1] *See also generally*, *United States v. Burden*, 860 F.3d 45, 55 (2d Cir. 2017) (per curium) (observing that appeal waivers must be "sufficiently specific so as to properly safeguard defendants' rights. Demanding such specificity helps to ensure that a defendant understands precisely what it is that he is waiving and the consequences of his waiver.").

intentions relative to the EQUAL Act. While errors that do not cause the court to impose an illegal sentence generally do not render that sentence unreasonable, *see*, GM, par. 44, citing *United States v. Valente*, 844 F. App'x 430, 432 (2d Cir. 2021), our District Judge's error directly caused Mr. Fryar to spend more time in prison than had the "EQUAL Act adjustments" been imposed (as intended).

8.      Furthermore, neither *Buissereth* nor *Yemitan*, with their procedural error issues (both cited by the government), address the primal issue of inexcusable racial disparity at sentencing. *See*, GM, pars. 39-40, citing *United States v. Buissereth*, 638 F.3d 114, 118 (2d Cir. 2011) (also recognizing the public policy and extraordinary circumstance constraints in enforcing appeal waivers); *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995) (same).

9.      At one point the government opines that appellant:

> [i]gnores this colloquy with Judge Davison, claiming – contrary to the record – that "the court ultimately only had the prosecutor recite the appeal waiver excerpt from the agreement," and that ""[n]o substantive feedback was secured from Mr. Fryar on his understanding of the waiver." (Br. 14).

5

GM, p. 18, fn 7. Though the government cites to the District Judge's
paraphrasing of the waiver provision (which compelled a robotic
affirmation in response) (GM, par. 41), nothing the appellant stated
above is "contrary" to the record. Instead of seeking substantive
feedback, meaning some semblance of the uneducated appellant's
affirmative and explained understanding of what he was waiving, the
District Court at bar only had *the prosecutor* (and not Mr. Fryar)
affirmatively explain the waiver provision. *See again*, A 45-47. Whether
or not this fact, in and of itself is violative of Rule 11, GM, par. 42, it is
still a valid circumstance for this Court to consider in evaluating the
validity of the appeal waiver. *See again generally*, *Rosa*, 123 F.3d at
101.[2]

  10. The contradictory nature of appellant's sentencing was
beyond the scope of the waiver provision. Indeed, the waiver being
binding on the appellant "even if the Court employs <u>a Guidelines</u>

---

[2] *See also*, *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013)
(where the district court "comprehensibly probed whether the defendant
fully understood everything he was giving up in waiving his right to
appeal and sentence at or below the statutory maximum…").

<u>analysis different</u> from that stipulated to herein," A 21-22 (emphasis added), is fundamentally distinct from the District Court imposing an intrinsically wrong sentence contravening its own premise: i.e., that "the EQUAL Act adjustments," A 93, were to be applied.

11.     The waiver provision makes no reference, even implicitly, to an inherently erroneous prison term, violative of § 3553(c). Construing the terms against the government, which authored the document, *United States v. Mergen*, 764 F.3d 199, 208 (2d Cir. 2014), the waiver provision should not be applied to Mr. Fryar's procedural unreasonableness argument.

12.     The government points out (at GM, par. 33) that this Court has upheld appeal waivers even where an illegal sentence is alleged. But the appellant's substantive arguments on appeal are not confined to mere allegations of illegality. As is acknowledged in its motion (at GM, pg. 10, fn 3), the Department of Justice has testified before Congress overwhelmingly in support of the EQUAL[3] Act. This testimony included, among other statements, this solemn declaration:

---

[3] Again, this acronym stands for "Eliminating a Quantifiably Unjust Application of the Law."

7

> The disparity in federal cocaine sentencing policy
> has been the most visible symbol of racial
> unfairness in the federal criminal justice system
> for almost 35 years, and it is time to eliminate it.

*Id.* at 2. Safe to say, this is a far cry from a mere illegality or ordinary

"procedural error" such as erroneously calculating the Guidelines. *See*

*e.g.*, *Rosa*, 123 F.3d at 101-102 (cited at GM, par. 33). For sure, racism

is fundamentally different from other challenges faced by the criminal

justice system. *See, Pena-Rodriguez v. Colorado*, 580 U.S. 206, 223

(2017) (recognizing that "discrimination on the basis of race, "odious in

all aspects, is especially pernicious in the administration of justice"")

(internal citation omitted). Indeed, appellant's claim, though viewed in

a vacuum by the government, goes to the heart of the District Judge's

contradictory handling of "the most visible symbol of racial unfairness"

in our system in the last 35 years.

13.    Accordingly, this Court should reject the government's

proposition that enforcing the appeal waiver "would not result in a

miscarriage of justice or contravene public policy." *See*, GM, par. 43. It

is hard to imagine any issue causing greater harm to public policy than

this one. The government's previous policy statements in this regard

are well known.[4]

_____

[4] *See again, Statement of the U.S. Department of Justice Before the United States Senate Committee on the Judiciary for a Hearing Entitled "Examining Federal Sentencing for Crack and Powder Cocaine,"* at 1 (June 22, 2021), accessible at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://sentencing.typepad.com/files/doj-equal-act-testimony--final.pdf (visited, Feb. 21, 2023); *see also*, DOJ Memorandum for All Federal Prosecutors regarding "Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases," dated December 16, 2022 (recognizing the DOJ "supports elimination of the crack-to-powder sentencing disparity and has testified before Congress in support of the EQUAL Act, S. 79, which would remove that disparity"), accessible at: https://www.fd.org/news/ag-issues-two-new-charging-memos (visited Feb. 27, 2023); *see also*, June 22, 2021 congressional testimony of Regina M. LaBelle, Acting Director of the Office of National Drug Control Policy, at pp. 1-3 (testifying that "this sentencing disparity is not based on sound science" and that under the disparity "is part of a larger system with separate and unequal tracks for people of color and white people in the United States who use drugs or have [a] substance use disorder") and statement of the Honorable Asa Hutchinson, Governor of Arkansas, at pp. 1-2 (recognizing "[t]here is nothing in the legislative history of the Anti-Drug Abuse Act to indicate that the 100-to-1 disparity was based on science" and that "the sentencing disparity was entirely arbitrary"); testimony of both witnesses accessible at: https://www.judiciary.senate.gov/meetings/examining-federal-sentencing-for-crack-and-powder-cocaine (visited, Aug. 3, 2022).

14. Further, the government attempts to reimagine Mr. Fryar's substantive racism issue by *personally* defending the District Judge by name. *See*, *e.g.*, GM, pars. 45-46. The issue at hand is, of course, not an assessment of a particular actor's character; rather, it's an avoidable systemic failure - - a nonstarter for those seeking to operate a fair sentencing regime. As this Court has observed, "[a] sentence tainted by racial bias c[an] not be supported on contract principles, since neither party can be deemed to have accepted such a risk or be entitled to such a result as a benefit of the bargain." *Buissereth*, 638 F.3d at 118. To be clear, the appellant has not accused anyone in the sentencing courtroom of being a racist. Such a label should only follow some level of intent on the part of the actor. Mr. Fryar's *sentence*, however, *was* racist.

15. Still, the government claims the appellant's public policy argument is "contradicted by the record." GM, par. 43. The government says "[t]he record contains not a shred of evidence that the District Court's sentence was based on Mr. Fryar's race, <u>or on any racism on Judge Roman's part</u>, or on any other impermissible factor." GM, par. 46 (emphasis added). In addition to its cynicism, this statement is belied by the record.

10

16.    Again, the appellant never even implied the judge himself was a racist. This is simply a red herring so as to construct an irrelevant personal defense of the District Judge. But the imposed drug sentence itself, as reflected in the government's own congressional testimony regarding the cocaine disparity issue, directly and uniquely injures the appellant as an African American litigant.

17.    The government's attempt to defend the District Judge against an attack that never occurred should not distract this Court. While the government casually drops the District Judge's § 3553(a) analysis into its argument *(GM, par. 46, third sentence)*, the court did not in fact begin its EQUAL Act analysis until its 3553(a) discussion *was complete*. *See*, A 91-93. That the District Judge *agreed* to impose a sentence consistent with the EQUAL Act (A 93; GM, par. 46) doesn't address the issue before the Court, as the District Judge imposed a sentence contradicting his intended result. *Cf.*, *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) (cited at GM, par. 44; where the defendant, unlike in our matter, was sentenced to the mandatory minimum which was, in and of itself, at issue).

11

18.     Mr. Fryar is serving nine (9) months beyond the sentence most compliant with the 1:1 ratio despite the court's findings and legal conclusion that this ratio was applicable and that the EQUAL Act "adjustments" were to be imposed. A 93. To allow this known and fixable racial disparity to continue runs directly counter to the significant public interest of protecting the Equal Protection rights of African American defendants. Accordingly, this Court should grant the appellant access to this Court's substantive review. The resources this Court would expend to flesh out these critical issues by permitting full briefing and oral argument would be well spent.

     **WHEREFORE**, I respectfully request that the government's motion to dismiss Mr. Fryar's appeal be denied in its entirety. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2023, in Buffalo, New York.

                    s/ Timothy P. Murphy
                    _____
                    TIMOTHY P. MURPHY
                    Assistant Federal Public Defender (WDNY)

12

CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 2,205 words in this motion.

s/ Timothy P. Murphy

_____
TIMOTHY P. MURPHY
Assistant Federal Public Defender (WDNY)